**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| ARTHUR BROWN, | ) | |
| | ) | Case No. 1:18-cv-7064 |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Judge Rebecca R. Pallmeyer |
| | ) | |
| CITY OF CHICAGO, former Chicago | ) | |
| Police Officers JOSEPH CAMPBELL, | ) | |
| Special Representative for DAVID | ) | |
| KUTZ, and Special Representative for | ) | |
| JOSEPH FINE, Former Assistant State's | ) | |
| Attorney JOEL WHITEHOUSE, and | ) | |
| other as-yet unidentified employees of the City | ) | |
| of Chicago, | ) | |
| | ) | |
| Defendants. | ) | |

## DEFENDANT'S ANSWER TO PLAINTIFF'S AMENDED COMPLAINT

Defendant Joel Whitehouse, by his attorney KIMBERLY M. FOXX, State's Attorney of Cook County, through her Assistant State's Attorney, Derek Kuhn, answers Plaintiff's Amended Complaint as follows:

1.      Plaintiff Arthur Brown spent 29 years, 5 months, and 17 days incarcerated for a crime that he did not commit. Arrested in the prime of his life, Mr. Brown was wrongfully convicted of arson and murder and sentenced to life in prison without the possibility of parole.

**ANSWER**:  **Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 1 and, accordingly, denies them.**

2.      There was no physical evidence connecting Mr. Brown to the crime. There was no forensic evidence connecting Mr. Brown to the crime. There was no circumstantial evidence connecting Mr. Brown to the crime. No eyewitness placed Mr. Brown at the scene of the crime.

**ANSWER**: **Defendant denies the allegations set forth in Paragraph 2.**

3.      Mr. Brown was convicted solely based on a coerced confession, corroborated only by fabricated evidence and false testimony that Defendants manufactured, manipulated, and coerced. This miscarriage of justice was the direct result and natural consequence of the de facto policies and practices of the Chicago Police Department.

**ANSWER**:  **Defendant denies the allegations set forth in Paragraph 3.**

4.      Now exonerated and declared innocent, Mr. Brown brings this lawsuit to redress the injustice that Defendants inflicted upon him.

**ANSWER**: **Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 4 and, accordingly, denies them.**

## JURISDICTION AND VENUE

5.      This action is brought under 42 U.S.C. § 1983 to redress the deprivation under color of law of Plaintiff's rights as secured by the United States Constitution, and under various state law causes of action.

**ANSWER**: **Defendant admits that this action is brought pursuant to 42 U.S.C. §1983 for alleged violations of Plaintiff's constitutional rights, but denies any alleged wrongdoing.**

6.      The Court has jurisdiction over Plaintiff's federal claims under 28 U.S.C. § 1331, and supplemental jurisdiction over Plaintiff's state-law claims under 28 U.S.C. § 1367.

**ANSWER**: **Defendant admits that jurisdiction is proper.**

7.      Venue in this District is proper under 28 U.S.C. § 1391(b) because Defendant City of Chicago is a municipal corporation that resides within this District, and because the events giving rise to the claims asserted in this Complaint occurred within this District.

**ANSWER**: **Defendant admits that venue is proper and that this Court has jurisdiction over the alleged claims. Defendant denies, however, the allegations and events asserted by Plaintiff insofar as they are directed to Defendant Whitehouse and further denies liability to Plaintiff for any and all claims asserted in the Amended Complaint.**

## THE PARTIES

8. Plaintiff Arthur Brown ("Plaintiff" or "Mr. Brown") is a United States citizen who resides within the territorial limits of the United States District Court for the Northern District of Illinois. At the time of the events leading to the wrongful conviction described in this Complaint, Mr. Brown was 37 years old and was self-employed as a contractor.

**ANSWER**: **Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 8 and, accordingly, denies them.**

9. At all times relevant to this Complaint, Defendants David Kutz (Star #9289), Joseph Fine (Star #14925), and Joseph Campbell (Star #11805) were Area One detectives with the Chicago Police Department, employed by Defendant City of Chicago and acting within the scope of their employment. These Defendants, along with other as-yet unidentified employees of the City of Chicago, are referred to as the "Officer Defendants."

**ANSWER**: **Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 9 and, accordingly, denies them.**

10. At all times relevant to this Complaint, Defendant Joel Whitehouse was an Assistant State's Attorney in the Cook County State's Attorney's Office, and was working in an investigatory, not a prosecutorial, capacity.

**ANSWER**: **Defendant admits that Joel Whitehouse was a duly appointed Assistant State's Attorney. Defendant denies the remaining allegations contained in paragraph 10.**

11.     Defendant City of Chicago (the "City") is a municipal corporation under the laws of the State of Illinois. The City operates the Chicago Police Department ("CPD") and is responsible for the policies, practices, and customs of the City and the CPD.

**ANSWER: Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 11 and, accordingly, denies them.**

## FACTUAL BACKGROUND

12.     In the early morning hours of May 28, 1988, the Saturday of Memorial Day Weekend, Mr. Brown was at his mother's home, where he lived at the time, making breakfast and talking to his niece as he prepared for his workday.

**ANSWER: Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 12 and, accordingly, denies them.**

13.     At approximately 6:00 a.m., a friend picked Mr. Brown up and drove him to a construction site at Vincennes Avenue and 44th Street in Chicago, Illinois, where Mr. Brown was completing the last day of a roof installation project. Mr. Brown owned and operated a general contracting business that performed construction, remodeling, and roofing at residential and commercial buildings throughout the Chicagoland area.

**ANSWER: Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 13 and, accordingly, denies them.**

14.     Unbeknownst to Mr. Brown, less than an hour earlier, a fire consumed Magic Video Store on 63rd Street between South Vernon Avenue and King Drive in Chicago, where Mr. Brown had previously done minor repair work. Tragically, the fire killed Keirt Phophairat and Pismai Panichkarn, who were sleeping in an adjacent Thai restaurant called King Chef and died of smoke inhalation.

**ANSWER**: Defendant admits that a fire consumed Magic Video Store on 63rd Street on May 28, 1998 and that Keirt Phophairat and Pismai Panichkam were killed as a result of the fire. Defendant lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in Paragraph 14 and, accordingly, deny them.

15.     In the hours following this incident, Defendants began building a murder case with fabricated evidence that they would pin on Mr. Brown by torturing him into giving a false confession.

**ANSWER**: Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 15 directed to Defendant Officers, and accordingly denies them. Defendant denies each and every remaining allegation contained in Paragraph 15.

**Defendants' Investigation of the Fire**

16.     Upon information and belief, the Magic Video fire started at approximately 5:05 a.m. on May 28, 1988. Two CPD officers, David Brown and Hester Scott, observed smoke coming from Magic Video and King Chef while on routine patrol. They arrived on the scene within minutes of the fire starting. They did not see Mr. Brown, because Mr. Brown was not at the scene.

**ANSWER**: Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 16 and, accordingly, denies them.

17.     While at the scene, Officers Brown and Scott interviewed an eyewitness, Sid Malone, who described seeing two black males walk into Magic Video with a gasoline can shortly before the fire started, while two other black males were already inside Magic Video. Mr. Malone did not identify Mr. Brown, and did not describe anyone who resembled Mr. Brown,

either as one of the two men who walked into Magic Video or as one of the two men who were already inside.

