# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| ARTHUR BROWN, | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 18 CV 7064 |
| | ) |
| | ) Judge Rebecca R. Pallmeyer |
| CITY OF CHICAGO, et al., | ) |
| | ) Magistrate Judge Maria Valdez |
| Defendants. | ) |

## DEFENDANT CITY OF CHICAGO'S MOTION TO BIFURCATE §1983 CLAIMS AND TO STAY DISCOVERY AND TRIAL ON THOSE CLAIMS

Pursuant to Federal Rule of Civil Procedure 42(b), Defendant City of Chicago (the "City") moves this Court to (1) bifurcate plaintiff's §1983 claims against it, and (2) stay discovery and trial of those claims. In support, the City states:

1. At a recent court hearing, plaintiff's counsel expressed an interest in expediting discovery in this matter. The City herein proposes a procedure that will go a long way in accomplishing that goal, while providing additional benefits to the parties.

2. Plaintiff Arthur Brown filed an Amended Complaint (hereinafter, "AC") (Dkt. #10) asserting claims that invoke 42 U.S.C. §1983 against the City and three former police officers from the Chicago Police Department ("CPD"), among others. The lawsuit arises out of plaintiff's 1988 arrest, prosecution, and 1990 conviction for arson and murder. (AC, ¶¶ 1, 16, 43). As against the City, plaintiff asserts a claim pursuant to *Monell v. Department of Social Services of the City of New York*, 436 U.S. 658 (1978), alleging the City maintained policies and practices that caused the alleged constitutional violations of which he complains.

3. Pursuant to Rule 42(b), the City moves this Court to (1) bifurcate the *Monell* claims against the City from the claims against the Defendant Officers, and (2) stay discovery

and postpone trial on the *Monell* claims until the resolution of all claims against the Defendant Officers. The common-sense, pragmatic values embodied in Rule 42(b) favor granting this motion. Not only will unduly burdensome discovery be avoided, but there also will be no need for an extended and complex trial on the City's *Monell* liability that would prolong a potentially lengthy trial on the claims against the individual defendants. The potential for undue prejudice to the Defendant Officers will be avoided, and plaintiff will be relieved of the burden of having to establish municipal liability in order to obtain entry of judgment against the City on his §1983 claims (as long as he proves his constitutional rights were violated by a Defendant Officer in one of the ways alleged in the AC). The City's motion allows the parties to fulfill their professional responsibility to seek resolution of this action in a just, speedy, and inexpensive manner. FRCP 1. Indeed, this Court recently approved bifurcation in a case involving *Monell* allegations similar to those asserted here. *Lindsey v. Orlando*, 232 F. Supp. 3d 1027 (N.D. Ill. 2017); *see* ¶ 20, *infra*. For the reasons explained below, the Court should grant this motion.

## DISCUSSION

4. District courts have broad discretion in ordering the bifurcation of a plaintiff's claims as part of their inherent power to control their docket. *See Krocka v. City of Chicago*, 203 F.3d 507, 516 (7th Cir. 2000). FRCP 42(b) allows district courts to separate the trial of any issue if separation is warranted "in furtherance of convenience or to avoid prejudice, or when separate trials will be conducive to expedition and economy." *Berry v. Deloney*, 28 F.3d 604, 610 (7th Cir. 1994). Importantly, only "one of these criteria need be satisfied for a court to order a separate trial." *Id.* Here, bifurcation of the *Monell* claims and a stay of discovery related to those claims best serve the interests identified in Rule 42(b) of avoidance of prejudice, convenience, expedition, and economy. Where, as here, bifurcation is warranted, FRCP 26 allows the court to stay discovery on the *Monell* claim. *Lindsey*, 232 F. Supp. 3d at 1038.

