**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| ARTHUR BROWN,<br><br>Plaintiff,<br><br>v.<br><br>CITY OF CHICAGO, former Chicago Police Officers JOSEPH CAMPBELL, Special Representative for DAVID KUTZ, and Special Representative for JOSEPH FINE, Former Assistant State's Attorney JOEL WHITEHOUSE, and other as-yet unidentified employees of the City of Chicago,<br><br>Defendants. | ) | Case No. 18 CV 7064<br><br>Judge Rebecca R. Pallmeyer<br><br>Magistrate Judge Maria Valdez |

**PLAINTIFF ARTHUR BROWN'S RESPONSE IN OPPOSITION TO DEFENDANT CITY OF CHICAGO'S MOTION TO DISMISS CERTAIN CLAIMS IN PLAINTIFF'S AMENDED COMPLAINT**

Plaintiff Arthur Brown ("Mr. Brown" or "Plaintiff"), by and through his attorneys, respectfully submits this Response in Opposition to the partial Motion to Dismiss filed by Defendant City of Chicago (the "City") (Dkt. 41). Mr. Brown was wrongfully convicted of arson and murder based on evidence fabricated by Defendants Joseph Campbell, David Kutz, Joseph Fine, and Joel Whitehouse (the "Individual Defendants"), who were acting pursuant to the City's long-standing pattern and practice of "solving" cases at all costs—even when that meant framing innocent people. Mr. Brown was imprisoned for nearly 30 years for a crime that he did not commit.

The City now seeks to dismiss portions of Mr. Brown's Amended Complaint (Dkt. 10), including several claims that were not even pleaded against the City. Notably, the City does not contest the sufficiency of the factual allegations raised in support of Mr. Brown's claims. Instead,

it raises a statute of limitations argument and takes issue with how one of the claims is styled. Neither of these arguments has merit, and the motion should be denied.

## FACTUAL BACKGROUND

On May 23, 1988, Defendants Fine and Campbell arrested Mr. Brown in connection with an investigation into a fire early that morning at the Magic Video store on 63rd Street near South Vernon Avenue, which resulted in two fatalities. Amended Compl., Dkt. 10 ¶ 25. Defendants Fine and Kutz detained Mr. Brown in a hot, windowless holding room, chained to a wall, for over seven hours. *Id.* ¶ 26. They ignored his requests for a lawyer and instead proceeded to interrogate him. *Id.* ¶ 27. After several hours, Defendant Fine yelled, "Motherfucker, you are going to talk to me now." *Id.* ¶ 32. He then grabbed Mr. Brown by the neck, choking him, and slammed his head and back against the wall several times. *Id.* Mr. Brown briefly lost consciousness, and when he came to, he feared for his life. *Id.*

As a result of this physical violence and psychological coercion, Mr. Brown agreed to sign a confession fabricated by Defendants Whitehouse, Fine, and Campbell. *Id.* ¶¶ 33-34. Defendants Fine, Campbell, and Kutz then fabricated additional evidence to corroborate Mr. Brown's false confession. *Id.* ¶ 36-40. This fabricated evidence was introduced at Mr. Brown's trial in April 1990. *Id.* ¶ 42. It was the only evidence against Mr. Brown and necessarily formed the basis for his wrongful conviction. *Id.* ¶¶ 42-43. The conviction was affirmed on appeal. *See People v. Brown*, 253 Ill. App. 3d 165, 624 N.E.2d 1378 (1st Dist. 1993); *People v. Brown*, 153 Ill. 2d 562, 624 N.E.2d 810 (1993); *Brown v. Illinois*, 511 U.S. 1038 (1994).

During Mr. Brown's state court post-conviction proceedings, he presented evidence that another individual confessed to setting the Magic Video fire. *Id.* ¶ 44. The state court granted his motion for a new trial based on this new evidence. *Id.*; *see also* Dkt. 41-2 (order confirming new

trial following evidentiary hearing and appeal). In August 2008, the State introduced the same fabricated evidence during Mr. Brown's second trial, and he was again convicted based on the involuntary and false confession. Amended Compl., Dkt. 10 ¶ 44. Mr. Brown remained in prison until the State dismissed the charges against him nearly ten years later, following his second successful post-conviction petition. *Id.* ¶ 47.

