**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| **ARTHUR BROWN,** ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 18 C 7064 |
| ) | |
| **CITY OF CHICAGO, former Chicago** ) | Judge Rebecca R. Pallmeyer |
| **Police Officers; Special Representative** ) | |
| **for JOSEPH CAMPBELL, Special** ) | |
| **Representative for DAVID KUTZ,** ) | |
| **and Special Representative for** ) | |
| **JOSEPH FINE, Former Assistant** ) | |
| **State's Attorney JOEL WHITEHOUSE,** ) | |
| **and other as-yet unidentified employees** ) | |
| **of the City of Chicago,** ) | |
| ) | |
| Defendants. ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Arthur Brown was convicted of one count of arson and two counts of murder in 1990. The trial court later granted Mr. Brown a new trial after another individual confessed to committing the crime, but Plaintiff was retried and convicted again in 2008. Years later, in a post-conviction petition, Brown challenged perjurious testimony presented at his second trial and contended that defense counsel had rendered ineffective assistance. Acknowledging evidentiary issues that undermined the integrity of the convictions, the State determined, in the interest of justice, to drop all charges against Brown. Incarcerated for nearly thirty years, he was finally released from prison on November 14, 2017.

Within a year of his release, Brown filed this action under 42 U.S.C. § 1983 and Illinois law against the City of Chicago; former Chicago Police Officers Joseph Campbell, David Kutz, and Joseph Fine; former Assistant State's Attorney Joel Whitehouse; and other unidentified City employees. Plaintiff alleges that in order to secure his conviction, the Individual Defendants fabricated evidence against him and that Defendants Fine, Campbell, and Whitehouse engaged in physical and psychological abuse to coerce his confession. In addition to asserting

constitutional claims under 42 U.S.C. § 1983 for evidence fabrication, compulsory self-incrimination, and malicious prosecution, Plaintiff brings claims under 42 U.S.C. § 1985, alleging that the Individual Defendants conspired to deprive him of his constitutional rights, and 42 U.S.C. § 1986, alleging that the Individual Defendants failed to intervene to stop the unconstitutional acts against him. Plaintiff also brings claims under Illinois law against the Individual Defendants for malicious prosecution, intentional infliction of emotional distress ("IIED"), and civil conspiracy. Finally, Plaintiff contends that the City of Chicago is liable for the officers' conduct in violation of federal law under *Monell v. Dep't of Social Servs. of City of New York*, 436 U.S. 658 (1978), and for the officers' state law violations under principles of *respondeat superior*, and state-law indemnification. Pursuant to Federal Rule of Civil Procedure 12(b)(6), the City of Chicago moves to dismiss the IIED and federal malicious-prosecution claims entirely, as well as the constitutional claims to the extent they seek damages from Plaintiff's 1990 trial and convictions. For the reasons stated below, Defendant's motion to dismiss is granted in part and denied in part.

## **BACKGROUND**

The amended complaint alleges the following facts. During the early morning of May 28, 1988, fire broke out at Magic Video, located on the South Side of Chicago. (Second Amended Complaint [70] ¶ 14.) As fire engulfed the building, Kiert Phophairat and Pismai Panichkarn were asleep in the Thai restaurant located next door to Magic Video,[1] and both died of smoke inhalation. (*Id.*) Two officers arrived on the scene shortly after fire had begun and interviewed an eyewitness, who had observed four black males—none of whom resembled Plaintiff—near or inside Magic Video around the time that the fire began. (*Id.* ¶ 17.) The eyewitness had also seen a white Ford Bronco parked nearby; this vehicle also lacked any connection to Mr. Brown. (*Id.* ¶ 18.)

---

[1] The complaint does not explain why the victims were sleeping in the restaurant.

2

Defendant Campbell soon concluded that the fire was an arson. (*Id.* ¶ 20.) Police officers collected physical evidence at the scene, but nothing connected to Brown. (*Id.* ¶ 21.) Brown's only connection to Magic Video was some minor repair work he had performed there as part of his general contracting business (*Id.* ¶¶ 13–14), including, as Plaintiff testified at his first trial, in the early morning hours on the day of the fire, *see People v. Brown*, 253 Ill. App. 3d 165, 170, 624 N.E.2d 1378, 1383 (1st Dist. 1993). Chicago Police Officer Defendants nevertheless concluded in just a few hours that Mr. Brown had helped to start the fire, and arrested him later that day. (*Id.* ¶¶ 22, 25.)

