IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

| | | |
|---|---|---|
| ARTHUR BROWN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 18-cv-7064 |
| | ) | |
| CITY OF CHICAGO, et al., | ) | Judge Rebecca R. Pallmeyer |
| | ) | |
| Defendants. | ) | |

**RESPONDENTS' MOTION TO QUASH SUBPOENAS FOR DEPOSITIONS OF
ERIC SUSSMAN AND MARK ROTERT**

Third-Party Cook County State's Attorney's Office ("CCSAO"), by its attorney, Kimberly M. Foxx, State's Attorney of Cook County, through her assistant Lyle K. Henretty, pursuant to Fed. R. Civ. P. 26 and Fed. R. Civ. P. 45, brings this motion to quash the subpoenas for deposition issued to former First Assistant State's Attorney Eric Sussman and former Director of the CCSAO's Conviction Integrity Unit ("CIU"), Assistant State's Attorney Mark Rotert (collectively, the "Respondents"). In support, the Respondents state as follows:

**Relevant Procedural History**

In April of 1990, Arthur Brown ("Brown") was convicted of the May 28, 1988 arson-related murders of Keirt Phophairat and Pismai Panichkarn. *See* Compl., *Brown v. City of Chicago,* 18-cv-7064, N.D. Ill. Oct. 22, 2018, ECF No. 1. In August 2008, after another individual's confession to the murders necessitated a new trial, Brown was retried and convicted again. *Id*. In 2017, upon Brown being granted post-conviction relief, the CCSAO dismissed all charges against Brown. *Id*. On February 13, 2018, the Circuit Court of Cook County granted Brown a Certificate of Innocence ("COI"). *Id.* The CCSAO did not object to the issuance of the COI.

On October 22, 2018, Brown filed an eleven-count Complaint against the City of Chicago, numerous former Chicago Police Department ("CPD") officers and their estates, and former CCSAO Assistant State's Attorney ("ASA") Joel Whitehouse alleging various state and federal claims related to Plaintiff's underlying criminal case. *Id*. Counsel for the Defendant Officers and their estates have issued, and the CCSAO has accepted service of, subpoenas for the depositions of former First Assistant State's Attorney Eric Sussman and the former Director of the CCSAO's Conviction Integrity Unit[1], Mark Rotert.

Over the course of numerous conversations, counsel for the Defendant Officers have indicated their intent to depose the Respondents regarding the following subject matters: 1) the factors taken into account, deliberations and reasoning behind the CCSAO's decision to dismiss the charges against Brown in 2017; and 2) the factors taken into account, deliberations and reasoning behind the CCSAO's decision to not contest Brown's petition for a COI in 2018. Because these inquiries unquestionably seek privileged information, and because counsels have not reached a mutually acceptable resolution with respect to the scope of the anticipated inquiries, the Respondents respectfully request that this Court quash the subpoenas.

**Argument**

The Respondents moves to quash the subpoenas because: 1) the communications sought are protected by the deliberative process privilege; and 2) any mental impressions related to the

---

[1] The Conviction Integrity Unit investigates claims of actual innocence to determine whether new evidence gives rise to a substantial probability that a convicted defendant is actually innocent. The CIU counsels and makes recommendations to the Cook County State's Attorney about the appropriate remedy (if any) that should result from its findings. The State's Attorney makes all final decisions about whether a remedy should be provided to a person seeking review by the CIU. The CIU does not function as a "13th juror" and therefore does not review factual questions that have already been decided by a jury. Its mission is to determine whether new evidence shows that an innocent person has been wrongfully convicted for a crime and to recommend steps to rectify such situations.

privileged communications are likewise protected by the mental process privilege and work-product doctrine.

          1. <u>The Information Sought is protected by the Deliberative Process Privilege</u>.

"The deliberative process privilege protects communications that are part of the decision-making process of a governmental agency." *U.S. v. Farley*, 11 F.3d 1385, 1389 (7th Cir. 1993) (citing *N.L.R.B. v. Sears, Roebuck & Co.*, 421 U.S. 132, 150-51 (1975)). The privilege "rests on the obvious realization that officials will not communicate candidly among themselves if each remark is a potential item of discovery and front page news, and its object is to enhance the quality of agency decisions by protecting open and frank discussion among those who make them within the Government." *Department of Interior v. Klamath Water Users Protective Ass'n*, 532 U.S. 1, 8-9, 121 S. Ct. 1060, 149 L. Ed. 2d 87 (2001) (internal quotations omitted). To this end, the privilege shields "communications that are part of the decision-making process of a governmental agency." *Farley*, 11 F.3d at 1389. Privileged communications include, not only conversations, but "documents reflecting advisory opinions, recommendations, and deliberations comprising part of the process by which governmental decisions and policies are formulated." *Dep't of Interior v. Klamath Water Users Protective Assoc.*, 532 U.S. 1, 9, (2001) (citing *Sears, Roebuck & Co.*, 421 U.S. at 150). Although the deliberative process privilege does not justify the withholding of purely factual material, it does prohibit the disclosure of "factual matters inextricably intertwined with such discussions." *Enviro Tech Int'l, Inc. v. U.S. E.P.A.*, 371 F.3d 370, 374-75 (7th Cir. 2004).

