UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| ARTHUR BROWN, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 18 CV 7064 |
| | ) |
| CITY OF CHICAGO, Kimberly Campbell as | ) Judge Rebecca R. Pallmeyer |
| Special Representative for the Estate of | ) |
| JOSEPH CAMPBELL, Diane Romza-Kutz | ) Magistrate Judge Maria Valdez |
| as Special Representative for the Estate of | ) |
| DAVID KUTZ, and Frank W. Fine as | ) |
| Special Administrator for the Estate of | ) |
| JOSEPH D. FINE, Former Assistant State's | ) |
| Attorney JOEL WHITEHOUSE, and other | ) |
| as-yet unidentified employees of the City of | ) |
| Chicago, | ) |
| | ) |
| Defendants. | ) |

**DEFENDANT JOEL WHITEHOUSE'S MOTIONS *IN LIMINE***

Defendant Joel Whitehouse, by and through his attorneys, moves this Honorable Court for an order *in limine* and in support states as follows:

**MOTION No. 1**
**Exclude Argument or Reference to Obligation of Cook County or Cook County State's Attorney's Office to Indemnify Whitehouse**

Defendant Whitehouse seeks an Order *in limine* barring any argument or reference that he may be indemnified by Cook County or the Cook County State's Attorney's Office for any compensatory damages returned against him. Although neither Cook County nor the Cook County State's Attorney is a defendant in this case, it is anticipated that Plaintiff may attempt to present evidence or argue to the jury that Whitehouse may be indemnified by Cook County or the Cook County State's Attorney for any compensatory damages returned against him. Such evidence or argument has no probative relevance to any issue in this case, and any reference to

1

indemnification will be equally as prejudicial as the reference to insurance coverage prohibited under Fed. R. Evid. 411. *Walker v. Saenz*, 1992 WL 317188, *3 (N.D. Ill. Oct. 27, 1992), *see also Townsend v. Benya*, 287 F.Supp.2d 868, 874 (N.D. Ill. 2003) (Court bars mention of indemnification of defendants because no probative value and the information is too prejudicial to survive the Fed. R. Evid. 403 balancing test.)

## MOTION No. 2
### Exclude Reference to Defense Counsel as "Special State's Attorneys" or "State's Attorneys"

Defendant Whitehouse seeks an Order *in limine* barring any reference to his legal counsel as "Cook County State's Attorney," "State's Attorney," "Assistant State's Attorney" or "Special State's Attorney." The clear purpose of such references will be to place in the jury's mind the inference that Cook County and the Cook County State's Attorney's office represents Whitehouse and will also pay any judgment that may be entered against him. Such an inference would be highly prejudicial, as the jury may believe Cook County and the Cook County State's Attorneys' s office has "deep pockets," thereby allowing the jury to award money to Plaintiff regardless of the facts. *See Walker,* 1992 WL 317188 at *3, *Saunders v. City of Chicago*, 320 F.Supp.2d 735, 738 (N.D. Ill. 2004).

## MOTION No. 3
### Exclude Other Civil Lawsuits Filed Against Whitehouse

Defendant Whitehouse seeks an Order *in limine* barring references to any other civil lawsuits filed against him. At his deposition, Whitehouse was shown a copy of a prisoner *pro se* civil rights lawsuit captioned *Aaron Cole v. First Judicial Court of Cook County et al*, that was filed in 1994 in the Northern District of Illinois. The lawsuit named the judge, the public defender and all prosecutors involved in Mr. Cole's case, including Whitehouse, and alleged that

Cole (and his son) were deprived of their constitutional rights surrounding Cole's conviction for burglary.

Whitehouse testified at his deposition that he had no knowledge of the lawsuit until preparing for his deposition, and that he had never been served with the complaint. (Deposition of Joel Whitehouse attached as Exhibit A ("Whitehouse Dep.") p.264:5-265:19). Whitehouse also had no knowledge of any other civil lawsuit or complaint ever being filed against him for his conduct as a state's attorney. (Whitehouse Dep. p.266:19-267:3).

Evidence of the *Cole* complaint or any other civil lawsuit filed against Whitehouse has no relevance to any issue in this case, and is inadmissible under Fed. R. Evid. 404. Evidence of other civil lawsuits against Whitehouse are also inadmissible under Fed. R. Evid. 403, as any probative value is substantially outweighed by unfair prejudice. *See Patterson v. City of Chicago*, 2017 WL 770991, *4 (N.D. Ill. Feb. 28, 2017) (Evidence of other lawsuits have a significant potential to mislead the jury and are highly inflammatory). Accordingly, evidence or argument relating to the *Cole* complaint or any other civil lawsuit filed against Whitehouse should be barred.