**ANSWER**: **Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 17 and, accordingly, denies them.**

18.     Mr. Malone also identified a white Ford Bronco with license plate number GAS403 parked near Magic Video. This vehicle had no connection to Mr. Brown. It was registered to Michael Harper, who co-owned Magic Video with his mother.

**ANSWER**: **Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 18 and, accordingly, denies them.**

19.     Officers Brown and Scott then interviewed Michael Harper, who approached them at the scene minutes after the fire started. Again, Mr. Brown was nowhere to be seen, because he was not there.

**ANSWER**: **Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 19 and, accordingly, denies them.**

20.     Defendants Fine, Kutz, and Campbell thereafter took over as the lead detectives investigating the Magic Video fire. Defendants Fine and Kutz interviewed Officers Brown and Scott about their earlier conversations with Mr. Malone and Michael Harper. Meanwhile, Defendant Campbell concluded that the Magic Video fire was an arson, set by spreading gasoline over a mattress inside Magic Video.

**ANSWER**: **Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 20 and, accordingly, denies them.**

21.     During these same morning hours, the Officer Defendants and other CPD officers also collected physical evidence allegedly related to the fire: a gasoline can found under a towel

and a green woman's vest; the license plates GAS403 from the white Ford Bronco; x-rated video tapes recovered from the white Ford Bronco; and charred remnants from inside Magic Video. None of this evidence was in any way connected to Mr. Brown.

**ANSWER**: **Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 21 and, accordingly, denies them.**

22.     By mid-morning, within only a few hours of the Magic Video fire, the Officer Defendants had constructed their theory of the crime: Arthur Brown, Michael Harper, Geronia Ford (Michael Harper's cousin), and Albert Harper[1] (Michael Harper's uncle) set the fire together. Officer Defendants theorized that Mr. Brown and Michael Harper prepared the store to be burned, while Mr. Ford and Albert Harper drove Michael Harper's white Ford Bronco to purchase a can of gas to start the fire. Because there was no actual evidence to support that theory, Officer Defendants devised a plan to make the evidence fit their theory of the crime.

**ANSWER**: **Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 22 and, accordingly, denies them.**

23.     As the first step in this plan, Defendant Kutz (with another yet-to-be-identified CPD officer) set out to find a witness to testify that he sold gas in a gas can to Mr. Ford and Albert Harper. This brought him to a Citgo gas station at 67th Street and Eberhardt Street, just blocks from Magic Video. However, the night-shift gas station attendant, Cecil Hingston, told Defendant Kutz that he did not sell a can of gas to anyone that night. Frustrated, Defendant Kutz left, but later returned to the Citgo, where Mr. Hingston again protested that he did not sell a can of gas to anyone that night.

---

[1] To avoid confusion between Michael Harper and Albert Harper, the Complaint refers to these individuals by their full names.

**ANSWER**: **Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 23 and, accordingly, denies them.**

24.     Unsatisfied with that answer, Defendant Kutz threatened Mr. Hingston: if he did not acknowledge selling gas in a gas can to two black males driving a white Ford truck, then Defendant Kutz would (falsely) report Mr. Hingston for not documenting a sale of gas. Despite Mr. Hingston's emphatic objections, Defendant Kutz ultimately succeeded in coercing Mr. Hingston to claim that he sold a can of gas to two black males driving a white Ford truck in the early morning hours of May 28, 1988. Armed with Mr. Hingston's fabricated story – which in no way implicated Mr. Brown – the Officer Defendants then proceeded to plug Mr. Brown into their theory of the crime.

**ANSWER**: **Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 24 and, accordingly, denies them.**

**Defendants' Early Efforts to Force Mr. Brown to Confess**

**and His Repeated Proclamations of Innocence**

25.     Despite the lack of any physical, forensic, circumstantial, or eyewitness evidence connecting Mr. Brown to the Magic Video fire, the Officer Defendants set out to connect him to the crime. Defendants Fine and Campbell, following information provided by Mr. Brown's mother, visited Mr. Brown's worksite at 44th and Vincennes and left their business card while Mr. Brown was offsite at lunch. When Mr. Brown returned from lunch, he called Defendant Fine and invited Defendants Fine and Campbell to come to his worksite. When they arrived, Mr. Brown voluntarily came down from the roof where he was working and identified himself. Defendants Fine and Campbell then arrested Mr. Brown, triggering 10,762 days of captivity.

**ANSWER**: **Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 25 and, accordingly, denies them.**

26.     Mr. Brown did not know that there had been a fire at Magic Video and did not know why he had been arrested. When Defendants Fine and Campbell brought Mr. Brown to Area One headquarters, they placed him in a small, windowless room on the second floor and used his handcuffs to chain him to a ring on the wall in a standing position. The holding room was so hot that the detectives interrogating Mr. Brown could not remain there for a significant amount of time.  For over seven hours, Mr. Brown was left in this small, hot, windowless room, chained to the wall, without anything to eat or drink.

**ANSWER**:  **Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 26 and, accordingly, denies them.**

27.     Occasionally, Defendants Fine and Campbell returned to the holding room individually and asked Mr. Brown if he was ready to confess his involvement in the fire. Mr. Brown repeatedly and steadfastly maintained his innocence, telling Defendants Fine and Campbell that he was not involved in, and did not know anything about, a fire at Magic Video. Mr. Brown repeatedly requested a lawyer. Defendants Fine and Campbell ignored his requests and instead continued to interrogate him.

**ANSWER**: **Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 27 and, accordingly, denies them.**

28.     At one point, Mr. Brown was allowed to leave the room to make a phone call to his mother, but Defendants Whitehouse and Campbell eavesdropped on his conversation from another phone down the hall.

**ANSWER**: **Defendant admits that upon Mr. Brown's request, he was permitted to make a phone call and did so in the presence of Defendant Whitehouse. Defendant Denies each and every remaining allegation contained in Paragraph 28.**

29.     Throughout this entire ordeal, Mr. Brown never wavered in his proclamations of innocence. He refused to confess, because there was nothing to confess.

**ANSWER**: **Defendant denies the allegations contained in Paragraph 29.**

**Defendants' Coercion of Mr. Brown's False Confession**

30.     No witness, including Mr. Malone – who was directly across the street from Magic Video just before the start of the fire – identified Mr. Brown or anyone resembling Mr. Brown as being inside or near Magic Video when the fire started. Further, Mr. Brown had no connection to any of the physical evidence recovered from the scene of the fire: no connection to the white Ford Bronco with license plates GAS403; no connection to the gas can, white towel, or green women's vest found near Magic Video; no connection to the videotapes supposedly removed from Magic Video before the fire. No forensic or circumstantial evidence connected Mr. Brown to the crime.  Nothing connected Mr. Brown to the crime.