### A. Bifurcation best serves the interests of litigation and judicial economy.

5. Bifurcation allows the City to avoid potentially unnecessary discovery and litigation costs should plaintiff fail to establish a constitutional violation and thus, as a matter of law, be unable to prove any *Monell* violation. *See City of Los Angeles v. Heller*, 475 U.S. 796, 799 (1986); *Matthews v. City of East St. Louis*, 675 F.3d 703, 709 (7th Cir. 2012); *Treece v. Hochstetler*, 213 F.3d 360, 361 n.2 (7th Cir. 2000), *quoting Tesch v. County of Green Lake*, 157 F.3d 465, 477 (7th Cir. 1998); *Estate of Phillips v. City of Milwaukee*, 123 F.3d 586, 597 (7th Cir. 1997); *Thompson v. Boggs*, 33 F.3d 847, 859 (7th Cir. 1994). These costs primarily take the form of answering extensive written discovery, producing thousands of pages of documents, producing Rule 30(b)(6) witnesses for deposition, and retaining and defending against expert witnesses. Bifurcation "permits a bypass of discovery relating to the municipality's policies and practices, which . . . can add significant time, effort, and complications to the discovery process." *Medina v. City of Chicago*, 100 F. Supp. 2d 893, 895 (N.D. Ill. 2000).

6. Motions to bifurcate offer important efficiencies even in the most routine §1983 actions. This case, which goes back some 30 years, is far from routine, and bifurcation is particularly well-suited when one examines the broad, wide-ranging, and disparate *Monell* allegations of the AC. A cursory review reveals plaintiff's "kitchen-sink" *Monell* claims implicate numerous areas of police work allegedly "beginning in the 1970's." (AC, ¶49). The alleged unconstitutional practices, which purportedly span almost 50 years, include: fabrication of evidence (¶49); withholding/destruction of exculpatory evidence (¶¶ 49; 100); physical and psychological coercion to obtain false confessions (*id.*); use of suggestive identification procedures (*id.*); denial of counsel to suspects (*id.*); perjury during criminal proceedings (*id.*); threatening and/or manipulating witnesses (¶49); filing of false police reports (¶100); the alleged "code of silence" within the CPD (¶100); failure to adequately train (¶102); inadequate

3

supervision (¶102); failure to adequately discipline (¶102); and, pursuit of "wrongful convictions through flawed investigations" (¶99).

7. The number and type of documents that would fall within the scope of these *Monell* issues likely will be voluminous, and preparing responses will be burdensome, expensive, and time-consuming. *See, e.g., Ojeda-Beltran v. Lucio*, 2008 WL 2782815, at *2 (N.D. Ill. 2008) (Aspen, J.) (Granting bifurcation of *Monell* where "Plaintiff's contention that the *Monell* litigation will not require substantial additional resources on the part of the parties is difficult to reconcile with the colossal scope of their *Monell* discovery requests"); *Horton v. City of Chicago*, 2016 WL 316878, at *2 (N.D. Ill. Jan. 26, 2016), *quoting Moore v. City of Chicago*, 2007 WL 3037121, at *9 (N.D. Ill. 2007) ("[O]ften, 'claims of municipal liability require an extensive amount of work on the part of plaintiff's attorneys and experts, and an extraordinary amount of money must be spent in order to prepare and prove them'"). Take for example just one of plaintiff's *Monell* theories: failure to adequately discipline. Discovery on such a theory could involve CPD disciplinary records for hundreds of non-defendant officers going all the way back to the 1970s. And that would be just a fraction of the documents to be located, reviewed, redacted, and produced given the broad scope of plaintiff's *Monell* claim. Considering that such expansive and time-consuming *Monell* discovery may ultimately be unnecessary to resolve plaintiff's claims in this case, there is no reason to burden the parties now with litigating *Monell* discovery on top of the already substantial discovery on the underlying claims.