**LEGAL STANDARD**

For purposes of a motion to dismiss, all well-pleaded factual allegations in the complaint must be accepted as true and viewed in the light most favorable to the plaintiff, and all reasonable inferences from those allegations must be drawn in favor of the plaintiff. *Armstrong v. Daily*, 786 F.3d 529, 533 (7th Cir. 2015) ("Because we are reviewing a decision on a motion to dismiss under Rule 12(b)(6), we accept the allegations of the complaint as true and draw from those allegations all reasonable inferences in favor of the plaintiff."); *see also Volling v. Kurtz Paramedic Servs., Inc.*, 840 F.3d 378, 382 (7th Cir. 2016) (same).

A complaint must contain sufficient factual matter to state a claim that is plausible. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* This means that the plaintiff must allege enough details to "present a story that holds together." *Swanson v. Citibank, N.A.*, 614 F.3d 400, 404 (7th Cir. 2010). The relevant inquiry is whether the facts as alleged could have happened, not whether they did happen. *Id.*

## ARGUMENT

## I. The Amended Complaint Asserts a Single Claim for Relief Against the City.

The Amended Complaint raises a single substantive claim against the City for *Monell* liability. *See* Amended Compl., Dkt. 10 ¶¶ 98-103 (Count V). Yet the City moves to dismiss six additional Counts which were explicitly pleaded against only the Individual Defendants. *Id.* ¶¶ 66-97, 104-110, 118-22. The City brings its motion under Federal Rule of Civil Procedure 12(b)(6), which identifies the "failure to state a claim upon which relief can be granted" as a "defense" to a "claim for relief in any pleading." The Amended Complaint does not attempt to state a claim for relief against the City for Counts I, II, III, IV, VI, or VIII. The City therefore has no grounds for seeking to raise a "defense" to those claims.[1]

## II. Count VI States a Legally-Cognizable Claim Under Federal Law.

The City's motion to dismiss Count VI, which is currently styled as a claim for malicious prosecution, should be denied because Mr. Brown states a legally-cognizable federal claim. Count VI alleges that the Individual Defendants "accused Mr. Brown of criminal activity knowing those accusations to be *without genuine probable cause*, and they made statements to prosecutors with the intent of exerting influence to institute and continue judicial proceedings, in violation of Mr. Brown's rights under the Fourth and Fourteenth Amendments." Amended Compl., Dkt. 10 ¶ 105

[1] Notably, the City does not seek dismissal of Counts X (state law respondeat superior) or XI (state law indemnification), the derivative claims asserted against the City—presumably because it recognizes that doing so would be premature, when the individual Officer Defendants have not yet challenged the underlying substantive claims brought against them. *See* 745 ILCS 10/2-109 ("A local public entity is not liable for an injury resulting from an act or omission of its employee where the employee is not liable."); *see also Powell v. City of Chicago*, No. 17-cv-5156, 2018 WL 1211576, at *10 (N.D. Ill. Mar. 8, 2018) ("Any indemnity claims against the City remain viable because the individual officers remain potentially liable on the underlying claims.").

(emphasis added). In short, the Individual Defendants caused Mr. Brown to be deprived of his liberty without probable cause.

**A. Mr. Brown States a Viable Fourth Amendment Claim.**

The City briefly addresses the Supreme Court's decision in *Manuel v. City of Joliet*, 137 S. Ct. 911 (2017) ("*Manuel I*"). But its analysis skims over and even ignores several key holdings of that decision. In *Manuel I*, the Supreme Court expressly recognized a cognizable claim under the Fourth Amendment for the unlawful deprivation of liberty relating to criminal prosecutions:

> The Fourth Amendment prohibits government officials from detaining a person in the absence of probable cause. See *supra*, at 917. That can happen when the police hold someone without any reason before the formal onset of a criminal proceeding. *But it also can occur when legal process itself goes wrong—when, for example, a judge's probable-cause determination is predicated solely on a police officer's false statements*. Then, too, a person is confined without constitutionally adequate justification. Legal process has gone forward, but it has done nothing to satisfy the Fourth Amendment's probable-cause requirement. And for that reason, it cannot extinguish the detainee's Fourth Amendment claim—or somehow, as the Seventh Circuit has held, convert that claim into one founded on the Due Process Clause. *If the complaint is that a form of legal process resulted in pretrial detention unsupported by probable cause, then the right allegedly infringed lies in the Fourth Amendment.*

137 S. Ct. at 918-19 (emphasis added). This decision abrogated the previously prevailing Seventh Circuit precedent which held that malicious prosecution was not actionable under Section 1983. *Id.* at 921-22; *see, e.g.*, *Newsome v. McCabe*, 256 F.3d 747, 750 (7th Cir. 2001) (no Fourteenth Amendment malicious prosecution claim).