Upon his arrest, Plaintiff was taken to Area One headquarters, where Defendants Fine and Campbell placed Mr. Brown in a small, windowless room and chained him to the wall in a standing position. (*Id.* ¶ 26.) For more than seven hours, Mr. Brown remained in that room, which was so hot that the detectives themselves could not remain inside the room to interrogate him for a significant amount of time without taking a break. (*Id.*) During this detention, in response to questions from Defendants Fine and Campbell, Plaintiff insisted that he did not know about and had nothing to do with the Magic Video fire. (*Id.* ¶ 27.) After several hours, Defendant Fine entered the holding room, cursed at Mr. Brown, and grabbed him by the neck, choking him and slamming his head and back against the wall several times; Plaintiff lost consciousness as a result of the assault. (*Id.* ¶ 32.)

After the beating had ended, Defendants Fine and Campbell returned to present papers to Mr. Brown. Fine and Campbell promised that if Brown signed the papers, he would be released from the holding cell and not beaten again. (*Id.* ¶ 33.) Brown, whose reading and writing skills were limited, alleges that he was neither told what the papers said nor given an opportunity to read them. (*Id.*) Out of fear, Brown signed the papers, using a signature that differed from his normal handwriting to signal that he did not agree with their content. (*Id.* ¶¶ 33–34.) These

3

papers, as Mr. Brown would later learn, were his seven-page "confession," which was drafted by Defendant Whitehouse and included fabrications by Defendants Whitehouse, Fine, and Campbell, as well as handwritten edits by which Campbell intended to establish that Brown's participation in creating the statement was voluntary. (*Id.* ¶¶ 34–35.)

Defendant Officers fabricated other evidence, as well: Defendants Fine and Campbell concocted an encounter at the police station in which one of Magic Video's co-owners, Michael Harper, accused Mr. Brown of participating in the crime. No such confrontation ever happened; Defendants Fine and Campbell made up this story—which was presented by the State at Plaintiff's trial—as way to explain what prompted Plaintiff to "confess." (*Id.* ¶ 36.) In addition, the Defendant Police Officers coerced Cecil Hingston, an attendant at a gas station near Magic Video, into saying that he had sold a gas can to two black males in a white Ford Bronco on the morning of the fire. (*Id.* ¶ 37.) Mr. Hingston recanted in a 2002 affidavit, asserting that he had been coerced into making the statement. *See People v. Brown*, 2015 IL App (1st) 131293-U, No. 1-13-1293, 2015 WL 4512038, at *3 (1st Dist. July 24, 2015) (reversing dismissal of post-conviction petition). Finally, the Defendant Officers invented a friendship between Plaintiff and Mr. Harper and an agreement in which Mr. Harper would provide Plaintiff with x-rated videotapes in exchange for Mr. Brown's help in starting the fire. (Second Am. Compl. ¶¶ 38–39.) This evidence was also presented by the State at trial against Plaintiff (*id.* ¶ 42) and Mr. Harper, *see Brown*, 253 Ill. App. 3d at 170, 624 N.E.2d at 1383.

Plaintiff alleges, further, that Defendant Officers failed to interview any of Plaintiff's family members or coworkers to determine his whereabouts at the time of the fire. (Second Am. Compl. ¶ 40.) They also ignored the statements of an eyewitness, taken by other Chicago Police Officers, that identified four individuals involved in the fire—none of whom were Plaintiff. (*Id.*)

4

The arson and murder charges against Plaintiff proceeded to a jury trial in April 1990. (*Id.* ¶ 42–43.) Police presented evidence including Plaintiff's confession, the fabricated encounter between Plaintiff and Mr. Harper, and the testimony of Mr. Hingston. (*Id.* ¶ 42.) The jury convicted Mr. Brown of two counts of murder and one count of arson; he was sentenced to natural life in prison without the possibility of parole. (*Id.* ¶ 42–43.) After another individual, James Bell, confessed to starting the Magic Video fire to get back at Plaintiff—who Mr. Bell mistakenly believed to be the owner of the video store—for an unpaid debt, Plaintiff was granted a new trial in 2005. *See Brown*, 2015 WL 4512038, at *2–3. Mr. Bell, who was serving a life sentence for armed robbery, was the sole defense witness in Plaintiff's second trial. *Id.* at *2. But after the State presented evidence similar to what was presented at the first trial,[2] with the fabricated confession once again playing a central role, Plaintiff was convicted for a second time in August 2008. (Second Am. Compl. ¶ 44–45.)