A two-step process exists for determining whether the deliberative process privilege applies. First, the government must show that the privilege applies to the information sought. *Ferrell v. United States HUD*, 177 F.R.D. 425, 428 (N.D. Ill. 1998). For the government

to satisfy its prima facie threshold, three things must occur: 1) the department head with control over the matter at issue must, after personal consideration of the issue, make a formal claim of privilege; 2) the designated official must articulate, typically by affidavit,[2] their reasons for preserving the confidentiality of the information sought; and 3) the official must specifically identify and describe the documents or information sought. *Id.*; *see also Evans v. City of Chicago*, 231 F.R.D. 302, 316 (N.D. Ill. 2005). If the government makes out a prima facie case that the privilege applies, the burden then shifts to the party seeking disclosure to establish: 1) "a particularized need" for the information sought; and 2) that the party's need for the document outweighs the government's interest in confidentiality. *Farley*, 11 F.3d at 1389; *Ferrell 177 F.R.D. at 428.* In undertaking such an analysis, a court must balance the requestor's need for disclosure against the government's need for secrecy, considering such factors as: 1) the relevance of the documents to the litigation; 2) the availability of other evidence that would serve the same purpose as the documents sought; 3) the government's role in the litigation; 4) the seriousness of the litigation and the issues involved in it; and 5) the degree to which disclosure of the documents sought would tend to chill future deliberations within government agencies, that is would hinder frank and independent discussion about governmental policies and decisions. *Ferrell*, 177 F.R.D. at 429; *see also Saunders v. City of Chicago*, 12 C 958, 2015 U.S. Dist. LEXIS 105571, at * 31-32 (N.D. Ill. Aug. 12, 2015).

---

[2] **Although an affidavit is the "typical" manner by which the privilege is asserted, a formal affidavit is not always required when the information sought and the reasons asserted for its privilege are readily apparent to the Court. *See, e.g. Tumas v. Bd. of Educ.*, 06 C 1943, 2007 U.S. Dist. LEXIS 56242 at * 8-9 (N.D. Ill. July 31, 2007) (excusing affidavit requirement when it was apparent from pleadings what testimonial and documentary evidence was being sought). Because there is no dispute as what evidence is being sought in the case-at-bar, it would not appear that an affidavit is needed. Nevertheless, should this Court hold otherwise, the CCSAO will provide the requisite affidavit as failing to so in the first instance does not waive the privilege. *See Guzman v. City of Chicago*, 09 C 7570, 2011 U.S. Dist. LEXIS 1730, at * 6 (N.D. Ill. Jan. 1, 2011) (holding that the government's failure to timely provide an affidavit is not fatal to the claim of privilege).**

The information sought from *Messrs*. Susman and Rotert is unquestionably protected by the deliberative process privilege and has been previously held so by Courts in the Northern District. For instance, in *Saunders* the Plaintiff brought a motion to compel a high ranking ASA to answer deposition questions about the content of the CCSAO's deliberations regarding the dismissals of charges and its decisions regarding Plaintiff's petition for a COI. *Saunders*, U.S. Dist. LEXIS 105571, at * 58-63. Plaintiff also sought to compel the ASA to answer questions regarding his personal beliefs about the Plaintiff's guilt or innocence, the weight and significance or various evidence and the relevance of newly discovered evidence. *Id*. at 63-67. The Court, in holding that the deliberative process privilege was applicable to these inquiries, further held that, upon balancing the interests, the Plaintiff had not overcome his burden to establish a particularized need that outweighed the government's interests. *Id*. at 76. Although the Court conducted a full analysis, of particular significance to the Court's holding was the policy underlying the privilege itself – the need to protect the quality of agency decisions by protecting open and frank discussions among its members. *Id*. at 76 ("Allowing Plaintiffs to have access to such evidence would set a precedent for others similarly situated to seek discovery of the [SAO's] confidential information and allow them to have full access to closed session discussions as fodder for potential [civil rights] claims. This, in turn, would have a negative impact on the quality of prosecutorial decisions made by the State's Attorney and his or her staff.") (internal citations or quotation omitted). Ultimately upholding the CCSAO's objections, the Court denied the portion of Plaintiff's motion seeking to compel the ASA to answer the questions posed. *Id*.