### MOTION No. 4
### Use of CPD Policies and Procedures Against Whitehouse

Defendant Whitehouse seeks an Order *in limine* barring any evidence or argument that he failed to comply with any rules, regulations, policies or procedures of the Chicago Police Department. In addition to the reasons set forth in the Estate Defendants' motion *in limine* to bar evidence regarding Chicago Police Department internal rules and regulations as to why such evidence is inadmissible, there is additionally no evidence in this case that Chicago Police Department rules applied to Cook County State's Attorneys like Whitehouse, or that Whitehouse had any knowledge about Chicago Police Department internal rules and regulations.

Accordingly, evidence that Whitehouse's conduct violated any Chicago Police Department internal rules and regulations has no relevance to any issue in this case, and any probative value is substantially outweighed by the dangers of unfair prejudice and confusion of the issues. *Thompson v. City of Chicago*, 472 F.3d 444, 457 (7th Cir. 2006), Fed. R. Evid. 403.

## MOTION No. 5
## Exclude Certificate of Innocence

Defendant Whitehouse seeks an Order *in limine* barring any evidence, argument, or reference relating to Brown's certificate of innocence ("COI"), and in support states as follows:

### INTRODUCTION

Brown filed his petition for a certificate of innocence on December 21, 2017. The Cook County State's Attorney's Office ("CCSAO") took no position with regarding to the petition and on February 13, 2018, Brown was granted a COI without any evidentiary hearing. The Defendants were not a party to the COI proceedings, nor were they made aware of such proceeding or given an opportunity to participate and object to the COI.

Brown will attempt to admit the COI as evidence that he is in fact innocent of the underlying crimes and therefore he was maliciously prosecuted for a crime he did not commit. Brown will further introduce the COI to prove that Brown's criminal case was terminated in a manner indicative of innocence, thus supporting his malicious prosecution claim. Allowing such evidence or argument to be submitted to the jury is far more prejudicial than probative. Additionally, the COI itself is hearsay and thus inadmissible.

**I.    THE COI SHOULD BE BARRED BECAUSE ITS PROVATIVE VALUE IS SUBSTANTIALLY OUTWEIGHED BY UNFAIR PREDJUDICE, CONFUSION OF THE ISSUES AND UNDUE DELAY.**

Under Fed. R. Evid. 403, otherwise relevant evidence may nonetheless be excluded "if its probative value is substantially outweighed by a danger of … unfair prejudice, confusing the

issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Civ. 403. The COI has little, if any, probative value under the unique facts of this case, and its relevance is far outweighed by the risk of unfair prejudice and confusion of the issues.

The COI is not part of the criminal process, but is issued in a separate proceeding as the initial hurdle in seeking relief in the Illinois Court of Claims. *See* 735 ILCS 5/2-702(j). The COI procedure anticipates an evidentiary hearing, and requires the petitioner to prove by a preponderance of the evidence that he is innocent of the criminal charges. 735 ILCS 5/2-702 (f), (g).

There was no evidentiary hearing in this case, and the COI was granted based solely upon Brown's petition. The petition asserts that there was no evidence linking Brown to the arson other than the handwritten statement which Brown claims was false and the product of physical coercion, and that James Bell confessed to the arson in an affidavit from 2001 that was attached to the petition. (*See* Petition for Certificate of Innocence (without exhibits) attached as Exhibit B). This is the same evidence and argument that Brown can present to the jury in this case.

The COI Court was only provided with a one-sided version of the facts, and was not told about additional evidence that linked Brown to the arson and that the handwritten statement was the voluntary statement of Brown and not the product of coercion. The COI Court was also not told that Brown knew that Bell's affidavit was false, including that the reasons asserted by Bell for starting the arson were not true. Nor was the COI Court presented with any of Bell's recorded prison phone calls, wherein he stated about Brown, among other things, that "You ain't wrongfully convicted. You guilty." Under these unique circumstances, the COI provides little if any probative value to any issue in this case.