**ANSWER**: **Defendant denies the allegations contained in Paragraph 30.**

31.     Over the seven hours Mr. Brown was forcefully detained by the Officer Defendants, Mr. Brown steadfastly maintained his innocence, denying any knowledge of – let alone involvement in – the Magic Video fire. Faced with the complete lack of evidence to substantiate any theory of Mr. Brown's involvement, Defendants Fine, Campbell, and

Whitehouse manufactured the only evidence that, to this day, has ever connected Mr. Brown to the Magic Video fire: a "confession."[2]

**ANSWER**: **Defendant denies the allegations contained in Paragraph 31.**

32.     After leaving Mr. Brown handcuffed to the wall for several hours, Defendant Fine stormed into the holding room and yelled, "Motherfucker, you are going to talk to me now." He then grabbed Mr. Brown by the neck, choking him, and slammed his head and back against the wall several times. Despite the trauma of this physical attack, Mr. Brown still proclaimed his innocence. As Defendant Fine continued to choke Mr. Brown, he collapsed (while still chained to the wall) and briefly lost consciousness. Upon regaining consciousness, Mr. Brown feared for his health, safety and, ultimately, his life.

**ANSWER**: **Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 32 and, accordingly, denies them.**

33.     Shortly after this beating, Defendants Fine and Campbell returned to the holding room and presented several papers to Mr. Brown. They told Mr. Brown that if he signed these papers, the torture and violence would end. Mr. Brown was neither asked nor given any opportunity to read the papers in front of him. In fact, Mr. Brown had limited literacy skills at the time of his arrest. Rather than allowing Mr. Brown to review the papers, Defendants Fine and Campbell pointed to various places on the documents and instructed Mr. Brown to sign or initial them. Facing the threat of additional beatings and torture if he did not sign, Mr. Brown complied.

**ANSWER**: **Defendant denies the allegation that Mr. Brown was not given an opportunity to read the confessions and further alleges that Mr. Brown did in fact read the confession out loud in Defendant Whitehouse's presence. Defendant lacks knowledge or**

---

[2] References to the "confession" throughout this Complaint do not include any notion that the "confession" contains voluntary or true admissions.

**information sufficient to form a belief as to the truth of the remaining allegations contained in Paragraph 33 and, accordingly, denies them.**

34.     Fearful about the implications of what he was doing, Mr. Brown signed his name differently than his normal signature, believing this would show that he did not intend to signal agreement with the papers he signed. Only later did he learn that these documents were his purported seven-page "confession." The "confession," drafted by Defendant Whitehouse, contained admissions fabricated from whole cloth by Defendants Whitehouse, Fine, and Campbell to ensure Mr. Brown's trial and conviction.

**ANSWER: Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations that Plaintiff signed his name differently than his normal signature or what Plaintiff's intent may have been in doing so, and accordingly denies them. Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 34 directed to Defendant Officers, and accordingly denies them. Defendant denies each and every remaining allegation contained in Paragraph 34.**

35.     In an effort to create the appearance of voluntary participation by Mr. Brown in the formulation of his "confession," Defendant Campbell added certain "edits" to the document – i.e., words crossed out and replaced with other words, supposedly at Mr. Brown's direction. Mr. Brown did not request, direct, or make any edits to the "confession." Mr. Brown did not voluntarily confess to any involvement in the Magic Video fire and maintained his innocence in the face of overwhelming pressure for almost 30 years. To this day, the "confession" is the only evidence that has ever connected Mr. Brown to the Magic Video fire.

**ANSWER**: **Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 35 and, accordingly, denies them.**

**Defendants' Fabrication of a Story to Explain and Corroborate the "Confession"**

36.     Officer Defendants next fabricated additional evidence in an attempt to corroborate Mr. Brown's "confession." First, realizing that absent torture and coercion, an innocent man with no connection to the crime would not confess, Defendants Fine and Campbell concocted a story to explain Mr. Brown's supposed change of heart. Specifically, Defendants Fine and Campbell fabricated a confrontation between Mr. Brown and Michael Harper at the police station, during which Michael Harper supposedly accused Mr. Brown of involvement in the crime, leading Mr. Brown to confess. This confrontation never happened. Defendants Fine and Campbell invented the encounter to cover up their abuse of Mr. Brown, which was the real reason that he signed the fabricated "confession."

**ANSWER**: **Defendant denies the allegation contained in paragraph 36 that a confrontation did not occur between Plaintiff and Mr. Harper at the police station. Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 36 directed to Defendant Officers, and accordingly denies them. Defendant lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in Paragraph 36 and, accordingly, denies them.**

37.     Second, Officer Defendants coerced Mr. Hingston to state, consistent with details included in Mr. Brown's "confession," that he sold gas in a gas can to two black males driving a white Ford Bronco. Detectives Kutz and Fine also rigged Mr. Hingston's lineup identifications of Albert Harper and Mr. Ford by telling him which suspects to select. Mr. Hingston later

admitted his perjury and swore that Officer Defendants coerced his testimony and his false identifications.

**ANSWER: Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 37 and, accordingly, denies them.**

38.     Third, Officer Defendants fabricated a story to explain why Mr. Brown would help set the Magic Video fire. Despite the fact that Mr. Brown (37) was almost twice Michael Harper's age (21), Defendants invented a friendship between the two men to explain why Mr. Brown would help Michael Harper set the fire. In reality, Mr. Brown's relationship with Michael Harper was limited to the minor repair work he performed at Magic Video.

**ANSWER: Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 38 and, accordingly, denies them.**

39.     Officer Defendants also fabricated another motive to explain why a 37 year-old, self-employed man with no criminal record, a steady job, and a family, would commit arson: that Mr. Brown was promised x-rated tapes in exchange for helping to burn the video store. In reality, Mr. Brown lived with his mother and did not even own a tape-player.

**ANSWER: Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 39 and, accordingly, denies them.**

40.     Officer Defendants also deliberately failed to investigate information that would have disproven Mr. Brown's "confession" and the case against him. Their failure to investigate is additional evidence of their intentional misconduct and bad faith. Officer Defendants conducted no investigation into Mr. Brown's whereabouts at the time of the fire. They did not interview any family members who saw him at the time of the fire, as he was getting ready for work. Nor did they interview any of his colleagues from his roofing job, who would have confirmed that he

arrived at work on time, less than one hour after the fire started. Further, after Mr. Brown's arrest and "confession," Defendant Campbell received a report from two other CPD officers summarizing an interview with an eyewitness, Joyce Owens, who observed the fire and identified the four individuals involved -- none of whom was Mr. Brown. Unwilling to let any evidence undermine the fraudulent case they built against Mr. Brown, Officer Defendants Campbell, Fine, and Kutz ignored Ms. Owens' statement and conducted no further investigation into any of the individuals she identified, with the exception of Michael Harper.

**ANSWER: Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 40 and, accordingly, denies them.**

41.     Instead, after they fabricated Mr. Brown's "confession," Officer Defendants declared the case closed.

**ANSWER: Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 41 and, accordingly, denies them.**

**The Use of the Confession to Try and Convict Mr. Brown**

42.     Based entirely on the fabricated, coerced, and involuntary "confession," the State charged Mr. Brown with one count of arson and two counts of murder. At trial, the State presented the evidence discussed above, including the false "confession" of Mr. Brown and the evidence used to explain and corroborate the "confession." It also presented evidence to prove that the Magic Video fire was an arson and that the victims died of smoke inhalation.