8. Some plaintiffs have argued the overlap of discovery between the individual officers and *Monell* renders bifurcation inefficient. While there may be some overlap, it will involve only a fraction of the broad *Monell* policy and practice discovery implicated in the AC. (*See* ¶6, *supra*). For example, documents relating to the disciplinary histories of the three

4

Defendant Officers will pale in number compared to the disciplinary histories arguably made relevant by the broad failure to discipline claim discussed in the preceding paragraph. Any overlap is vastly overshadowed by (and to paraphrase *Ojeda-Beltran,* difficult to reconcile with) the colossal scope and range of the issues raised in plaintiff's *Monell* claim.

9. Discovery costs are not the only potential savings to be achieved. Granting the City's motion also would promote judicial economy and protect this Court's interests in several additional ways. Bifurcation of the *Monell* claims would eliminate the need for: (1) judicial intervention in discovery disputes arising from these claims, which can be frequent and contentious (*see Claxton v. City of Chicago*, 2015 WL 5304630, at *2 (N.D. Ill. Sept. 9, 2015) ("If anything, the Parties' seemingly inevitable discovery battles weigh in favor of postponing this [*Monell*] discovery and the related motion practice until after individual liability is established")); (2) Rule 30(b)(6) witnesses regarding the numerous policies/procedures implicated by the wide-ranging *Monell* allegations; (3) costly expert discovery on the various *Monell* claims; (4) ruling on any summary judgment motion the City may bring; and (5) if the City's motion for summary judgment is denied, presiding over a trial that undoubtedly will be lengthier, and legally and factually more complex, if the jury is allowed to hear evidence of the various alleged patterns, practices, customs, or policies. *See Medina*, 100 F. Supp. 2d at 895 (the "trial of the claims against the individual officers is . . . likely to be shorter, and perhaps significantly shorter, than a trial also involving *Monell* claims").

10. The City's position is best captured by Judge Hart's observations in *Almaraz v. Haleas*, 602 F. Supp. 2d 920, 924 (N.D. Ill. 2008), wherein he reasoned bifurcation of *Monell* would result in a significant efficiency and economy of litigation because there would be "a good chance that the case will be fully resolved without ever having to complete discovery on the

*Monell* issues or any related summary judgment or trial issues." Judge Hart added, "Bifurcating the *Monell* issue is likely to save substantial litigation time and expenses both initially and, in the long run, because it is also likely to result in there ultimately being no need to conduct discovery or resolve further issues regarding *Monell*." *Id*. at 926.

11. Recent experience, including a case in which this Court was involved, confirms the efficiencies and economies that can be achieved through bifurcation. In *Patrick v. City of Chicago*, Case No. 14 C 3658 (N.D. Ill.) (Judge Guzman), and *Phillips/Gardner v. City of Chicago*, Case No. 14 C 9372 (N.D. Ill.) (Judge Pallmeyer), the plaintiffs asserted *Brady* claims against police officer defendants and *Brady*-based *Monell* claims against the City. *Monell* discovery was bifurcated so the parties could focus discovery efforts on the underlying claims against the individual defendants. In both cases, summary judgment was granted in favor of the individual defendant officers on the *Brady* claims. *Patrick v. City of Chicago*, 213 F. Supp. 3d 1033, 1051-53 (N.D. Ill. 2016); *Phillips/Gardner v. City of Chicago*, 2018 WL 1309881, *19-23 (N.D. Ill. Mar. 13, 2018). The absence of an underlying *Brady* violation in those cases meant there was no *Brady*-based *Monell* claim available against the City. *Heller*, 475 U.S. at 797. Because of bifurcation, each case was brought to an earlier resolution, and the avoidance of a significant amount of ultimately unnecessary discovery on the *Brady*-based *Monell* claims resulted in substantial savings of time, effort, and costs to the parties and the courts.