On remand, however, the Seventh Circuit rejected the characterization of this type of claim as a form of "malicious prosecution." *Manuel v. City of Joliet*, 903 F.3d 667, 670 (7th Cir. 2018) ("*Manuel II*"). It reasoned that "'[t]here is no such thing as a constitutional right not to be prosecuted without probable cause.' But there *is* a constitutional right not to be held in custody

without probable cause." *Id.* (citation omitted). While the City seizes on the first sentence in that passage, it fails to mention the second.

The Seventh Circuit remains alone in refusing to describe a claim for deprivation of liberty without probable cause as one for "Fourth Amendment malicious prosecution." *See Manuel I*, 137 S. Ct. at 923 (Alito, J., dissenting); *see also Powell*, 2018 WL 1211576, at *4 (citing cases). Nevertheless, the Seventh Circuit has consistently recognized that the "terminology" employed to describe a claim is immaterial: what matters is whether a plaintiff identifies "the constitutional right at issue." *Hurt v. Wise*, 880 F.3d 831, 843 (7th Cir. 2018), *overruled on other grounds by Lewis v. City of Chicago*, 914 F.3d 472 (7th Cir. 2019); *see also Powell*, 2018 WL 1211576, at *5 ("The failure to name a specific legal theory does not defeat Plaintiff's claim, however, because his factual allegations have 'identified the constitutional right at issue.'" (citation omitted)).

Mr. Brown's factual allegations clearly identify the Fourth Amendment—the right to be free from seizure without probable cause—as one of the constitutional rights at issue. Count VI therefore states a legally cognizable claim for relief. *See, e.g.*, *Manuel I*, 137 S. Ct. at 914 (recognizing Fourth Amendment claim for wrongful arrest and detention based on fabricated evidence); *Lewis*, 914 F.3d at 479 ("[T]he constitutional right in question is the 'right not to be held in custody without probable cause,' the violation of which gives rise to a 'plain-vanilla Fourth Amendment' claim under § 1983 because the essential constitutional wrong is the 'absence of probable cause that would justify the detention.'"); *Powell*, 2018 WL 1211576, at *2 (plaintiff stated "plausible Fourth Amendment claim" based on allegations that officers violated his rights "by arresting him without probable cause and knowingly communicating false information to prosecutors that led to a criminal prosecution against him").

### B. *Newsome* No Longer Bars Mr. Brown From Pursuing a Fourteenth Amendment Claim.

Because Illinois provides a state-law remedy for malicious prosecution, the City contends that Seventh Circuit precedent forecloses Mr. Brown's right to pursue a federal malicious prosecution claim under the Fourteenth Amendment. In *Newsome v. McCabe*, the court held that "the existence of a tort claim under state law knocks out any constitutional theory of malicious prosecution." 256 F.3d at 750. While *Manuel I* did not address the Fourteenth Amendment or *Newsome*'s "knock out" rule, the Court's opinion calls into question whether any aspect of *Newsome* can still be considered good law. Indeed, the plaintiff in *Manuel* had a state law claim for malicious prosecution under Illinois law, and yet the Court still held that the plaintiff had a cause of action under the Fourth Amendment for his unlawful pretrial detention.

Accordingly, Mr. Brown urges this Court to allow him to proceed under a Fourteenth Amendment theory, notwithstanding *Newsome*. In any event, this Court's decision on whether the Fourteenth Amendment provides a basis for the malicious prosecution claim does not affect Mr. Brown's claim under the Fourth Amendment.[2] *See Soldal v. Cook Cty.*, 506 U.S. 56, 70 (1992) ("Certain wrongs affect more than a single right and, accordingly, can implicate more than one of the Constitution's commands."); *United States v. James Daniel Good Real Prop.*, 510 U.S. 43, 49 (1993) (explaining that "the applicability of one constitutional amendment [does not] pre-empt[] the guarantees of another").

## III. **<u>The Remaining Claims Are Timely.</u>**

The City's motion to dismiss Counts I (due process), II (coercive interrogation), III (conspiracy), IV (failure to intervene), V (*Monell*) and VIII (intentional infliction of emotional

---

[2] Further, the City does not dispute that Mr. Brown states a viable malicious prosecution claim under state law.

distress) should be denied because Mr. Brown timely raised these claims based on the Individual Defendants' conduct from the time of his arrest in 1988 through his release from prison in 2017. The City does not dispute that Mr. Brown's factual allegations are sufficient to state a claim for relief under each of these theories, nor does the City contest that the same constitutional violations—the same fabricated evidence and perjured testimony—were used to convict Mr. Brown at both trials. The only practical effect of the City's Motion is to avoid responsibility for 18 years' worth of wrongful incarceration and resulting damages.