In post-conviction proceedings, Plaintiff challenged Defendants Campbell's and Fine's testimony at the second trial and contended that defense counsel had rendered ineffective assistance for not challenging the admission of Mr. Hingston's testimony from his first trial or presenting Mr. Hingston's 2002 affidavit. *Brown*, 2015 WL 4512038, at *4–5. In October 2017, the Circuit Court of Cook County granted Plaintiff's Petition for Post-Conviction Relief and vacated his convictions, *see People v. Brown*, No. 88 CR 0860503 (Cook Cty. Cir. Ct., Oct. 3, 2017). On November 14, 2017, the State's Attorney's Office determined that it was in the interest of justice to drop all charges against him, citing evidentiary concerns that raised questions about the integrity of his convictions. Megan Crepeau, *Man in Prison for 29 Years Freed after Cook County*

---

[2] Plaintiff also alleges that at that second trial, Defendants Campbell and Fine falsely testified that Plaintiff's confession led them to discover the gas can. In fact, Campbell's own police report confirmed that it was discovered before Plaintiff was taken into custody. (Second Am. Compl. ¶ 44.)

*Prosecutors Drop Charges* (Nov. 15, 2017), http://www.chicagotribune.com/news/breaking/ct-met-convicted-murderer-free-charges-dropped-20171113-story.html (last visited September 21, 2019). He was released from prison later that day. (Second Am. Compl. ¶ 47.) In addition, the Circuit Court granted Plaintiff a Certificate of Innocence on February 13, 2018. (*Id.*) Plaintiff filed this action on October 22, 2018 after being held in custody for nearly thirty years. (*Id.* ¶ 1.)

The practices that wrongly sent Mr. Brown to prison were not, Plaintiff asserts, an isolated occurrence. Rather, he asserts, they are consistent with policies and practices of the City of Chicago and Chicago Police Department ("CPD"). (*Id.* ¶ 48.) For many years prior to Plaintiff's arrest, Plaintiff alleges, CPD systematically coerced suspects and witnesses, fabricated inculpatory evidence, and withheld and destroyed exculpatory evidence. (*Id.* ¶ 49.) Such practices were so entrenched within CPD as to constitute *de facto* policies of the department, resulting in wrongful charges and convictions Plaintiff and dozens of other victims. (*Id.* ¶ 50.) The City failed to implement measures that could prevent such abuses (*id.* ¶ 51), and the CPD's "code of silence" permitted officers who engaged in such practices to avoid any accountability. (*Id.* ¶ 52–53.)

## DISCUSSION

On a motion to dismiss, the court presumes the truth of well-pleaded factual allegations in the complaint and draws all reasonable inferences in Plaintiff's favor. *Simpson v. Brown Cty.*, 860 F.3d 1001, 1005 (7th Cir. 2017). The complaint alleges that the Individual Defendants fabricated evidence against Plaintiff, depriving him of his constitutional right to a fair trial and resulting in his wrongful conviction (Count I); that Defendants Fine, Campbell, and Whitehouse violated Plaintiff's Fifth and Fourteenth Amendment rights to be free from compulsory self-incrimination and deprivation of liberty without due process of law, by fabricating or coercing inculpatory evidence used against Plaintiff in his criminal proceedings (Count II); that the Individual Defendants

6

conspired among themselves to deprive Plaintiff of his constitutional rights (Count III); that the Individual Defendants failed to intervene to prevent violations of Plaintiff's constitutional rights (Count IV); that the Individual Defendants advanced a malicious prosecution of Plaintiff in violation of federal constitutional law (Count VI) and state law (Count VII); that the Individual Defendants intentionally inflicted emotional distress upon Plaintiff (Count VIII); and that the Individual Defendants engaged in an unlawful civil conspiracy under state law (Count IX). Against Defendant City of Chicago, Plaintiff pursues theories of liability under *Monell v. Dep't of Social Servs. of City of New York*, 436 U.S. 658 (1978) (Count V), the state law doctrine of *respondeat superior* (Count X), and state law indemnification (Count XI). Defendant City of Chicago moves to dismiss Counts VI and VIII entirely as well as Counts I through V, to the extent they seek damages associated with Plaintiff's 1990 trial and convictions.