As *Saunders* establishes, the CCSAO's deliberations regarding its decisions to prosecute or contest post-conviction litigation is privileged. *See also Hill v. City of Chicago*, 13 C 4847,

2015 U.S. Dist. LEXIS 190661, at * 10-11 (N. D. Ill. May 28, 2015) (holding that the deliberations underlying a decision to bring criminal charges are privileged). Yet, the Defendant Officers will be seeking the exact same information despite analogous precedent forbidding such disclosures.

As noted above, the Respondents' attorneys and counsel for the Defendant Officers and other parties have had numerous conversations related to the Sussman and Rotert subpoenas. The Defendant Officers have argued that there has been a waiver of the deliberative process privilege. The Defendant Officers have pointed to public comments made about the case, but have consistently refused to explain why or how these comments constitute waiver. Despite numerous requests for clarification, counsel for the Defendant Officers has refused to provide any factual or legal basis for their position that the mere *existence* of public comments regarding Mr. Brown is a complete waiver of the privilege.

Because the information sought is protected by the deliberative process privilege, and because the Defendant Officers will not be able to overcome their burden to establish a particularized need, this Court should quash the subpoenas directed to the *Messrs*. Sussman and Rotert.[3]

    2. <u>The Mental Impressions related to the Privileged Communications are Privileged</u>.

It is clear from the *Saunders* opinion that, not only are the actual communications privileged, but so too are the internal thoughts and mental processes attendant to the deliberations. As the *Saunders* Court noted, inquiries into personal beliefs cannot be separated from the actual deliberations as the beliefs and opinions formed are necessarily shaped by the

---

[3] The Parties, including the Defendant Officers, have indicated that they would like the deposition to proceed even if this Court determines that certain issues are privileged. Should the Parties articulate any reasons for Respondents' depositions that would not intrude upon a privilege, the Respondents would respectfully request that this Court enter a protective order prohibiting inquiry into the privileged subject matters, and otherwise limiting the depositions as appropriate.

protected deliberations. *Saunders*, U.S. Dist. LEXIS 105571, at * 63-67 ("This Court finds that the privilege was properly invoked by Valentini in response to these irregular deposition questions. It is likely that during the SAO's deliberations about the prosecutorial decisions, they discussed the weight of the evidence and whether it was sufficient for a jury to convict, as well as the other questions posed to Valentini. Since Valentini was present for the deliberations, it is understandable that providing answers to the questions would reveal analysis, arguments, and discussion from the deliberations."). While the *Saunders* Court did not invoke the actual term, the mental process and internal deliberation are likewise protected by the "mental processes privilege." *See Carl Zeiss Stiftung v. V. E. B. Carl Zeiss, Jena*, 40 F.R.D. 318, 326-26 (D.D.C. 1996) (holding that the mental processes privilege is "inextricably intertwined" with the deliberative process privilege and precludes "prob[ing] the mental process" of government officials); *see also Mendez v. City of Chicago*, 18 CV 5560, 2020 U.S. Dist. LEXIS 47530, at * 4 (N.D. Ill. Mar. 19, 2020) (quashing subpoena pursuant to the mental processes privilege seeking deposition of sitting judge regarding the reasoning for his decision). Because the mental processes privilege analysis is the same as the deliberative process privilege, *see United States v. Lake Cty. Bd. of Comm'rs*, 233 F.R.D. 523, 527 (N.D. Ind. 2005), the Defendant Officers are likewise prohibited from inquiring into the mental impressions of *Messrs.* Sussman and Rotert.

While the mental processes privilege is confined to pre-decisional deliberation, the common law work-product doctrine, a more expansive doctrine than the mental processes privilege, likewise prohibits inquiries into the Deponents' mental processes. As the Supreme Court has long held, the mental impressions and "intangible" work product of attorneys are "inviolate." *Hickman v. Taylor*, 329 U.S. 495, 511 (1947). As such, the intangible work product

that *Messrs.* Sussman and Rotert developed during their deliberations regarding Brown's post-conviction litigation is privileged and protected.

WHEREFORE, for the foregoing reasons, the Respondents respectfully requests that this Court quash the deposition subpoenas issued to former First Assistant State's Attorney Eric Sussman and former Director of the CCSAO's Conviction Integrity Unit, Assistant State's Attorney Mark Rotert.

KIMBERLY M. FOXX
State's Attorney of Cook County      By:     */s/ Lyle K. Henretty*
                                              Lyle K. Henretty
                                              Assistant State's Attorney
                                              Cook County State's Attorney's Office
                                              50 West Washington Street, Suite 2760
                                              Chicago, Illinois 60602
                                              (312) 603-1424
                                              lyle.Henretty@cookcountyil.gov

## CERTIFICATE OF SERVICE

I hereby certify that on February 23, 2020, I electronically filed the foregoing document with the Clerk of the Court for Northern District of Illinois, using the electronic case filing system of the Court. The electronic case filing system sent a "Notice of E-Filing" to the attorneys of record in this case.

/s/ *Lyle K. Henretty*