5

The COI is highly prejudicial, however, as the jury may wrongly believe that the COI is dispositive of Brown's innocence, and thus that Defendants must have done something wrong. Even if the COI is not treated as dispositive on any issue in the case, the jury may put undue weight on the COI as a judicial decision, even though it does not actually reflect a factual finding arising from the crucible of the adversarial process, which our legal system regards as the best means of discovering the truth. *Patrick v. City of Chicago*, 974 F.3d 824, 833 (7th Cir. 2020). Admission of the COI will also unnecessarily result in a series of mini-trials on the COI process and the granting of the COI itself, including evidence regarding the substance of the COI petition and information that was false or omitted from the COI petition and thus not considered by the COI Court, as well as testimony from CCSAO witnesses and others regarding their reasons for not objecting to the COI petition which did not include any determination as to Brown's innocence or the truth of the allegations of the petition.

The Seventh Circuit has recognized that this Court must exercise care when weighing the admissibility of a COI, but also noted that well-crafted jury instructions can usually guard against the risk of unfair prejudice or confusion of the issues. *Patrick* at 833. No jury instructions can protect against the undue confusion of issues and delay caused by the mini-trials associated with the COI in this case, however, which will improperly shift the focus of the trial from Brown's allegations against the Defendants for conduct that occurred in 1988 to the information contained and omitted from the petition for certificate of innocence that was filed in 2017, and the CCSAO's decision to not oppose the petition. *See generally Manuel v. City of Chicago*, 335 F.3d 592, 597 (7th Cir 2003) (Trial Court properly barred evidence that would result in a series of mini-trials.).

Evidence that a COI was issued in 2018 without an evidentiary hearing based upon an incomplete (and partially false) one-sided recitation of the facts does not assist the jury in resolving any issue in the case. The COI will mislead and confuse the jury, however, and testimony surrounding the petition for certificate of innocence will unnecessarily extend the length of this trial. For these reasons, Brown's COI should be barred pursuant to Fed. R. Evid. 403.

## II. THE COI IS INADMISSIBLE HEARSAY.

The COI should also be barred as hearsay, and there is no exception that would allow its admission. Brown has previously argued that the COI is admissible under the public record exception, which provides an exception to the rule against hearsay for:

> (8) **Public Records.** A record or statement of a public office if:
>
> (A) It sets out:
>
> (i) the office's activities;
>
> (ii) a matter observed while under a legal duty to report, but not including, in a criminal case, a matter observed by law-enforcement personnel; or
>
> (iii) in a civil case or against the government in a criminal case, factual findings from a legally authorized investigation; and
>
> (B) The opponent does not show that the source of information or other circumstances indicate a lack of trustworthiness.

Fed. R. Evid. 803 (8).

A plain reading of FRE 803(8) shows that it does not apply to the COI. Subparts (A) (i) and (ii) clearly do not apply, as the COI does not set out a public office's activities or matters observed while under a legal duty to report. Subparagraph (A) (iii) also does not apply to judicial findings of fact, but rather to "factual findings resulting from a legally authorized

7

investigation," which refers to findings of agencies and offices of the executive branch. *U.S. v. Jones*, 29 F.3d 1549, 1554 (11th Cir. 1994), *see also Nipper v. Snipes*, 7 F.3d 415, 417 (4th Cir. 1993) ("A judge in a civil trial is not an investigator, rather a judge. In fact, a review of the advisory committee note to Rule 803 makes plain that the drafters intended the portion of the rule to relate to findings of agencies and offices of the executive branch."), *see also generally Federal Deposit Insurance Corp. v. Chicago Title*, 2017 WL 3592736, *9 (N.D. Ill. Aug. 21, 2017) (Civil judgment is inadmissible hearsay.); *Africano v. Atrium Medical Corp.*, 2021 WL 4477867, *2 (N.D. Ill. Sept. 30, 2021) (Same). Even if subparagraph (A)(iii) applied, the COI is still not admissible under subparagraph (B) because, as discussed above, the COI was based upon a factually incomplete and false petition, and thus has a lack of trustworthiness.

While other courts in this District have found that a COI is admissible under Rule 803(8), they did not analyze the actual language of the hearsay exception, or address subparagraph (B). *See Kluppelberg v. Burge*, 84 F.Supp.3d 741, 746 (N.D. Ill. 2015). Instead, the *Kluppelberg* Court noted that the Seventh Circuit questioned the soundness of the rule that judicial findings of facts do not fall within the public record exception in *Greycas, Inv. v. Proud*, 826 F.2d 1560, 1567 (7th Cir. 1987), and thus found that Rule 803(8) applied.