**ANSWER: Defendant admits that Mr. Brown was charged with one count of arson and two counts of murder. Defendant lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in Paragraph 42 and, accordingly, denies them.**

43.    In April 1990, a jury convicted Mr. Brown of all counts. The court sentenced Mr. Brown to natural life in prison without the possibility of parole.

**ANSWER: Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 43 and, accordingly, denies them.**

44.    In August 2008, after another individual confessed to setting the Magic Video fire, Mr. Brown was tried again, and again was convicted based on the fabricated, coerced, and involuntary "confession." During the 2008 trial, Defendants Campbell and Fine falsely testified – and allowed the State to argue from their testimony – that Mr. Brown's "confession" led them to discover the gas can at the scene of the fire. In fact, Defendant Campbell's contemporaneous 1988 police report reflected that the gas can was recovered before Mr. Brown was even taken into custody on the day of the fire.

**ANSWER: Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 44 and, accordingly, denies them.**

45.    The testimony by witnesses at both trials established only that several black males were involved in the Magic Video fire. None of the physical, forensic, or circumstantial evidence presented in either trial had any connection to Mr. Brown. Without Mr. Brown's "confession," there would not have been a single piece of evidence to present against Mr. Brown at either of his trials. The State took Mr. Brown to trial each time based solely on the "confession" that Defendants Whitehouse, Fine, and Campbell fabricated and coerced. And the juries convicted Mr. Brown each time for the same reason.

**ANSWER: Defendant denies that Mr. Brown's confession was fabricated or coerced. Defendant lacks knowledge or information sufficient to form a belief as to the**

truth of the remaining allegations contained in Paragraph 45 and, accordingly, denies them.

### Some Justice at Last: Mr. Brown's Release from Prison

46.     Mr. Brown steadfastly proclaimed his innocence for almost 30 years. After decades with no relief, when most would have resigned themselves to their fate, Mr. Brown continued to maintain his innocence. Even when offered the possibility of accepting a guilty plea in exchange for time served, Mr. Brown refused, committed to clearing his name.

**ANSWER**: **Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 46 and, accordingly, denies them.**

47.     On November 14, 2017, the Cook County State's Attorney's Office dropped all charges against Mr. Brown after the Circuit Court of Cook County granted Mr. Brown's Petition for Post-Conviction Relief and vacated his conviction. After 29 years, 5 months, and 17 days, Mr. Brown finally walked out of prison a free man. On February 13, 2018, the Circuit Court of Cook County granted Mr. Brown a Certificate of Innocence, concluding that Mr. Brown is "innocent of the offenses charged."

**ANSWER: Defendant admits that on November 14, 2017, charges against Mr. Brown were dismissed and that on February 13, 2018, the Circuit Court of Cook County Granted Mr. Brown's Certificate of Innocence. Defendant lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in Paragraph 47 and, accordingly, denies them.**

### The City's Policies and Practices Enabling Police Misconduct

48.     Officer Defendants' flagrant misconduct in this case was not an isolated incident. Rather, it was consistent with and the natural consequence of the de facto policies and practice of

the City and the CPD.

**ANSWER**: **Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 48 and, accordingly, denies them.**

49.     Beginning in the 1970s, CPD officers engaged in a systematic pattern of coercion, fabrication of evidence, withholding and destruction of exculpatory information, and various other illegal tactics to "solve" cases at all costs. Their methods included many of those employed against Mr. Brown, such as (1) using physical and/or psychological abuse to coerce involuntary and false confessions; (2) fabricating witness statements and other evidence; (3) threatening or otherwise manipulating witnesses to coerce false testimony; (4) using improperly suggestive identification procedures, or otherwise tampering with line-ups; (5) denying suspects access to counsel; (6) concealing evidence of misconduct and flawed investigations; and (7) committing perjury during criminal proceedings.

**ANSWER**: **Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 49 and, accordingly, denies them.**

50.     These institutional practices were so pervasive and entrenched as to constitute de facto policies in the CPD during the relevant time period. In addition to Mr. Brown, there are now dozens of other known victims of similar abuses.

**ANSWER**: **Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 50 and, accordingly, denies them.**

51.     These practices flourished because municipal policymakers in positions of authority exhibited deliberate indifference to the problem. The City failed to implement adequate training, supervision, or disciplinary measures to prevent these and similar abuses, instead choosing to perpetuate a "code of silence" within the CPD.

**ANSWER**: **Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 51 and, accordingly, denies them.**

52.     Chicago police officers who manufactured criminal cases against individuals like Mr. Brown understood that they not only enjoyed de facto immunity from both departmental discipline and criminal prosecution, but they also stood to be rewarded for closing a case, no matter the cost. Moreover, they faced pressure from colleagues and supervisors to keep quiet about misconduct and flawed investigations.

**ANSWER**: **Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 52 and, accordingly, denies them.**

53.     The "code of silence" has been well documented. In a December 2015 speech to the Chicago City Council, current Mayor Rahm Emanuel acknowledged "a tendency to ignore . . . tendency to deny . . . a tendency, in some cases, to cover up the bad actions of a colleague or colleagues." And former Chicago Police Superintendent Richard Brzeczek, who held the position at the time of Mr. Brown's wrongful conviction, has publicly admitted that "the code of silence has always existed in the Police Department. It existed during my time."

**ANSWER**: **Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 53 and, accordingly, denies them.**

### 30 Years Lost: Mr. Brown's Damages

54.     Because of Defendants' wrongful conduct, Mr. Brown spent 29 years, 5 months, and 17 days in prison for a crime he did not commit. That is 10,762 days.

**ANSWER**: **Defendant denies the allegations contained in Paragraph 54.**

55.     Mr. Brown first suffered through nearly two years in Cook County Jail, facing a double murder trial and a possible death sentence (Mr. Brown was eligible for the death penalty).

The mental and emotional anguish of enduring the period before his conviction cannot be described.

**ANSWER**: **Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 55 and, accordingly, denies them.**

56.     After his conviction, Mr. Brown was forced to endure nearly 28 years of incarceration in maximum security prisons. Surviving in this environment for nearly three decades was emotionally, physically, and psychologically dehumanizing and debilitating.

**ANSWER**: **Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 56 and, accordingly, denies them.**

57.     Jails and prisons provide no privacy. Mr. Brown was forced to share a cell with another person, and shower and use the restroom in public spaces. He was subjected to indignities that included strip searches and unannounced digging into his personal property. His letters were copied and retained by the State. His phone calls with his loved ones were monitored and recorded.  His personal visits were only from behind thick glass, supervised by guards at all times.

**ANSWER**: **Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 57 and, accordingly, denies them.**

58.     Mr. Brown was surrounded by violence, sometimes inflicted by guards and sometimes inflicted by other inmates. He lived in constant fear and anxiety for his personal safety, especially as he aged.

**ANSWER**: **Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 58 and, accordingly, denies them.**

59.     Mr. Brown had no autonomy. Every second of his day was controlled: when he

could eat, when he could sleep, when he could go outside, when he could shower. Mr. Brown was deprived of the opportunity to make his own decisions and live his life as he chose.