12. The Seventh Circuit has explicitly endorsed bifurcation as a means to avoid "the waste of the valuable time and resources of the court," as well as of serving the interests furthered by Rule 42(b). *See Treece v. Hochstetler*, 213 F.3d 360, 365 (7th Cir. 2000). More recently, the Seventh Circuit recognized that bifurcation of *Monell* claims in cases like this one furthers judicial economy and prevents unnecessary efforts by the parties. *Swanigan v. City of*

*Chicago*, 775 F.3d 953, 962 (7th Cir. 2015). Of relevance here, the Seventh Circuit noted the district court's decision to stay the *Monell* suit while the claims against the individual officers were litigated to judgment "was sensible, especially in light of the volume of civil-rights litigation that district courts must manage." *Id*. at 962. And in situations where the plaintiff seeks only monetary damages and "a municipal defendant is willing (or required) to indemnify individual defendants for compensatory damages as well as an award of attorney's fees and costs," there "is no need for the parties to spend time and money litigating a *Monell* claim." *Id.*

13. As in *Swanigan*, a finding of liability against the Defendant Officers remains a necessary predicate for any imposition of municipal liability in this case. (*See* ¶¶ 22-27, *infra*). Bifurcating the *Monell* claims and staying discovery and trial on those claims serves the economic interests of this Court and the parties. *See Harris v. City of Chicago*, 2016 WL 3261522 (N.D. Ill. 2016).

B. **Bifurcation can help prevent undue prejudice.**

14. Allowing the claims against the Defendant Officers and the City to go to trial at the same time raises the potential of unfair prejudice to the individual defendants. Rule 42(b) specifically identifies avoidance of prejudice as grounds for bifurcation. Bifurcation of *Monell* claims from those asserted against an individual defendant protects him or her from possible prejudice caused by the introduction at trial of extensive and extraneous evidence regarding alleged misconduct in which he or she was not involved. Indeed, prejudice may arise if the trial of the alleged misconduct of the named defendants is obscured and overwhelmed by evidence of complaints of other misconduct made by other people, concerning other officers, at other places and times. As Judge Aspen noted in granting a similar motion for bifurcation:

> We believe that there is a real "danger that evidence admissible on the issues relating to conduct by the City . . . will contaminate the mind of the finder of fact in its consideration of the liability of the

7

> other defendant[s]." As demonstrated by Plaintiffs' complaint and discovery requests, Plaintiffs intend to prove their *Monell* claim, at least in part, through the introduction of evidence regarding alleged acts of police misconduct committed by non-party officers. We think a substantial risk exists that such evidence would be prejudicial to Defendant officers in their attempts to defend themselves against Plaintiffs' claims and conclude that bifurcation of the *Monell* claim is a proper means to combat this potential prejudice.

*Ojeda-Beltran*, 2008 WL 2782815, at *3.

15. Creation of unfair prejudice to the Defendant Officers would be an inevitable result of plaintiff's *Monell* claim, particularly given the wide-ranging nature of the allegations. The focus of plaintiff's *Monell* claim on the City's alleged "failure" to prevent misconduct by other Chicago police officers against other citizens creates a real danger of contaminating the jury's consideration of the liability of the Defendant Officers in *this* case. The hallmark of a §1983 claim is that defendants are liable "for their own misdeeds but not for anyone else's." *Burks v. Raemisch*, 555 F.3d 592, 596 (7th Cir. 2009). So, the misdeeds of individuals other than defendants are entirely irrelevant to the claims against those defendants. Arguing non-defendant officer misconduct in front of the jury would invite the jury to find the Defendant Officers guilty by association, rather than deciding liability based on their own actions. As Judge Aspen recognized, the risk of unfair prejudice to an individual defendant by permitting evidence of other non-defendant officers' conduct to prove alleged municipal polices is substantial and would significantly undermine the ability of the Defendant Officers to receive fair trials. *Ojeda-Beltran*, *supra*. Bifurcation of the *Monell* claims is a proper means to focus plaintiff's claims against each defendant individually and combat this potential prejudice.