**A. The Section 1983 Claims Are Timely.**

Counts I-V are brought under 42 U.S.C. § 1983 and grounded in the Fifth and Fourteenth Amendments. Mr. Brown alleges that the Individual Defendants used physical violence and psychological coercion to force him to falsely incriminate himself in a crime he had not committed, and that they fabricated additional evidence to corroborate the false confession. Amended Compl., Dkt. 10 ¶¶ 66-86. The false confession and other fabricated evidence were later introduced at trial against Mr. Brown and resulted in his wrongful conviction and imprisonment.

Section 1983 claims borrow the state-law limitations period for analogous torts, but federal law governs the time of accrual. *Wallace v. Kato*, 549 U.S. 384, 387-88 (2007). A claim accrues "when the constitutional violation is complete and the plaintiff has a present cause of action—'that is, when the plaintiff can file suit and obtain relief.'" *Johnson v. Winstead*, 900 F.3d 428, 434 (7th Cir. 2018). Certain claims, however, are barred by the Supreme Court's decision in *Heck v. Humphrey*, 512 U.S. 477 (1994), when they would tend to the challenge the validity of an existing conviction or detention. *Id.* at 486 ("[T]he hoary principle that civil tort actions are not appropriate vehicles for challenging the validity of outstanding criminal judgments applies to § 1983 damages

actions that necessarily require the plaintiff to prove the unlawfulness of his conviction or confinement, just as it always applied to actions for malicious prosecution.”).

In *Johnson v. Winstead*, the Seventh Circuit adopted a categorical approach to determining when *Heck* defers the accrual of constitutional claims. 900 F.3d at 439. Specifically, the court held that when a claim “seeks a civil remedy for a trial-based constitutional violation that results in wrongful conviction and imprisonment . . . if successful, [the claim] necessarily implies the invalidity of the conviction and under *Heck* is neither cognizable nor accrues until the conviction has been overturned.” *Id.* Based on this principle, the court concluded that claims arising from Johnson’s first trial were untimely because they accrued when his conviction was reversed, even though he was later tried and convicted a second time. *Id.* The City contends *Johnson* is controlling and bars Mr. Brown from seeking damages based on constitutional violations related to his first trial.

The City overstates the holding of *Johnson*. In that case, Johnson’s conviction was reversed on direct appeal. But here, Mr. Brown’s conviction was not “unconditionally invalidate[d].” *Taylor v. City of Chicago*, 17-cv-03642, 2018 WL 4075402, at *5 (N.D. Ill. Aug. 27, 2018). Rather, as in *Taylor*, the state court granted Mr. Brown’s motion for a new trial during his post-conviction proceedings. *See* Amended Compl., Dkt. 10 ¶ 44; Dkt. 41-1 at 13; Dkt. 41-2. As the court recognized in *Taylor*, “[t]he express language of *Heck* would seem to support Defendants’ view [of the date on which plaintiff’s claims accrued], as it states that a § 1983 claim accrues when the conviction is ‘called into question by a federal court’s issuance of a writ of *habeas corpus*.’” *Taylor*, 2018 WL 4075402, at *5. Yet the court recognized that when a conviction is challenged on collateral review, the criminal defendant may remain in jeopardy of further prosecution. *See id.* (“Yet the *habeas* court did not unconditionally invalidate Taylor’s

conviction. Rather it released him from custody contingent on the State's determination whether or not to retry him. The State did retry him, and Taylor was acquitted.").

That is precisely what happened both in *Taylor* and this case—and unlike in *Taylor*, Mr. Brown was not released from custody pending his second trial. Instead, Mr. Brown remained in continuous incarceration, under continuous jeopardy, from the date of his arrest until the State announced it was dismissing the charges against him on November 14, 2017. Amended Compl., Dkt. 10 ¶¶ 43-47. Under these circumstances, the Seventh Circuit has held that a Section 1983 claim does not accrue until the final and favorable termination of criminal proceedings. For example, in *Julian v. Hanna*, 732 F.3d 842 (7th Cir. 2013), the Seventh Circuit considered the argument that a due process claim based on fabrication of evidence accrued on the day the plaintiff's conviction was reversed. The court rejected that interpretation and held that, because the plaintiff remained subject to prosecution, the Section 1983 claim was not ripe "[u]ntil the retrial was held, and ended favorably to him." *Id.* at 845.