**I.      Counts I–V (§ 1983 Claims)**

Counts I through V assert claims under 42 U.S.C. § 1983 for Defendants' alleged violations of Plaintiff's Fifth and Fourteenth Amendment rights. Defendant City of Chicago contends that the claims associated with Plaintiff's 1990 trial and convictions are time-barred. Notably, Defendant has not sought dismissal of these claims as they relate to Plaintiff's 2008 trial or convictions.

The applicable limitations period for § 1983 actions in Illinois is two years. 735 ILCS 5/13-202. Federal law, however, determines when § 1983 claims accrue. *Johnson v. Winstead*, 900 F.3d 428, 434 (7th Cir. 2018). In general, such claims accrue "when the constitutional violation is complete and the plaintiff has a present cause of action." *Id.* (citing *Wallace v. Kato*, 549 U.S. 384, 388 (2007)). Where a wrongful conviction is alleged, however, "a § 1983 cause of action for damages attributable to an unconstitutional conviction or sentence does not accrue until the conviction or sentence has been invalidated." *Heck v. Humphrey*, 512 U.S. 477, 489–90 (1994).

7

The question then is whether Plaintiff's claims related to the 1990 trial and convictions began to accrue in 2005 (when those convictions were overturned and he was granted a new trial) or in 2017 (when Mr. Brown's 2008 convictions were vacated and the charges against him were dropped).

The Seventh Circuit has faced similar questions in past cases but has reached different conclusions about the accrual of particular claims. For instance, claims brought under *Brady v. Maryland*, 373 U.S. 83 (1963), do not accrue until the proceedings terminate in the criminal defendant's favor, as with an acquittal. *Camm v. Faith*, __ F.3d __, No. 18-1440, 2019 WL 4267769, at *10–11 (7th Cir. Sept. 10, 2019); *Johnson v. Dossey*, 515 F.3d 778, 782 (7th Cir. 2008). Malicious prosecution claims are treated similarly; thus, in *Julian v. Hanna*, 732 F.3d 842, 845 (7th Cir. 2013), plaintiff's claim was held not to have accrued until the charges against him were dropped without a retrial—not several years earlier, when his convictions were reversed.[3] On the other hand, the Seventh Circuit reached a different conclusion in a case where the plaintiff alleged a violation of his Fifth Amendment right against compulsory self-incrimination: In *Johnson v. Winstead*, 900 F.3d 428, 439 (7th Cir. 2018), the court held that such a claim accrued after the conviction was reversed, despite the fact that the criminal defendant remained subject to retrial. Thus, the plaintiff's Fifth Amendment self-incrimination claim, related to his first trial and conviction, had lapsed by the time his second conviction was reversed. *Id.*

---

[3] *Julian*, 732 F.3d at 845–48, permitted the plaintiff to bring a malicious prosecution claim under the Fourteenth Amendment's Due Process Clause only because the court determined that Indiana did not provide an adequate state-law remedy for the claim. *See also Parratt v. Taylor*, 451 U.S. 527, 536–44 (1981) (denying the respondent a § 1983 claim for a violation of the Fourteenth Amendment Due Process Clause where state law provided an adequate remedy), *overruled in part on other grounds by Daniels v. Williams*, 474 U.S. 327 (1986). This holding in *Julian* does not implicate Plaintiff's federal malicious prosecution claim, discussed *infra* Part II, because Plaintiff has not alleged that Illinois law provided an inadequate remedy.