The *Greycas* Court did not hold that judicial findings were admissible under Rule 803(8), however, and the public records exception is not even mentioned in the decision. Rather, the *Greycas* Court found that a civil judgment that plaintiff's lien on a piece of property was subservient to other liens was a record of a document that established the plaintiff's interest in property and thus was admissible under Rule 803(14). *Id.* at 1567. The *Greycas* court also found that the judgment satisfied the "catch all" exception. *Id.* Nothing in *Greycas* holds that a

8

civil judgment, including an order granting a COI, can be considered "factual findings from a legally authorized investigation" under Rule 803(8), and indeed it is not.

Finally, the COI does not satisfy the "catch-all" exception to the hearsay rule, which requires:

(1) the statement is supported by sufficient guarantees of trustworthiness – after considering the totality of circumstances under which it was made and evidence, if any, corroborating the statement; and

(2) it is more probative on the point for which it is offered than any other evidence that the proponent can obtain through reasonable efforts.

Fed. R. Evid. 807 (a). The Seventh Circuit has cautioned that the residual exception must be narrowly construed as to prevent it from swallowing the hearsay rule. *Akrabawi v. Carnes Co.*, 152 F.3d 688, 697 (7th Cir. 1998).

As discussed above, the COI is not supported by sufficient guarantees of trustworthiness considering the totality of circumstances under which it was granted. Furthermore, it is not more probative on any relevant issue in this case than other evidence available to Brown. For these reasons, the COI is inadmissible hearsay and must be barred.

### MOTION No. 6
### Exclude Testimony from Geronia Ford or Michael Harper
### Regarding Their Incarceration Experiences

Defendant Whitehouse seeks an Order *in limine* barring any reference to Michael Harper or Geronia Ford's personal experiences in prison. During discovery, Brown's counsel elicited testimony from Michael Harper about what he has lost while he was incarcerated. (Deposition of Michael Harper attached as Exhibit C ("Michael Dep.") p.236:21-37:10). Similarly, Brown elicited testimony from Geronia Ford regarding how he felt about spending time in jail and how serving his prison sentence changed him. (Deposition of Geronia Ford attached as Exhibit D

("Ford Dep.") at 233:16-234:8, 309:4-15). Ford's and Michael's testimony about their personal experiences in prison is irrelevant to Brown's claims in this case and should be barred.

Evidence is relevant if it "has any tendency to make a fact more or less probable than it would be without the evidence;" and the "fact is of consequence in determining the action." Fed. R. Evid. 401. Ford's and Michael's personal experiences while incarcerated, how they felt about being in prison, how prison changed them, and similar questions makes no fact of consequence in this case more or less probable. Moreover, even if this testimony were somehow relevant to a fact at issue, the testimony should still be barred because there is a substantial danger of unfair prejudice and confusion of the issues. Fed. R. Evid. 403. While questions regarding a plaintiff's prison experiences may be relevant to damages issues, eliciting this testimony from non-plaintiffs about their personal experiences would unfairly Whitehouse and the other Defendants by presenting evidence that Ford's and Michael's experiences in prison should be considered to buttress Brown's damages. The jury will not be tasked with deciding whether Ford or Michael are entitled to damages. Accordingly, testimony from Ford and Michael regarding their prison experiences, thoughts about being imprisoned, how it affected them, and similar questions should be barred.

**MOTION No. 7**
**Allow Questioning Eric Sussman and Mark Rotert About the Chicago Tribune Article Critical of the Cook County State's Attorney's Office**

Defendant Whitehouse eeks an Order *in limine* allowing Defendants to examine witnesses Eric Sussman and Mark Rotert about a Chicago Tribune article critical of the Cook County State's Attorney's office. On November 9, 2017, the Chicago Tribune published an article written by Eric Zorn titled "Foot-dragging Foxx Does Not Look Like Much of a Reformer" (the "Zorn article"), a copy of which is attached as Exhibit E. The Zorn article

criticized State's Attorney Foxx and her office for clinging to convictions despite what Zorn viewed as "overwhelming new evidence" of innocence. The Zorn article and the negative publicity the Cook County State's Attorney's Office ("CCSAO") received was part of the background for Brown's negotiations with the CCSAO and the CCSAO's decision to not pursue the appeal of the order vacating Brown's conviction and not retrying Brown.