**ANSWER**: **Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 59 and, accordingly, denies them.**

60. Mr. Brown was totally deprived of life's everyday joys. He spent nearly 30 years without going to a restaurant, having a drink, socializing with friends, traveling, enjoying a movie, or any of the thousands of activities that make up a fulfilling life. He missed birthdays, graduations, weddings, births, funerals, and everything in between.

**ANSWER**: **Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 60 and, accordingly, denies them.**

61. Mr. Brown was also deprived of an income and the ability to work. When he was arrested, Mr. Brown was in the prime of his career, working as a self-employed contractor. He loved his job, and he prided himself on his work. During his incarceration, Mr. Brown was stripped of the opportunity to continue building his career, and he was unable to earn an income to provide for himself and his family. Released from prison at age 66, Mr. Brown is now past his prime working years.

**ANSWER**: **Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 61 and, accordingly, denies them.**

62. Mr. Brown also lost any chance to build and maintain normal relationships with his loved ones. At the time of his arrest, Mr. Brown had three minor children, whom he never had an opportunity to raise. Over the years, his relationship with his children weakened as they moved away and moved forward with their lives, expecting that their Dad would be in prison for the rest of his life. Mr. Brown had deep connections with his mother and siblings at the time of

his arrest, but Mr. Brown was not able to be the son and brother he wanted to be. He has now been deprived of the opportunity to rebuild his relationship with his mother and seven of his siblings, who died while he was in prison.

**ANSWER**: **Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 62 and, accordingly, denies them.**

63.     In addition to everything else he lost while in prison, Mr. Brown lost his name. For unexplained and inexplicable reasons, the Illinois Department of Corrections identified Mr. Brown as Arthur Ford – a name that Mr. Brown has never had, never been identified by, and never used. For 30 years, Mr. Brown had to abandon his identity to survive in a system that refused to acknowledge him.

**ANSWER**: **Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 63 and, accordingly, denies them.**

64.     Mr. Brown must now attempt to make a life for himself outside of prison without the benefit of nearly three decades of normal life experiences and the foundation that helps a person grow old in our society. At the time of his release, Mr. Brown had never held a cell phone, used a computer, or been exposed to the mountain of other technology that now drives our society. But that deprivation is dwarfed by what he was forced to miss in terms of his family relationships and his connections to the people who would have been important in his life.

**ANSWER**: **Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 64 and, accordingly, denies them.**

65.     The emotional pain and suffering caused by losing these 29 years, 5 months, and 17 days has been substantial and immeasurable. Mr. Brown was stolen from his family in his prime and was stripped of the various pleasures of basic human experience, from the simplest to

the most important, which all free people enjoy as a matter of right. While prison life is traumatic for most, it is unimaginable for an innocent man like Mr. Brown, who knew all along he did not belong there. Mr. Brown has suffered tremendous and immeasurable damage, including physical harm, psychological damage, and emotional pain and suffering, all proximately caused by the Defendants' misconduct.

**ANSWER: Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 65 and, accordingly, denies them.**

CLAIMS FOR RELIEF
COUNT I – 42 U.S.C. § 1983
Deprivation of Fair Trial and Wrongful Conviction
(Against Individual Defendants)

66.     Plaintiff re-alleges paragraphs 1 through 65.

**ANSWER: Defendant incorporates his answers to each of the foregoing paragraphs as if set forth fully herein.**

67.     Each Defendant is named individually, jointly, and/or in conspiracy, as well as acting under color of state law and within the scope of their employment.

**ANSWER:  Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 67 and, accordingly, denies them.**

68.     Defendants deprived Mr. Brown of his constitutional right to a fair trial.

**ANSWER: Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 68 directed to Defendant Officers, and accordingly denies them. Defendant denies each and every remaining allegation contained in Paragraph 68.**

69.     This claim is based upon the torture and evidence fabrication that occurred before and after Mr. Brown's arrest on May 28, 1988.

**ANSWER**: **Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 69 directed to Defendant Officers, and accordingly denies them. Defendant denies each and every remaining allegation contained in Paragraph 69.**

70.     Mr. Brown's confession was fabricated by Defendants, and Mr. Brown's signature and initials were coerced through physical and psychological abuse and torture.

**ANSWER**: **Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 70 directed to Defendant Officers, and accordingly denies them. Defendant denies each and every remaining allegation contained in Paragraph 70.**

71.     Defendants Campbell, Fine, and Whitehouse falsely informed the prosecuting attorneys that they did not physically or psychologically coerce Arthur Brown into signing the false and fabricated confession.

**ANSWER**: **Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 71 directed to Defendant Officers, and accordingly denies them. Defendant denies each and every remaining allegation contained in Paragraph 71.**

72.     Defendants fabricated a confrontation between Michael Harper and Mr. Brown at the police station in an effort to explain Mr. Brown's decision to confess.

**ANSWER**: **Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 72 and, accordingly, denies them.**

73.     Defendant Kutz fabricated and coerced Mr. Hingston's story in an effort to

corroborate Mr. Brown's fabricated confession. Defendants Kutz and Fine coerced Mr. Hingston's lineup identifications of Mr. Ford and Albert Harper to corroborate Mr. Brown's confession.

**ANSWER**: **Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 73 and, accordingly, denies them.**

74. Defendants fabricated a relationship between Michael Harper and Mr. Brown, and a motive, in an effort to explain Mr. Brown's supposed participation in the Magic Video fire.

**ANSWER**: **Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 74 directed to Defendant Officers, and accordingly denies them. Defendant denies each and every remaining allegation contained in Paragraph 74.**

75. The State's Attorney's Office relied on the fabricated official reports containing the fabricated confession and other evidence described above in deciding to charge Mr. Brown with arson and murder and to try him on these charges.

**ANSWER**: **Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 75 and, accordingly, denies them.**

76. If the State's Attorney's Office had been aware of the true facts – that Defendants coerced and fabricated the confession – they would not have (and could not have) charged Mr. Brown with any crime, because there was no evidence connecting Mr. Brown to the Magic Video fire.

**ANSWER**: **Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 76 and, accordingly, denies them.**

77. Additionally, and alternatively, Defendants' actions were taken maliciously,

willfully, wantonly and with reckless disregard for Mr. Brown's constitutional rights.

**ANSWER**: **Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 77 directed to Defendant Officers, and accordingly denies them. Defendant denies each and every remaining allegation contained in Paragraph 77.**

## COUNT II – 42 U.S.C. § 1983
### Coercive Interrogation
### (Against Defendants Fine, Campbell, and Whitehouse)

78.     Plaintiff re-alleges paragraphs 1 through 65.

**ANSWER**: **Defendant incorporates his answers to each of the foregoing paragraphs as if set forth fully herein.**

79.     This claim is based on the torture and evidence fabrication that occurred after Mr. Brown's arrest on May 28, 1988.

**ANSWER**:  **Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 79 directed to Defendant Officers, and accordingly denies them. Defendant denies each and every remaining allegation contained in Paragraph 79.**

80.     Defendants acted individually, jointly, and in conspiracy, under color of law and within the scope of their employment, in coercively interrogating Mr. Brown.

**ANSWER**: **Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 80 directed to Defendant Officers, and accordingly denies them. Defendant denies each and every remaining allegation contained in Paragraph 80.**

81.     Defendants Campbell, Fine, and Whitehouse employed psychologically and

mentally abusive and coercive techniques in interrogating Mr. Brown and attempting to coerce his confession.