16. Likewise, there is risk of prejudice to the City if the claims are tried in a single trial. *Monell* and its progeny provide plaintiffs with a vehicle to hold a municipality liable for its own conduct; it is not a means by which to hold a municipality liable based on some form of

8

*respondeat superior* or vicarious liability. *Milestone v. City of Monroe*, 665 F.3d 774, 780 (7th Cir. 2011); *Lewis v. City of Chicago*, 496 F.3d 645, 656 (7th Cir. 2007). A jury asked to weigh evidence of Defendant Officers' alleged misconduct at the same time as policy evidence may confuse that evidence and the law surrounding *Monell* liability. The serious allegations against the Defendant Officers, if proven at trial, may cause the jury to hold the City liable on the *Monell* claims for that misconduct without giving the *Monell* claims their due deliberation. *Monell* thus would devolve into a *respondeat superior* claim, contrary to the applicable law. *Milestone*, 665 F.3d at 780. Bifurcating the *Monell* claims from those against the Defendant Officers would avoid the risks of unfair prejudice, the misapplication of evidence, or the misinterpretation of law.

      **C.**    **Bifurcation will not affect plaintiff's recovery of any compensatory damages to which he may be entitled.**

      17.    Bifurcation and a stay of discovery and trial as to the *Monell* claims will not affect plaintiff's recovery of any compensatory damages that a jury may award. To the extent the Defendant Officers were acting within the scope of their employment as plaintiff alleges, the City would have both a statutory and a contractual obligation to indemnify them for any judgment for compensatory damages (*see, e.g.*, 745 ILCS 10/9-102), while as a matter of law, plaintiff is not entitled to recover any additional compensatory damages if he prevails against the City on his *Monell* claim after a finding of liability against the Defendant Officers. *See Spanish Action Committee of Chicago v. City of Chicago*, 766 F.2d 315, 321 (7th Cir. 1985); *Moore v. City of Chicago*, 2007 WL 3037121, at *9 (N.D. Ill. 2007). Limiting this case to the litigation of those claims that may afford plaintiff whatever monetary compensation he may be entitled serves as an additional basis for this Court to grant the City's motion.

18. Some plaintiffs, in opposition to this type of motion, have argued that granting the relief sought by the City potentially could deprive them of a remedy they could not obtain against the Defendant Officers. Specifically, these plaintiffs argue they might prove a constitutional violation at trial, but lose their claim against the City because of a successful qualified immunity defense by the individual defendants. (*See, e.g., Elrod v. City of Chicago*, 2007 WL 3241352, *4-5 (N.D. Ill. 2007)). As in *Elrod*, the likelihood of a successful qualified immunity defense in the context of the allegations against the Defendant Officers is not persuasive. Moreover, to address this specific concern, the City will agree to entry of judgment against it for compensatory damages and, to the extent allowed by the Court, reasonable attorneys' fees, if the finder of fact determines an individual Defendant Officer violated plaintiff's constitutional rights as alleged in the Complaint, even if the finder of fact further determines that individual is not liable because he is entitled to qualified immunity. *See* Limited Consent to Entry of Judgment Against Defendant City of Chicago (attached hereto as Exhibit A).

**D. Courts in this District, including this Court, have granted motions for bifurcation under similar circumstances.**

19. As the court in *Ojeda-Beltran* (2008 WL 5244616, at *1-2) noted, motions to bifurcate are not uncommon in this district and courts "have both granted and denied similar motions by the City." The court's decision on a motion to bifurcate will "turn on a 'case-specific assessment of the advantages and disadvantages of bifurcation.'" *Kitchen v. Burge,* 2012 U.S. Dist. LEXIS 158088, at *7 (N.D. Ill. 2012) (Tharp, J.), *quoting Ojeda-Beltran*, at *1.