Likewise, in *Johnson v. Dossey*, 515 F.3d 778 (7th Cir. 2008), the plaintiff successfully moved for a new trial in the underlying criminal case and was released from custody pending retrial. The Seventh Circuit held that her due process claim accrued on the date she was acquitted in the retrial, not the date of her release from custody. *Id.* at 782. *See also Newsome*, 256 F.3d at 749 (holding Section 1983 claim accrued only once plaintiff received a pardon from the governor, even though his conviction was previously vacated); *Bradford v. Scherschlight*, 803 F.3d 382, 383-84 (9th Cir. 2015) (holding Section 1983 claim based on fabrication of evidence "did not accrue

until the [criminal] charges were fully and finally resolved and could no longer be brought against [plaintiff]").

These authorities are not only good law; they also make good sense. The framework proposed by the City would produce absurd results, in which plaintiffs are expected to identify and litigate their civil rights claims while simultaneously defending against pending criminal charges—charges initiated and influenced by the very individuals responsible for the ongoing violation of their constitutional rights. Underscoring the unreasonableness of this requirement, Mr. Brown would have been prevented from pursuing the claims related to his 1990 trial under prevailing Seventh Circuit precedent at the time the state court granted his motion for a new trial. *See Wiley v. City of Chicago*, 361 F.3d 994, 996 (7th Cir. 2004) ("[I]f a prisoner or an individual facing prosecution seeks damages using § 1983 for an alleged violation of his civil rights, a district court must first determine whether 'a judgment in favor of the plaintiff would necessarily imply the invalidity' of the plaintiff's *actual or potential* conviction. If it would, then the suit is barred and the complaint must be dismissed." (emphasis added; citation omitted)). Such a Catch-22 cannot be the proper interpretation of *Heck* under these circumstances.

In practice, the City's proposed requirement can only work to protect unlawful behavior and unfairly hinder civil rights plaintiffs from seeking justice. This Court should deny the motion to dismiss Mr. Brown's constitutional claims related to his 1990 trial.

**B. The Intentional Infliction of Emotional Distress Claim is Timely.**

The City's argument for dismissing Mr. Brown's state law claim for intentional infliction of emotional distress ("IIED") is without merit. Illinois courts have adopted the *Heck* delayed accrual rule for claims arising under Illinois law, and it is well-established that an IIED claim related to a wrongful criminal conviction accrues only upon final and favorable termination of the

criminal proceedings. *See Lieberman v. Liberty Healthcare Corp.*, 408 Ill. App. 3d 1102, 1112, 948 N.E.2d 1100 (4th Dist. 2011); *Starks v. City of Waukegan*, 946 F. Supp. 2d 780, 803 (N.D. Ill. 2013) (following *Lieberman* in concluding Illinois has adopted the *Heck* accrual rule for claims arising under state law).

The Seventh Circuit addressed precisely this issue in *Parish v. City of Elkhart*, 614 F.3d 677 (7th Cir. 2010). In applying the *Heck* rule to an IIED claim, the court recognized that "it is clear that this tort was not completed prior to the conviction. The officers allegedly took steps through all stages of the investigation and trial that cumulatively amounted to the tort of IIED." *Id.* at 683. Moreover, "[a]t the heart of [plaintiff's] complaint is a claim that the defendant officers fabricated an entire case against him that led to his wrongful conviction." *Id.* at 684. The claim therefore does not accrue until the favorable disposition of the criminal charges. *See Starks*, 946 F. Supp. 2d at 801 (reinstating IIED claim, which accrued upon dismissal of *last remaining* criminal charge against plaintiff). The City's motion to dismiss Count VIII should be denied.

**CONCLUSION**

For the reasons set forth above, Mr. Brown respectfully requests that this Court deny the City's partial Motion to Dismiss the Amended Complaint (Dkt. 41).

Dated: March 12, 2019

Respectfully submitted,

/s/ *Ronald S. Safer*
Ronald S. Safer
Joseph O'Hara
Kelly M. Warner
Tal C. Chaiken
Allison M. Nichols
RILEY SAFER HOLMES & CANCILA LLP
70 W. Madison Street, Suite 2900
Chicago, Illinois 60602
(312) 471-8700 (tel)
(312) 471-8701 (fax)
rsafer@rshc-law.com

johara@rshc-law.com
kwarner@rshc-law.com
tchaiken@rshc-law.com
anichols@rshc-law.com

*Attorneys for Plaintiff Arthur Brown*

**CERTIFICATE OF SERVICE**

I hereby certify that on March 12, 2019, I caused the foregoing document to be electronically filed used the CM/ECF system, which will send notice of this filing to all counsel of record.

*/s/ Ronald S. Safer*