Defendant's motion to dismiss Plaintiff's claims associated with his 1990 trial and convictions rests entirely on *Winstead*. But the outcome in *Winstead* is in tension with the Supreme Court's opinion from earlier this year in *McDonough v. Smith*, 139 S. Ct. 2149 (2019). In *McDonough*, 139 S. Ct. at 2153–54, the plaintiff had been prosecuted twice on the basis of allegedly fabricated evidence; the first trial resulted in a mistrial, while the second ended in an acquittal. The *McDonough* plaintiff then brought a fabricated-evidence claim against the prosecutor, which was held to be time-barred by the district court and Second Circuit. *Id.* at 2154. The Supreme Court reversed, holding that "[t]he statute of limitations for a fabricated-evidence claim . . . does not begin to run until the criminal proceedings against the defendant (*i.e.*, the § 1983 plaintiff) have terminated in his favor." *Id.* at 2154–55. In reaching this conclusion, the Court offered reasoning that conflicts with *Winstead*. Although the *McDonough* plaintiff had never been convicted, the Court held that *Heck* applies because a fabricated-evidence claim brought before a favorable termination in the criminal proceedings could result in "conflicting civil and criminal judgments" and "collateral attacks on criminal judgments through civil litigation." *Id.* at 2157. Concluding otherwise would mean that "[a] significant number of criminal defendants would face an untenable choice between (1) letting their claims expire and (2) filing a civil suit against the very person who is in the midst of prosecuting them." *Id.* at 2158. Not only does that second option "risk[ ] tipping [a plaintiff's] hand as to his defense strategy, undermining his privilege against self-incrimination, and taking on discovery obligations not required in the criminal context," but such parallel litigation also "run[s] counter to core principles of federalism, comity, consistency, and judicial economy." *Id.* This same reasoning from *McDonough* was embraced by the Seventh Circuit in its recent decision in *Camm*, 2019 WL 4267769, at *10–11, in which the court held that a *Brady* claim did not accrue until after the plaintiff in that case—who, like Mr. Brown, had been convicted at two trials—was acquitted at the third trial.

The outcome in *Winstead*, like the one that Defendant advocates, would have required Plaintiff to file his claims related to his 1990 trial and convictions in 2005 when he was granted a new trial. In other words, according to Defendant, Mr. Brown should have filed his suit at the same time that the State was preparing to prosecute him again—the exact situation *McDonough* cautioned against. *See also id.* at 2159 ("The accrual rule we adopt today . . . respects the autonomy of state courts and avoids these costs to litigants and federal courts.").

The court concludes that Defendant's motion to dismiss Counts I through V of Brown's complaint, as they relate to the 1990 trial and convictions, must be denied. Count I states a fabrication-of-evidence claim—specifically, that the Individual Defendants fabricated a number of items of evidence, including Plaintiff's confession, depriving Mr. Brown of a fair trial. As in *McDonough*, 139 S. Ct. at 2154–55, Plaintiff's fabrication-of-evidence claim regarding the 1990 trial and convictions did not begin to accrue until 2017, when his convictions were vacated and the charges against him were finally dropped. This complaint, filed less than a year later, states a timely fabrication claim.

Count II states a claim for his coercive interrogation, which resulted in a fabricated confession that was used against him at trial in violation of his right to be free from compulsory self-incrimination and due process rights. Although *Winstead*, 900 F.3d at 439, had held that a compulsory self-incrimination claim accrued once the plaintiff's first conviction was reversed, such a conclusion, as discussed above, cannot readily be reconciled with *McDonough* or with the Seventh Circuit's more recent decision in *Camm*. Plaintiff should not be expected to have brought this claim in 2005 while awaiting retrial. Accordingly, the claim stated in Count II did not begin to accrue until 2017, and so this claim is also timely. Likewise, the derivative claims stated in Counts III (conspiracy), IV (failure to intervene), and V (*Monell*) are also timely.

## II.     Count VI (Federal Malicious Prosecution)

In Count VI, Plaintiff alleges that the Individual Defendants maliciously instituted judicial proceedings against him, in violation of Plaintiff's rights under the Fourth and Fourteenth Amendments. Defendant City of Chicago seeks dismissal of this claim on the ground that the Seventh Circuit does not recognize a federal constitutional claim for malicious prosecution.