It is beyond dispute that the negative press coverage of the CCSAO from the Zorn article was part of the surrounding circumstances of the evaluation of Brown's case. The review of Brown's case was unique: it did not go through the normal channels of review and was not formally reviewed by the Conviction Integrity Unit (like Michael Harper's later would be). Rather, Brown's counsel, who had access to members of the CCSAO executive staff, went directly to Sussman and Rotert, bypassing the ASAs on the case. During the first meeting Brown's counsel had with Sussman and Rotert, Brown's counsel suggested that if the CCSAO made a decision in Brown's favor, it would present an opportunity to have a positive statement in the media about the CCSAO to contrast the Zorn article. The next day, Brown's counsel wrote Sussman and Rotert, referenced the Zorn article and stated that he "would love to go before the cameras and write Eric Zorn to point out the stark difference between the [Foxx and Alvarez] administrations and why, at times, it takes a while to be thorough."

Ultimately, Sussman and Rotert concluded three days after the Zorn article was published that the CCSAO should not pursue the appeal and should not retry Brown. Two days later, the CCSAO withdrew the notice of appeal and dismissed the criminal charges against Brown. Brown's counsel made good on his promise: he went before the press and complimented the CCSAO stating, that the case marked a "culture change" for the CCSAO and that "Kim Foxx and her staff were interested in serving justice rather than clinging to a wrongful conviction.

Previous administrations have clung to wrongful convictions in the face of direct evidence." (*See* Man Freed from Jail 29 Years After Wrongful Arson Conviction, Chi. Sun-Times, Nov. 15, 2017). Brown's counsel spoke to the Chicago Tribune and complimented the CCSAO for acting with "lightning speed" in reviewing Brown's case. (*See* Man in Prison for 29 Years Freed After Cook County Prosecutors Drop Charges, Chi. Tribune, Nov. 15, 2017). In fact, Eric Zorn wrote an article titled, "Good on you Kim Foxx for Righting Old Wrong" in which he complemented the CCSAO for its decision in Brown's case. A copy of the "Good on you Kim Foxx" article is attached as Exhibit F.

This evidence is directly relevant to Brown's state law malicious prosecution claim for which Brown must prove, in part, that his criminal proceedings were favorably terminated; where there is a *nolle*, plaintiff must show that the case was dismissed in a manner indictive of innocence. *Swick v. Liautaud*, 169 Ill.2d 504, 513 (1996). This element requires the jury to consider "the circumstances surrounding the abandonment of the criminal proceedings." *Beaman v. Freesmeyer*, 2021 IL 125617, ¶ 109. Part of "the circumstances" of the CCSAO's decision to drop the charges against Brown was the Zorn article.

Defendants expect the evidence to show that after the Zorn article was published, CCSAO decision makers, including Sussman, were aware of it, Brown's counsel spoke to Sussman and Rotert about the article, and twice offered to speak positively to the press to rebut the attacks on the CCSAO contained in the Zorn article if the CCSAO dropped Brown's case. Merely three days after the Zorn article came out, the CCSAO agreed to drop charges and as a result, Brown's counsel spoke glowingly to the press about the CCSAO. As such, Defendants should be allowed to question Sussman and Rotert about the Zorn article.

### Defendant Requests that this Court's Ruling on
### Motions *in Limine* Apply Equally to All Parties

Defendant requests that, in addition to the relief sought above, that this Court's rulings on the motions *in limine* filed by Plaintiff and the other Defendants in this case apply equally to all parties.

WHEREFORE, Defendant prays that this Honorable Court, *in limine*, that the parties, their attorneys not mention, refer to, adduce, interrogate, introduce any evidence concerning, or attempting to convey to the jury at any time during these proceedings in any manner, directly or indirectly, the subject matter as stated above. Defendant also requests that each counsel be instructed to caution and warn each and every one of their witnesses to comply with these instructions.

Respectfully submitted,

By:     /s/Patricia C. Bobb
       One of the Attorneys for Joel Whitehouse

Patricia C. Bobb
Patricia C. Bobb & Associates
225 West Wacker Drive, Suite 1515
Chicago, Illinois 60606
(312) 334-3122
Bobb@pcbtrialaw.com

David R. Nordwall
Law Office of David R. Nordwall LLC
225 West Wacker Drive, Suite 1515
Chicago, Illinois 60606
(312) 291-1660
David@drnlaw.net

# CERTIFICATE OF SERVICE

I hereby certify that on **January 31, 2023**, I electronically filed the foregoing *Defendant Joel Whitehouse's Motions in Limine* with the Clerk of the Court using the ECF system, which sent electronic notification of the filing on the same day to all counsel of record via the Court's CM/ECF system.

/s/ David R. Nordwall