**ANSWER: Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 81 directed to Defendant Officers, and accordingly denies them. Defendant denies each and every remaining allegation contained in Paragraph 81.**

82.      Defendant Fine physically abused Mr. Brown, choking him and slamming his head against the wall to the point of loss of consciousness.

**ANSWER:  Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 82 and, accordingly, denies them.**

83.      Defendants' psychological and physical abuse of Mr. Brown coerced Mr. Brown's signature on a fabricated confession drafted by Defendant Whitehouse and edited by Defendant Campbell.

**ANSWER: Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 83 directed to Defendant Officers, and accordingly denies them. Defendant denies each and every remaining allegation contained in Paragraph 83.**

84.      The false, coerced, and fabricated confession was subsequently used against Arthur Brown in his criminal proceedings.

**ANSWER: Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 84 and, accordingly, denies them.**

85.     Defendants' conduct violated Mr. Brown's Fifth and Fourteenth Amendment rights to be free from compulsory self-incrimination and deprivation of liberty without due process of law as guaranteed by the United States Constitution.

**ANSWER:  Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 85 directed to Defendant Officers, and accordingly denies them. Defendant denies each and every remaining allegation contained in Paragraph 85.**

86.     Additionally, and alternatively, these actions were taken maliciously, willfully, wantonly and with reckless disregard for Plaintiff's constitutional rights.

**ANSWER: Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 86 directed to Defendant Officers, and accordingly denies them. Defendant denies each and every remaining allegation contained in Paragraph 86.**

### COUNT III – 42 U.S.C. §§ 1983 & 1985
### Conspiracy to Deprive Plaintiff's Constitutional Rights
### (Against Individual Defendants)

87.     Plaintiff re-alleges paragraphs 1 through 65.

**ANSWER: Defendant incorporates his answers to each of the foregoing paragraphs as if set forth fully herein.**

88.     After the Magic Video fire, Defendants agreed among themselves to act in concert to deprive Mr. Brown of his constitutional rights, including his rights to due process and to a fair trial.

**ANSWER: Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 88 directed to Defendant Officers,**

**and accordingly denies them. Defendant denies each and every remaining allegation contained in Paragraph 88.**

89.     Additionally, before and after Mr. Brown's conviction, Defendants further conspired to deprive Mr. Brown of exculpatory information to which he was lawfully entitled, namely that his alleged confession was fabricated and the result of psychological and physical coercion. Upon information and belief, Defendants also failed to disclose that they and their partners had engaged in a pattern and practice of coercing false confessions from arrestees through psychological and physical torture. The disclosure of this exculpatory information would have led to Mr. Brown not being charged or being acquitted at trial.

**ANSWER: Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 89 directed to Defendant Officers, and accordingly denies them. Defendant denies each and every remaining allegation contained in Paragraph 89.**

90.     As outlined above, Defendants conspired by concerted action to accomplish an unlawful purpose by unlawful means.

**ANSWER: Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 90 directed to Defendant Officers, and accordingly denies them. Defendant denies each and every remaining allegation contained in Paragraph 90.**

91.     In furtherance of the conspiracy, each of the Defendant co-conspirators engaged in and facilitated numerous overt acts, including but not limited to those set forth above – such as fabricating evidence, coercing false witness statements, withholding exculpatory evidence, coercing a false confession, and committing perjury during hearings and trials – and were

otherwise willful participants in the joint activity.

**ANSWER**: **Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 91 directed to Defendant Officers, and accordingly denies them. Defendant denies each and every remaining allegation contained in Paragraph 91.**

92.     The misconduct described in this Count was undertaken with malice, willfulness, and/or reckless indifference to Mr. Brown's rights.

**ANSWER**: **Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 92 directed to Defendant Officers, and accordingly denies them. Defendant denies each and every remaining allegation contained in Paragraph 92.**

93.     As a direct and proximate result of Defendants' conspiracy and actions in furtherance of the conspiracy, Mr. Brown was wrongly convicted and imprisoned for almost 30 years and suffered other grievous and continuing damages and injuries.

**ANSWER**: **Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 93 and, accordingly, denies them.**

**COUNT IV – 42 U.S.C. §§ 1983 & 1986**
**Failure to Intervene**
**(Against Individual Defendants)**

94.     Plaintiff re-alleges paragraphs 1 through 65.

**ANSWER**:  **Defendant incorporates his answers to each of the foregoing paragraphs as if set forth fully herein.**

95.     Defendants Campbell, Fine, Kutz, and Whitehouse, along with as-yet unidentified City employees, failed to intervene and stop the unconstitutional actions of each other during the abuse of Mr. Brown, the fabrication of the confession, and the subsequent fabrication of "corroborating" evidence.

**ANSWER: Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 95 directed to Defendant Officers, and accordingly denies them. Defendant denies each and every remaining allegation contained in Paragraph 95.**

96.     Defendants caused Mr. Brown's wrongful charging, prosecution, conviction, and imprisonment by physically coercing him, fabricating his false confession and other evidence, and suppressing exculpatory evidence.

**ANSWER: Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 96 directed to Defendant Officers, and accordingly denies them. Defendant denies each and every remaining allegation contained in Paragraph 96.**

97.     Defendants knew that they were committing constitutional violations and failed to intervene or stop each other's misconduct, despite having the opportunity to do so.

**ANSWER: Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 97 directed to Defendant Officers, and accordingly denies them. Defendant denies each and every remaining allegation contained in Paragraph 97.**

**COUNT V – 42 U.S.C. § 1983**
**Monell Claim**
**(Against Defendant City of Chicago)**

98.     Plaintiff re-alleges paragraphs 1 through 65.

**ANSWER**: **Defendant incorporates his answers to each of the foregoing paragraphs as if set forth fully herein.**

99.     The City's policies and practices were underlying causes of the misconduct described in this Complaint, in that CPD employees and agents regularly pursued wrongful convictions through flawed investigations to "solve" cases at all costs – and did so with the knowledge and approval of individuals with final policymaking authority for the City.

**ANSWER**: **Count V is not directed against Defendant and, accordingly, no answer is due.**

100.    At all relevant times, the CPD's interrelated de facto policies, practices, and customs included, but were not limited to: (1) conducting improperly coercive interrogations designed to produce involuntary and false confessions; (2) manufacturing, fabricating, or using improperly suggestive tactics to obtain false witness statements; (3) denying suspects access to counsel; (4) filing false reports and giving false statements or testimony; (5) withholding, destroying, covering up, or suppressing evidence of misconduct; and (6) perpetuating, encouraging, and condoning a "code of silence," under which Chicago police officers and detectives refused to report or otherwise concealed instances of police misconduct.

**ANSWER**: **Count V is not directed against Defendant and, accordingly, no answer is due.**

101.    The practices described above were so pervasive and entrenched as to constitute de facto policies of the CPD. These practices flourished because municipal policymakers in positions of authority exhibited deliberate indifference to the misconduct, effectively ratifying it.