20. Bifurcation of *Monell* claims has been embraced as an effective means of promoting significant efficiency and economy of discovery and litigation. *Swanigan*, *supra*. In *Lindsey v. Orlando*, the plaintiff, like plaintiff here, asserted a broad *Monell* claim that "encompass[ed] not only failure to train, but also failure to supervise, investigate, and discipline,

10

related to both the individual defendants and other officers." 232 F. Supp. 3d at 1037. This Court granted the City's motion to bifurcate in *Lindsey*, finding that bifurcation made "particular sense where the *Monell* claim [was] wholly dependent on the outcome of the case against the individual defendants." *Id*. at 1035. As in *Lindsey*, bifurcation here makes "particular sense," as the Monell claim is wholly dependent on the outcome of the claims against the Defendant Officers. (*See* ¶¶ 23-27, *infra*).

21. *Medina*, *supra*, involved an earlier version of this motion. The *Medina* court was reluctant to grant bifurcation based on a couple of potentially problematic issues. As described by the court:

> In the present case at least, there is no guarantee that severance would avoid the need for two trials or further litigation regarding payment of a judgment. The officers had not offered to waive the defense of qualified immunity - thus putting into play the possibility of the need for two trials discussed above – and the City has not offered to stipulate (as the municipality did in *Treece v. Hochstetler*) to a judgment against the City for any compensatory damage awarded against the officers. Without a showing that these issues have been taken off the table, the Court cannot conclude that the balance tilts in favor of bifurcation.

100 F. Supp. 2d at 897-98. Each of these identified concerns is addressed by the City in its proposed Limited Consent to Entry of Judgment and has been "taken off the table." (*See* Exhibit A). The City offers to allow a judgment to be entered against it for any compensatory damage and reasonable attorney's fees awarded against the Defendant Officers, and it will agree to entry of judgment against it for those damages even if those individual defendants were to subsequently prevail on qualified immunity defenses. (*See* ¶18, *supra*). As summarized in *Lindsey*, "[T]he City's liability turns on whether the individual officers violated Lindsey's constitutional rights. If they did, the City will pay the judgment; if they did not, the elements of *Monell* are not met and the case will be over." 232 F. Supp. 3d at 1036.

22. Some plaintiffs have argued these bifurcation motions have become disfavored since the Seventh Circuit's decision in *Thomas v. Cook County Sheriff's Dept.*, 604 F.3d 293 (7th Cir. 2009). *Thomas* does not automatically apply to defeat these motions, and it does not apply here. To repeat an important point, the Court's decision should be based on a "case specific" assessment. *Kitchen*, 2012 U.S. Dist. LEXIS 158088, at *6-7. At issue is whether the City, *under the facts alleged in this Amended Complaint*, can be held liable pursuant to *Monell* absent a finding that an individual Defendant Officer violated plaintiff's constitutional rights.

23. In *Heller*, the plaintiff brought a civil rights action against the City of Los Angeles and two police officers alleging the officers used excessive force and falsely arrested him. 475 U.S. at 797. The jury returned a verdict in favor of the defendant officers, so the district court dismissed the action against the city, "concluding that if the police officers have been exonerated by the jury there could be no basis for assertion of liability against the City." *Id*. at 798. The United States Supreme Court affirmed the city's dismissal, finding in pertinent part:

> [N]either *Monell v. New York City Dept. of Social Services*, 436 U.S. 658 (1978), nor any other of our cases authorizes the award of damages against a municipal corporation based on the actions of one of its officers when in fact the jury has concluded that the officer inflicted no constitutional harm. If a person has suffered no constitutional injury at the hands of the individual police officer, the fact that the department regulations might have *authorized* the use of constitutionally excessive force is quite beside the point. (Emphasis in original).

*Id*. The Supreme Court explained the municipality was sued only because the plaintiff thought it was legally responsible for the defendant officers' actions, and if the officer inflicted no constitutional harm on the plaintiff, it was "inconceivable" that the city could be liable to the plaintiff. *Id*. That is precisely the position taken by the City here. *See also Lindsey*, 232 F. Supp. 3d at 1036 ("In cases such as this one, the court believes it is unlikely that the City can be held liable under *Monell* unless the Defendant Officers themselves are found liable").