The court agrees. The Court of Appeals has for many years held that there is no claim under the Constitution for malicious prosecution. *Newsome v. McCabe*, 256 F.3d 747, 750–52 (7th Cir. 2001), *overruled on other grounds by Manuel v. City of Joliet*, 137 S. Ct. 911 (2017) ("*Manuel I*"). Plaintiff asserts that the Supreme Court abrogated this precedent in *Manuel I*, but he has overstated the holding in that case. In *Manuel I*, the plaintiff had been arrested and held in jail for forty-eight days based on fabricated evidence that he possessed a controlled substance. The plaintiff's Fourth Amendment claim was dismissed, however, in accordance with Seventh Circuit precedent that bar a Fourth Amendment claim for pretrial detention when a judge has made a probable-cause determination. *Id.* 137 S. Ct at 915–16. The Supreme Court overturned that precedent and held that a plaintiff may bring a Fourth Amendment claim for pretrial detention without probable cause even after legal process commences. *Manuel I*, 137 S. Ct. at 920. The *Manuel I* Court did not address the availability of a federal claim for malicious prosecution. *Id.* at 923 (Alito, J., dissenting). Rather, as the Seventh Circuit observed on remand, "[a]fter *Manuel* [*I*], 'Fourth Amendment malicious prosecution' is the wrong characterization. There is only a Fourth Amendment claim—the absence of probable cause that would justify detention." *Manuel v. City of Joliet*, 903 F.3d 667, 670 (7th Cir. 2018) ("*Manuel II*"). Put another way, the constitutional wrong recognized in *Manuel I* and *II* was "the detention rather than the existence of criminal charges." *Id.* "[T]here is," after all, "no such thing as a constitutional right not to be prosecuted without probable cause." *Id.* (quoting *Serino v. Hensley*, 735 F.3d 588, 593 (7th Cir. 2013)).

Plaintiff urges that even if there is no federal malicious prosecution claim, *Manuel I* still allows for a claim under the Fourth Amendment for detention without probable cause. It is true that "what matters" is not "terminology" but "identif[ying] the constitutional right at issue." *Hurt v. Wise*, 880 F.3d 831, 843 (7th Cir. 2018), *overruled on other grounds by Lewis v. City of Chicago*, 914 F.3d 472 (7th Cir. 2019). But as Defendant correctly notes, a claim for detention without probable cause is inconsistent with the allegations in Count VI, all of which concern the institution of judicial proceedings against Plaintiff and not his detention. And even if Plaintiff had identified unlawful detention as the constitutional right at issue, the Fourth Amendment protects only Plaintiff's right to be free from *pretrial* detention; a claim for wrongful conviction sounds in due process. *Manuel I*, 137 S. Ct. at 920 ("[O]nce a trial has occurred, the Fourth Amendment drops out."); *Lewis*, 914 F.3d at 479 (noting that "a claim for wrongful pretrial detention based on fabricated evidence is distinct from a claim for wrongful *conviction* based on fabricated evidence"). Count VI is dismissed.

### III. Count VIII (Intentional Infliction of Emotional Distress)

Count VIII asserts a state law claim for intentional infliction of emotional distress ("IIED") against the Individual Defendants. This state law claim is subject to a one-year statute of limitations under Illinois law. *See* 745 Ill. Comp. Stat. 10/8-101(a) ("No civil action . . . may be commenced in any court against a local entity or any of its employees for any injury unless commenced within one year from the date that the injury was received or the cause of action accrued."). As with the claims discussed in Part I, the key question is when the IIED claim accrued.

Defendant relies principally on *Bridewell v. Eberle*, 730 F.3d 672 (7th Cir. 2013), to argue that the claim is time-barred. In *Bridewell*, 730 F.3d at 678, the Seventh Circuit held that "a claim of intentional infliction of emotional distress in the course of arrest and prosecution accrues on

the date of arrest." The *Bridewell* court also refused to characterize an IIED claim as a continuing tort for limitations purposes. *Id.*; *see also Evans v. City of Chicago*, 434 F.3d 916, 934–35 (7th Cir. 2006), *overruled on other grounds by Hill v. Tangherlini*, 724 F.3d 965 (7th Cir. 2013). In particular, *Bridewell*, 730 F.3d at 678, rejected the plaintiff's argument that her IIED claim "accrued anew every day the detectives did not tell the prosecutors to dismiss the indictment" because of the unreliable or unavailable evidence. As the court concluded: "The idea that failing to reverse the ongoing effects of a tort restarts the period of limitations has no support in Illinois law—or in federal law either." *Id.*; *see also Evans*, 434 F.3d at 934–35 (holding that the plaintiff's IIED was time-barred because the defendants' tortious conduct had ceased many years earlier and Illinois law does not "toll[ ] the statute of limitations because of delayed or continuing injuries") (quoting *Feltmeier v. Feltmeier*, 207 Ill. 2d 263, 279, 798 N.E.2d 75, 86 (2003)).