**ANSWER**: **Count V is not directed against Defendant and, accordingly, no answer is due.**

102.     Specifically, the City failed to adequately train, supervise, and discipline its police officers and other employees and agents, including the individual Defendants in this case, to ensure that they:

a.     faithfully represented material facts when seeking criminal charges;

b.     protected suspects' constitutional rights, including the right to counsel, during interrogations;

c.     employed proper and non-suggestive identification techniques;

d.     secured, maintained, and disclosed exculpatory and impeachment information to prosecutors; and

e.     adequately investigated potential leads, including questioning alibi witnesses.

**ANSWER**: **Count V is not directed against Defendant and, accordingly, no answer is due.**

103.     The City's failure to adequately train, discipline, and supervise its police officers, and its creation and continued tolerance of unconstitutional customs, policies, and practices, directly and proximately caused Mr. Brown to suffer constitutional deprivations, including his false arrest, unfair trial, wrongful conviction, and other grievous and permanent injuries and damages described above.

**ANSWER**: **Count V is not directed against Defendant and, accordingly, no answer is due.**

**COUNT VI – 42 U.S.C. § 1983**
**Federal Malicious Prosecution**
**(Against Individual Defendants)**

104.     Plaintiff re-alleges paragraphs 1 through 65.

**ANSWER**: **Defendant incorporates his answers to each of the foregoing paragraphs as if set forth fully herein.**

105.     Defendants accused Mr. Brown of criminal activity knowing those accusations to be without genuine probable cause, and they made statements to prosecutors with the intent of exerting influence to institute and continue judicial proceedings, in violation of Mr. Brown's rights under the Fourth and Fourteenth Amendments.

**ANSWER**:  **Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 105 directed to Defendant Officers, and accordingly denies them. Defendant denies each and every remaining allegation contained in Paragraph 105.**

106.     Defendants caused Mr. Brown to be improperly subjected to judicial proceedings for which there was no legitimate probable cause. These judicial proceedings were instituted and continued maliciously, resulting in injury.

**ANSWER**: **Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 106 directed to Defendant Officers, and accordingly denies them. Defendant denies each and every remaining allegation contained in Paragraph 106.**

107.     Moreover, Defendants caused Mr. Brown to be improperly subjected to judicial proceedings for which Defendants possessed evidence supporting probable cause to believe that an individual other than Mr. Brown had committed the crime. These judicial proceedings against Mr. Brown were instituted and continued maliciously, resulting in injury.

**ANSWER**: **Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 107 directed to Defendant Officers, and accordingly denies them. Defendant denies each and every remaining allegation contained in Paragraph 107.**

108.     Defendants' statements regarding Mr. Brown's alleged culpability were made with knowledge that the statements were false, fabricated, and perjured. Defendants also fabricated evidence by coercing false inculpatory testimony from actual and purported eyewitnesses. Defendants withheld the facts of their manipulation and the resulting fabrications from Mr. Brown.

**ANSWER**: **Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 108 directed to Defendant Officers, and accordingly denies them. Defendant denies each and every remaining allegation contained in Paragraph 108.**

109.     This misconduct described in this Count was undertaken with malice, willfulness, and reckless indifference to Mr. Brown's rights.

**ANSWER**: **Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 109 directed to Defendant Officers, and accordingly denies them. Defendant denies each and every remaining allegation contained in Paragraph 109.**

110.     As a result of this misconduct, Mr. Brown sustained, and continues to sustain, injuries including pain and suffering.

**ANSWER**: **Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 110 and, accordingly, denies them.**

**COUNT VII – State Law Claim**
**Malicious Prosecution**
**(Against Individual Defendants)**

111.    Plaintiff re-alleges paragraphs 1 through 65.

**ANSWER**: **Defendant incorporates his answers to each of the foregoing paragraphs as if set forth fully herein.**

112.    Defendants accused Mr. Brown of criminal activity knowing those accusations to be without genuine probable cause, and they made statements to prosecutors with the intent of exerting influence to institute and continue the judicial proceedings.

**ANSWER**: **Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 112 directed to Defendant Officers, and accordingly denies them. Defendant denies each and every remaining allegation contained in Paragraph 112.**

113.    Defendants caused Mr. Brown to be improperly subjected to judicial proceedings for which there was no legitimate probable cause. These judicial proceedings were instituted and continued maliciously, resulting in injury.

**ANSWER**: **Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 113 directed to Defendant Officers, and accordingly denies them. Defendant denies each and every remaining allegation contained in Paragraph 113.**

114.    Moreover, Defendants caused Mr. Brown to be improperly subjected to judicial proceedings for which Defendants possessed evidence to support probable cause to believe that an individual other than Mr. Brown had committed the crime. These judicial proceedings against Mr. Brown were instituted and continued maliciously, resulting in injury.

**ANSWER**: Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 114 directed to Defendant Officers, and accordingly denies them. Defendant denies each and every remaining allegation contained in Paragraph 114.

115.     Defendants' statements regarding Mr. Brown's alleged culpability were made with knowledge that the statements were false, fabricated, and perjured. Defendants also fabricated evidence by coercing false inculpatory testimony from actual and purported eyewitnesses. The Defendants withheld the facts of their manipulation and the resulting fabrications from Mr. Brown.

**ANSWER**: Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 115 directed to Defendant Officers, and accordingly denies them. Defendant denies each and every remaining allegation contained in Paragraph 115.

116.     The misconduct described in this Count was undertaken with malice, willfulness, and reckless indifference to Mr. Brown's rights.

**ANSWER**: Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 116 directed to Defendant Officers, and accordingly denies them. Defendant denies each and every remaining allegation contained in Paragraph 116.

117.     As a result of this misconduct, Plaintiff sustained, and continues to sustain, injuries including pain and suffering.

**ANSWER**: Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 117 and, accordingly, denies them.

**COUNT VIII – State Law Claim**
**Intentional Infliction of Emotional Distress**
**(Against Individual Defendants)**

118.     Plaintiff re-alleges paragraphs 1 through 65.

**ANSWER: Defendant incorporates his answers to each of the foregoing paragraphs as if set forth fully herein.**

119.     Defendants individually, jointly, and in conspiracy;

a.     Psychologically and physically coerced and tortured Mr. Brown, which led to him signing the fabricated confession that was drafted by Defendant Whitehouse and edited by Defendant Campbell;

b.     failed to prevent or stop said physical coercion and torture;

c.     procured the prosecution, conviction, and imprisonment of Mr. Brown for murders and an arson he did not commit; and

d.     by means of the coercion, torture, and false and fabricated confession and other evidence, engaged in extreme and outrageous conduct.

**ANSWER: Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 119 directed to Defendant Officers, and accordingly denies them. Defendant denies each and every remaining allegation contained in Paragraph 119.**

120.     Defendants intended to inflict severe emotional distress on Mr. Brown, and knew that their conduct would cause Mr. Brown severe emotional distress.

**ANSWER: Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 120 directed to Defendant Officers,**

**and accordingly denies them. Defendant denies each and every remaining allegation contained in Paragraph 120.**

121.    Defendants' acts and conduct as set forth above were extreme and outrageous. Defendants' actions were rooted in an abuse of power or authority, and they were undertaken with intent to cause, or were in reckless disregard of the probability that their conduct would cause, severe emotional distress to Mr. Brown, as is more fully alleged above.