24. In *Thomas*, 604 F.3d 239, the Seventh Circuit suggested that under certain circumstances, a municipality could be held liable under *Monell* even when its employees are not, unless such a finding would create an inconsistent verdict. According to *Thomas*:

> To determine whether the [municipality]'s liability is dependent on its officers, we look to the nature of the constitutional violation, the theory of municipal liability, and the defenses set forth.

*Id*. at 305. Implicit in its finding, *Thomas* suggested municipal liability may or may not depend on individual officer liability. Analysis of the nature of the constitutional violations alleged in the AC, as well as plaintiff's theories of municipal liability, demonstrates the City's *Monell* liability in this case is entirely dependent on the underlying liability of its officers, such that bifurcation is an appropriate mechanism to streamline this case.

25. As against the Defendant Officers, the claimed misconduct broadly involves the coercion of a false confession, suppression of exculpatory evidence, and fabrication of evidence. Based on the nature of these alleged constitutional violations, it is clear the City's potential *Monell* liability is contingent on its officers' liability for the underlying misconduct. For example, plaintiff alleges the Defendant Officers improperly coerced him to make a false confession. (AC, ¶¶ 30-35). But if the Defendant Officers did not coerce a false confession, any City policy of encouraging/facilitating/concealing such misconduct is, to quote *Heller*, "quite beside the point." 475 U.S. at 799. A verdict in favor of the Defendant Officers on the question of whether they coerced a false confession negates the possibility plaintiff could succeed on a *Monell* claim based on the same alleged misconduct. *See Thompson v. Boggs*, 33 F.3d 847, 859 (7th Cir. 1994) (Verdict in favor of defendant officer on claim he used excessive force "precludes the possibility that [the plaintiff] could prevail on his *Monell* claim").

26. To restate it in the terms of *Thomas*, a verdict in favor of the Defendant Officers on the coercion claim would be inconsistent with a verdict against the City on a *Monell* claim

based on an alleged practice of encouraging the coercion of false confessions. The liability of the individual defendants is a necessary predicate for municipal liability under this *Monell* theory. *See, e.g., Lindsey*, *supra*; *Matthews v. City of East St. Louis*, 675 F.3d 703, 708-09 (7th Cir. 2012) (following *Heller* rather than *Thomas* where the municipality's liability was directly dependent on the liability of the defendant officers); *see also Claxton*, 2015 WL 5304630, at *1 (and cases cited therein); *Horton*, 2016 WL 316878, at *4 ("A jury could not consistently find that Walker did not use excessive force but that the City's policies encouraged Walker's use of excessive force").

27. Analysis of plaintiff's other theories (suppression of exculpatory evidence; fabrication of evidence) yields the same conclusion. The City's potential *Monell* liability is dependent on the officers' conduct, *i.e.*, whether the individual officers "deliberately" withheld exculpatory evidence or "fabricated" false reports. These allegations do not involve, as did *Thomas*, the possibility that a well-intentioned police officer violated plaintiff's rights because of an impermissible policy. *Harris, supra*, is particularly instructive here. In language equally applicable to this case, *Harris* explained:

> The nature of the alleged constitutional violations, fabricating a confession and coercing Plaintiff into making that confession, depends on the individual officers' actions. *See Taylor v. Kachiroubas*, 2013 WL 6050492, at *4 (N.D. Ill. 2013) ("Here, however, the actions of the individual officers in collecting and fabricating evidence against [plaintiffs] are the source of the alleged harm to the plaintiffs, and any 'policy' exerted harm through those actions, not independently of them"). Similarly, the policy of filing false reports and actively covering up illegal interrogations and confessions depends on the actions of individual police officers. The alleged harm to Plaintiff was not caused by any *de facto* policies independent of any officer's actions; thus, a constitutional violation by an individual officer must be found before the City may be held liable under the *Monell* claims. *See Claxton v. City of Chicago, Illinois*, 2015 WL 5304630, at *1 (N.D. Ill. 2015) ("The alleged harm to Plaintiffs was not caused

14

independently by these alleged City policies but rather through the Officer Defendants' actions, and thus the Officer Defendants must first be found liable before the City may be held liable on Plaintiffs' *Monell* claims.").