Plaintiff responds that the delayed-accrual rule from *Heck*, 512 U.S. at 486–87, should apply and that the limitations period therefore did not begin until there was a favorable termination of the proceedings against Mr. Brown. In support, Plaintiff cites *Parish v. City of Elkhart*, 614 F.3d 677, 683–84 (7th Cir. 2010), in which the Seventh Circuit held that an IIED claim brought under Indiana law did not accrue until after the plaintiff's criminal conviction had been vacated, and *Starks v. City of Waukegan*, 946 F. Supp. 2d 780, 803–04 (N.D. Ill. 2013), in which a court in this district followed *Parish* for an IIED claim brought under Illinois law. Although not cited by Plaintiff, some courts in this district have applied the delayed accrual rule to Illinois IIED claims post-*Bridewell*. *See, e.g., Serrano v. Guevara*, 315 F. Supp. 3d 1026, 1042–43 (N.D. Ill. 2018) ("IIED claims based on wrongful convictions do not accrue until the conviction is overturned."). In fact, in *Smith v. Burge*, 222 F. Supp. 3d 669, 693 (N.D. Ill. 2016) Judge St. Eve, then of this court, distinguished *Bridewell*, noting that the *Bridwell* plaintiff had not been convicted and thus the *Heck* framework was never implicated. Accordingly, *Smith* held that an IIED claim brought decades

after his arrest but less than one year after his conviction was vacated was timely because the claim was based on the "[d]efendants coercing his confession by torture, constructing and fabricating his confession, and procuring his prosecution, conviction and imprisonment via his coerced and fabricated confession. Under these facts, [the plaintiff] has directly attacked the validity of his conviction." *Id.*

The court finds *Smith* persuasive. As in that case, Plaintiff's IIED claim in Count VIII is based on the Individual Defendants coercing his confession and procuring his prosecution, conviction, and imprisonment. This claim thus directly attacks the validity of Plaintiff's sentence. Accordingly, this case is distinguishable from *Phillips v. City of Chicago*, No. 14 C 9372, 2015 WL 5675529, at *7 (N.D. Ill. Sept. 24, 2015), because, in that case, the court noted that the plaintiff's IIED claim "would not necessarily have impugned" the plaintiff's convictions. Under the *Heck* delayed-accrual rule, Plaintiff's IIED claim is timely because his complaint was filed less than a year after the charges against him were finally dropped.

Defendant argues that "*Heck* only applies to federal civil rights claims and not claims based on Illinois law." The cases Defendant cites, however--*Gordon v. Devine*, No. 08 C 377, 2008 WL 4594354, at *7 (N.D. Ill. Oct. 14, 2008) (quoting *Hill v. City of Chicago*, No. 06 C 6772, 2007 WL 1424211, at *5 (N.D. Ill. May 10, 2007))--predate Illinois courts' embrace of *Heck* in *Lieberman v. Liberty Healthcare Corp.*, 408 Ill. App. 3d 1102, 1110–12, 948 N.E.2d 1100, 1106–08 (1st Dist. 2011). While Defendant contends that *Lieberman*'s adoption of *Heck* was limited that the facts of that case, the Seventh Circuit has characterized *Lieberman* as "embrac[ing]" the *Heck* rule. *Northfield Ins. Co. v. City of Waukegan*, 701 F.3d 1124, 1137 (7th Cir. 2012); *see also Starks*, 946 F. Supp. 2d at 803–04 (rejecting a similar argument from the defendants). Finally, and in the alternative, Defendant argues that if the court does not dismiss the IIED claim entirely, then the claim should be dismissed to the extent it seeks damages related to Plaintiff's 1990

conviction. But this argument is akin to the one the court rejected in Part I in accordance with *McDonough*. A contrary result would require Plaintiff to have filed his IIED claim related to his 1990 convictions while he was awaiting retrial, contrary to the "pragmatic concerns with avoiding parallel criminal and civil litigation over the same subject matter and the related possibility of conflicting civil and criminal judgments" that motivated *Heck*. *McDonough*, 139 S. Ct. at 2157. For these reasons, Defendant's motion to dismiss Count VIII is denied.

## **CONCLUSION**

Defendant's motion to dismiss [41] is granted in part and denied in part. Count VI is dismissed. Defendant's motion to dismiss Count VIII as well as Counts I through V as they relate to Plaintiff's 1990 trial are denied.

ENTER:

Dated: September 26, 2019

REBECCA R. PALLMEYER
United States District Judge