**ANSWER: Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 121 directed to Defendant Officers, and accordingly denies them. Defendant denies each and every remaining allegation contained in Paragraph 121.**

122.    As a direct and proximate result of Defendants' outrageous conduct, Mr. Brown was, and continues to be, injured, and has experienced, and continues to experience, severe emotional distress, including nightmares, sleep disruption, anxiety, depression, inability to focus or concentrate, and a recurring fear of re-arrest, torture, and re-prosecution.

**ANSWER: Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 122 and, accordingly, denies them.**

**COUNT IX – State Law Claim
Civil Conspiracy
(Against Individual Defendants)**

123.    Plaintiff re-alleges paragraphs 1 through 65.

**ANSWER: Defendant incorporates his answers to each of the foregoing paragraphs as if set forth fully herein.**

124.     As described more fully in the preceding paragraphs, Defendants conspired by concerted action to accomplish an unlawful purpose by unlawful means.

**ANSWER**: **Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 124 directed to Defendant Officers, and accordingly denies them. Defendant denies each and every remaining allegation contained in Paragraph 124.**

125.     In furtherance of the conspiracy, Defendants committed overt acts and were otherwise willful participants in joint activity.

**ANSWER**: **Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 125 directed to Defendant Officers, and accordingly denies them. Defendant denies each and every remaining allegation contained in Paragraph 125.**

126.     The misconduct described in this Count was undertaken with malice, willfulness, and reckless indifference to Mr. Brown's rights.

**ANSWER**: **Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 126 directed to Defendant Officers, and accordingly denies them. Defendant denies each and every remaining allegation contained in Paragraph 126.**

127.     As a proximate result of Defendants' conspiracy, Mr. Brown suffered damages, including severe emotional distress and anguish, as is more fully alleged above.

**ANSWER**: **Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 127 and, accordingly, denies them.**

**COUNT X – State Law Claim**
**Respondeat Superior**

**(Against Defendant City of Chicago)**

128.    Plaintiff re-alleges paragraphs 1 through 65.

**ANSWER**: **Defendant incorporates his answers to each of the foregoing paragraphs as if set forth fully herein.**

129.    In committing the acts alleged in the preceding paragraphs, Detectives Kutz, Fine, and Campbell were members of, and agents of, the Chicago Police Department acting at all relevant times within the scope of their employment and under color of law.

**ANSWER**: **Count X is not directed against Defendant and, accordingly, no answer is due.**

130.    Defendant City of Chicago is liable as principal for all torts committed by its agents.

**ANSWER**: **Count X is not directed against Defendant and, accordingly, no answer is due.**

**COUNT XI – State Law Claim**
**Indemnification**

131.    Plaintiff re-alleges paragraphs 1 through 65.

**ANSWER**: **Defendant incorporates his answers to each of the foregoing paragraphs as if set forth fully herein.**

132.    Illinois law provides that public entities are directed to pay any tort judgment for compensatory damages for which employees are liable within the scope of their employment.

**ANSWER**: **Defendant admits that Cook County may have a duty to indemnify Defendant.**

133.    In committing the acts alleged in the preceding paragraphs, Defendants Kutz, Fine, and Campbell were members of, and agents of, the Chicago Police Department acting at all

relevant times within the scope of their employment and under color of law.

**ANSWER: Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 133 and, accordingly, denies them.**

134. In committing the acts alleged in the preceding paragraphs, Defendant Whitehouse was a member of, and agent of, the Cook County State's Attorney's Office acting at all relevant times within the scope of his employment and under color of law.

**ANSWER: Defendant admits that he was acting in his capacity as a duly appointed Assistant State's Attorney during at the relevant time to this complaint. Defendant denies every remaining allegation contained in paragraph 134.**

## AFFIRMATIVE DEFENSES

### FIRST AFFIRMATIVE DEFENSE

### Absolute Prosecutorial Immunity

At all relevant times, Defendant Whitehouse was assigned to the felony review unit of the Cook County State's Attorneys' Office and, in this capacity, evaluated whether criminal charges should have been filed against Plaintiff. When Defendant Whitehouse spoke with suspects or witnesses, took statements, and ultimately determined whether criminal charges should be approved, he performed acts toward initiating a prosecution and presenting the State's case against those other persons. Because the conduct complained of on the part of Defendant Whitehouse arises out of the evaluation of evidence and taking statements for the purpose of initiation and prosecution of criminal charges, Plaintiff's claims are barred on the basis of absolute prosecutorial immunity.

### SECOND AFFIRMATIVE DEFENSE

### Qualified Immunity

At all relevant times, Defendant Whitehouse was an Assistant State's Attorney assigned to the felony review unit of the Cook County State's Attorney's Office. To the extent any of his actions are not protected by absolute prosecutorial immunity, they are protected by qualified immunity as his actions were at all times proper in light of clearly established law.

## THIRD AFFIRMATIVE DEFENSE

### Sovereign Immunity

Plaintiff's claims against Defendant Whitehouse are really claims against a State official based upon his actions as an Assistant State's Attorney, functions that fall within the scope of his employment and authority as an Assistant State's Attorney. Plaintiff's claims against Defendant Whitehouse relate to the initiation of charges against, and the criminal prosecution of, Plaintiff. The State's Attorney is the constitutional officer vested with exclusive discretion in the initiation and management of a criminal prosecution. The prosecution of Plaintiff's case is, therefore, well within the scope of the State's Attorney's authority. The Illinois Court of Claims has sole and exclusive jurisdiction over Plaintiff's state law claims against Defendant Whitehouse

## FOURTH AFFIRMATIVE DEFENSE

### Tort Immunity Act 745 ILCS 10/2-204

Because Defendant Whitehouse was, at all times relevant to the Plaintiff's complaint, a public employee acting within the scope of his employment, he is immune from suit pursuant to 745 ILCS 10/2-204 for any injury caused by the act or omission of another person.

## FIFTH AFFIRMATIVE DEFENSE

### Tort Immunity Act 745 ILCS 10/2-202

The acts or omissions that Defendant Whitehouse allegedly took would have been acts or omissions in his capacity as public employee in the execution or enforcement of a law and

because those acts or omissions did not constitute willful or wanton conduct, Defendant

Whitehouse is immune from suit pursuant to 745 ILCS 10/2-202.

## SIXTH AFFIRMATIVE DEFENSE

### Failure to Mitigate Damages

Plaintiff has failed to mitigate the damages he claims to have sustained.

WHEREFORE, Defendant Joel Whitehouse respectfully requests that this Court enter

judgment in his favor and against Plaintiff, Arthur Brown, that the action be dismissed with

prejudice, and that costs be assessed against Plaintiff.

## JURY DEMAND

Defendant Joel Whitehouse hereby demands a trial by jury pursuant to Federal Rule of

Civil Procedure 38(b) on all issues so triable.

Respectfully Submitted,

KIMBERLY M. FOXX
State's Attorney of Cook County

By:     */s/ Derek Kuhn*
        Derek Kuhn
        Assistant State's Attorneys
        500 Richard J. Daley Center
        Chicago, IL 60602
        (312) 603-5527
        Derek.Kuhn@cookcountyil.gov