2016 WL 3261522, at *3. As in *Harris*, a constitutional violation by an individual officer is necessary before the City could be liable under the *Monell* claim.[1] Disposition of the claims against the Defendant Officers, in light of the City's Limited Consent to Entry of Judgment, would "practically end the litigation" such that bifurcation promotes judicial economy. *Harris*, 2016 WL 3261522, at *3. As in *Harris*, *supra*, bifurcation would promote judicial economy, prevent unfair prejudice to the individual defendants, and would not prejudice plaintiff.

## CONCLUSION

28. The City's motion to bifurcate the *Monell* claims and stay discovery and trial on those claims seeks to significantly facilitate and streamline the litigation process, serve the interests of efficiency and economy, and prevent undue prejudice in plaintiff's case against the individual Defendant Officers. The benefits in terms of judicial and litigation economy are obvious and will accrue to both the parties and this Court. Accordingly, for the reasons set forth above, Defendant City asks this Court to grant the motion and (1) bifurcate plaintiff's §1983 *Monell* claims against the City of Chicago pursuant to Rule 42(b); and (2) stay both discovery and trial on those claims.

Dated: March 5, 2019
Respectfully submitted,

By: s/ Paul A. Michalik
One of the Attorneys for Defendant,
CITY OF CHICAGO

---

[1] Finally, to quote Judge Ellis in *Claxton*, "to the extent Plaintiffs also allege the City had a policy of failure to train its police officers, the Seventh Circuit has stated that 'a municipality cannot be liable under *Monell* [for failure to train] where there is no underlying constitutional violation by a municipal employee.'" 2015 WL 5304630, at *1, *quoting Sallenger v. City of Springfield*, 630 F.3d 499, 504 (7th Cir. 2010).

15

Terrence M. Burns
Paul A. Michalik
Daniel M. Noland
Elizabeth A. Ekl
Katherine C. Morrison
Reiter Burns LLP
311 South Wacker Drive, Suite 5200
Chicago, Illinois 60606
Tel: (312) 982-0090

# CERTIFICATE OF SERVICE

I hereby certify that on March 5, 2019, I electronically filed the foregoing **Defendant City of Chicago's Motion to Bifurcate §1983 Claims and to Stay Discovery and Trial on Those Claims** with the Clerk of the Court using the ECF system, which sent electronic notification of the filing on the same day to:

***Attorneys for Plaintiff***
Ronald S. Safer
Kelly M. Warner
Tal C. Chaiken
Allison M. Nichols
Riley Safer Holmes & Cancila LLP
Three First National Plaza
70 W. Madison Street
Suite 2900
Chicago, IL 60602
312-471-8700
rsafer@rshc-law.com
kwarner@rshc-law.com
tchaiken@rshc-law.com
anichols@rshc-law.com

***Attorney for Defendant Joseph Campbell***
Andrew M. Hale
William E. Bazarek
Shawn W. Barnett
Hale Law LLC
53 W. Jackson Bvld.
Suite 330
Chicago, IL 60604
312-870-6905
ahale@ahalelaw.com
wbazarek@ahalelaw.com
sbarnett@ahalelaw.com

***Attorney for Defendant Joel Whitehouse***
Derek R. Kuhn
Cook County State's Attorney's Office
500 Richard J. Daley Center
Chicago, IL 60602
312-603-5527
derek.kuhn@cookcountyil.gov

s/ Paul A. Michalik