**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| **ARTHUR BROWN,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| v. ) | No. 18 C 7064 |
| ) | |
| **CITY OF CHICAGO, Kimberly Campbell** ) | Judge Rebecca R. Pallmeyer |
| **as Special Representative for the Estate of** ) | |
| **JOSEPH CAMPBELL, Diane Romza-Kutz** ) | |
| **as Special Representative for the Estate of** ) | |
| **DAVID KUTZ, and Frank W. Fine as** ) | |
| **Special Administrator for the Estate of** ) | |
| **JOSEPH D. FINE, Former Assistant State's** ) | |
| **Attorney JOEL WHITEHOUSE, and other** ) | |
| **as-yet unidentified employees of the City of** ) | |
| **Chicago,** ) | |
| ) | |
| **Defendants.** ) | |

## ORDER

The parties in this wrongful conviction case have filed numerous motions *in limine*. For the reasons explained here, the motions are granted in part and denied in part.

## DISCUSSION

Before addressing the pending motions, the court notes it retains broad discretion to rule in ruling on such motions as part of the court's inherent authority to manage the course of trials. *See Luce v. United States*, 469 U.S. 38, 41 n.4 (1984). "Often, however, the better practice is to wait until trial to rule on objections, particularly when admissibility substantially depends upon facts which may be developed there." *Navarrete v. Madison Cnty.*, No. 17-CV-347-SMY, 2021 WL 2374350, at *1 (S.D. Ill. June 10, 2021) (citing *Jonasson v. Lutheran Child and Family Servs.*, 115 F.3d 436, 440 (7th Cir. 1997)). The court will grant a motion *in limine* to exclude evidence only when the evidence appears to be inadmissible on all potential grounds. *See Townsend v. Benya*, 287 F. Supp. 2d 868, 872 (N.D. Ill. 2003). Even where the moving party makes a showing

that this test is met, the court retains jurisdiction to change its ruling at trial. *Luce*, 469 U.S. at 41 n.4.

I.     **City of Chicago's Motion [361]**

    A.     **City of Chicago's Motion *in Limine* No. 1: Bar any reference to the City in the Jury Instructions or Verdict Form**

This motion is granted. Two of Mr. Brown's counts—*respondeat superior* and indemnification—involve the City. There is no genuine basis to conclude that the City would refuse to pay judgment for a verdict against any one of the Detective Defendants, as the City concedes that the Illinois indemnity statute applies: the Detective Defendants were acting within the scope of their employment and under the color of law. *See* 745 ILCS 10/9-102. The court directs the parties to draft a stipulation confirming that the City will indemnify the Detective Defendants in this case, should the jury find for Mr. Brown. The stipulation should also confirm that the party names stated to the jury will be "Brown v. Campbell, et al."

II.     **Defendant Joel Whitehouse's Motions [362]**

    A.     **Whitehouse's Motion *in Limine* No. 1: Exclude Argument or Reference to Obligation of Cook County or Cook County State's Attorney's Office to Indemnify Whitehouse**

The motion is granted without objection.

    B.     **Whitehouse's Motion *in Limine* No. 2: Exclude Reference to Defense Counsel as "Special State's Attorneys" or "State's Attorneys"**

The motion is granted without objection.

    C.     **Whitehouse's Motion *in Limine* No. 3: Exclude Other Civil Lawsuits Filed Against Whitehouse**

The motion is granted without objection.

    D.     **Whitehouse's Motion *in Limine* No. 4: Use of CPD Policies and Procedures Against Whitehouse**

The motion is granted without objection.

### E. Whitehouse's Motion *in Limine* No. 5: Exclude Certificate of Innocence

The motion is denied. On February 13, 2018, the Honorable Leroy K. Martin of the Circuit Court of Cook County granted Mr. Brown's petition for a Certificate of Innocence ("Certificate" or "COI"), which the Cook County State Attorney's Office ("CCSAO") did not oppose, without holding an evidentiary hearing. Mr. Brown's COI is directly relevant to his malicious prosecution claim, which requires him to prove, among other elements, that the criminal proceedings against him were terminated in a manner indicative of innocence. *Patrick v. City of Chicago*, 974 F.3d 824, 834 (7th Cir. 2020).

The Estate Defendants and Defendant Whitehouse both challenge the admissibility of the COI. Defendants argue that the Certificate should be barred under Rule 403, which provides that relevant evidence may be excluded "if its probative value is substantially outweighed by a danger of . . . unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." FED. R. EVID. 403. Defendants insist that Mr. Brown's Certificate of Innocence has little, if any, probative value because it was unopposed and was based on a petition supported by the affidavit of James Bell, an affidavit which, Defendants contend, Mr. Brown knew to contain falsehoods. Defendants further argue that, regardless of whatever shred of probative value the COI may have, that value is substantially outweighed by the risk of unfair prejudice and jury confusion. Defendants say they will be unfairly prejudiced because they will need to spend substantial time trying to overcome the judicial finding on the face of the COI a form document stating that, by a preponderance of evidence, a judge found Mr. Brown innocent of the charges for which he was convicted. Defendants also raise concerns that introducing the COI will result in a mini-trial on the question of whether the Certificate was properly granted, distracting the jury from the true issues of this case: did Defendants fabricate evidence to convict Mr. Brown.

The court disagrees that the Certificate of Innocence is of little probative value. It may be the most probative piece of evidence for the termination element of Mr. Brown's malicious

3

prosecution claim. The fact that prosecutors dropped charges, alone, is not enough for him to prove his claim. Indeed, absent the COI, it is unclear what evidence Mr. Brown could present to prove that the criminal proceedings against him terminated in a manner indicative of innocence, as opposed to, for example, that prosecutors dropped charges due to the practical difficulties of retrying a case, decades after the crime, when most relevant witnesses are deceased.

The court understands that admission of the COI will prejudice the Defendants, but it does not agree that such prejudice is insurmountable. Defendants will have ample opportunity to inform the jury about what the Defendants see as major infirmities surrounding the COI: Defendants will be able to present evidence that Mr. Brown's petition included an affidavit containing statements that Mr. Brown knew were false, that the court issued the Certificate without conducting an evidentiary hearing, and that other circumstances suggest possible motivations for the CCSAO's determination not to oppose the petition, other than a belief that Mr. Brown was in fact innocent. The Defendants will also have the opportunity to make sure the jury understands that Defendants were not a party to the COI proceedings, were not made aware of such proceedings, and were not given an opportunity to participate in or object to the Certificate. Because Defendants will be able to challenge the probative value of Mr. Brown's Certificate of Innocence to the jury, the court does not believe that the risk of prejudice is so great as to call for its exclusion at trial.

The court also recognizes the possibility that admission of the COI could generate confusion but believes that risk can be addressed by way of by appropriate jury instructions, like those the Seventh Circuit cited favorably in *Patrick*. *Patrick*, 974 F.3d at 833 (citing *Harris v. City of Chicago*, No. 14 C 4391, 2018 WL 2183992, at *5 (N.D. Ill. May 11, 2018)). Defendants may submit draft jury instructions that state, for example, (1) the state court's decision to issue a COI is not binding on the jury in this case, (2) the Certificate of Innocence court considered different evidence than what has been presented to this jury, and (3) the Certificate of Innocence court did not consider whether Mr. Brown's confession was false, fabricated, or coerced. *See Harris*, 2018 WL 2183992, at *5.

4

Finally, the court overrules Defendants' hearsay objection to admission of the COI. This court, consistent with others in this Circuit, finds that the Certificate of Innocence is a public record within the meaning of Rule 803(8). *See, e.g., id.* at *3 (citing *Kluppelberg v. Burge*, 84 F. Supp. 3d 741, 746–77); *Logan v. Burge*, No. 09 C 5471, slip op. at 2–3 (N.D. Ill. Oct. 19, 2012). Under that exception, a record or statement of a public office may be admitted into evidence if (a) it sets out either (i) the office's activities; (ii) a matter observed while under a legal duty to report; or (iii) in a civil case or against the government in a criminal case, factual findings from a legally authorized investigation; and (b) the opponent does not show that the source of information or other circumstances indicate a lack of trustworthiness. FED. R. EVID. 803(8). The COI sets out the office's activities—namely, the activities of the Judge in the Circuit Court of Cook County—and there is no dispute about whether the State court's rulings were accurately recorded on the Certificate, which is a one-page court template.[1] The court therefore admits the Certificate of Innocence under this exception to the hearsay rule.[2]

One final comment on this issue: Defendants have urged exclusion of the COI under the rationale of an oral ruling issued by one of this court's colleagues in a related case. The judge concluded that admission of the COI was not necessary because defendants in that case were willing to stipulate to innocence of the plaintiff. If Defendants in this case are prepared to enter into such as stipulation, to be read to the jury, that the criminal proceedings against Mr. Brown terminated in a manner indicative of innocence, the court will revisit this ruling.

---

[1] Defendants argue that the Certificate of Innocence lacks trustworthiness because Mr. Brown's petition included the Bell affidavit (with its known falsehoods) and because Judge Martin granted the petition without an evidentiary hearing. Those circumstances do not undermine the conclusion that the Circuit Court of Cook County did, in fact, issue the Certificate of Innocence. At trial, Defendants will have plenty of opportunity to challenge the significance of the COI in this case in light of the circumstances of its issuance.

[2] Because the court finds that the Certificate of Innocence is a public record under Rule 803(8), it need not address the parties' arguments concerning the applicability of the "catch-all" exception to the hearsay rule. *See* FED. R. EVID. 807(a).

  **F.**  **Whitehouse's Motion *in Limine* No. 6: Exclude Testimony from Geronia Ford or Michael Harper Regarding Their Incarceration Experiences**

The motion is granted without objection.

  **G.**  **Whitehouse's Motion *in Limine* No. 7: Allow Questioning of Eric Sussman and Mark Rotert About the Chicago Tribune Article Critical of the Cook County State's Attorney's Office**

The motion is granted, along with the related third-party motion filed by the CCSAO [385]. The CCSAO has independently moved to limit the trial testimony of any current or former CCSAO employees in accordance with the court's orders from July 28, 2020 and June 15, 2021. Those orders bar counsel from eliciting testimony from CCSAO officials about the office's deliberative process. The parties reportedly complied harmoniously with that restriction when deposing CCSAO employees Mr. Eric Sussman and Mr. Mark Rotert. Defendants are entitled to present the evidence they have gathered about the circumstances surrounding both CCSAO's decision to issue a *nolle prosequi* in Mr. Brown's criminal case and its decision not to oppose his Certificate of Innocence in conformity with the limitations already set forth by this court.

**III.** **Defendants' Joint Motions [363, 367, 368]**

  **A.**  **Defendants' Motion *in Limine* No. 1: Bar Opinions of Plaintiff's Retained Expert Antoinette Kavanaugh**

The motion is granted in part and denied in part. The court has ruled on appropriate limitations for Dr. Kavanaugh's testimony in a separate order. *Brown v. City of Chicago*, No. 18 C 7064, 2023 WL 2561728, at *2–4 (N.D. Ill. Mar. 17, 2023).

  **B.**  **Defendants' Motion *in Limine* No. 2: Bar Dennis Waller's Opinions**

The motion is granted in part and denied in part. The court has ruled on appropriate limitations for Mr. Waller's testimony in a separate order. *Id.* at *4–7.

  **C.**  **Defendants' Motion *in Limine* No. 3: Bar Plaintiff's Expert Dr. Richard Leo**

The motion is granted in part and denied in part. The court has ruled on appropriate limitations for Dr. Leo's testimony in a separate order. *Id.* at *8–13.

### IV. Plaintiff Arthur Brown's Motions [365, 366]

#### A. Brown's Motion *in Limine* No. 1: Exclude Photographs of Decedents and Related Material

The motion is granted. There is no dispute that two individuals died as a result of the arson. The proposed exhibit is irrelevant to the probable cause element of Mr. Brown's malicious prosecution claim because its contents do not make it more or less likely that Mr. Brown was involved in the fire. *See* FED. R. EVID. 401. The court will reconsider the motion if Defendants show that the photographs are, indeed, relevant to whether the Detective Defendants established probable cause against Mr. Brown.

#### B. Brown's Motion *in Limine* No. 2: Bar Reference to Collateral Source Payments

The motion is denied. Under Illinois law, a person who receives a Certificate of Innocence also receives a monetary award, the amount of which is set by statute. *See* 705 ILCS 505/8(c). Mr. Brown argues that the monetary compensation he received is a collateral source payment, which is inadmissible at trial because it is irrelevant to the question of damages. Mr. Brown compares this case to those involving classic forms of collateral source payments, such as insurance payments. (Pl.'s Consolidated Motions *in Limine* [365] at 2–3 (citing, e.g., *ADM Investor Servs., Inc. v. Collins*, 515 F.3d 753, 755 (7th Cir. 2008) ("That a third party reimburses part of a loss does not disable the injured person from recovering under tort or contract law.")).) Those cases, however, are not directly analogous to this one, because Mr. Brown is seeking damages in addition to or other than the loss for which the statutory award compensates him. For example, he seeks damages for emotional distress, which are not contemplated by the statutory award he received. Because the funds that flow from the Certificate of Innocence are not necessarily collateral to all of the damages Mr. Brown seeks here, the statutory compensation does not qualify as a collateral source payment. *Clanton v. United States*, 943 F.3d 319, 326 (7th Cir. 2019) (noting that Illinois courts look to the source, nature, and purpose of payments to determine if they are wholly independent of, and thus collateral to, damages sought). It is

reasonable for the jury to know that compensation is one result of receiving a Certificate of Innocence under Illinois law.

### C. Brown's Motion *in Limine* No. 3: Exclude James Bell's Testimony and Recorded Jail Calls

The court reserves ruling on this motion. Plaintiff argues that Mr. Bell's testimony must be barred because Defendants are not calling him for any permissible purpose—his testimony is not helpful to Defendants, and they cannot call a witness solely for impeachment. *United States v. Kielar*, 791 F.3d 733, 744–45 (7th Cir. 2015) ("It is well established that a party may not call a witness for the sole purpose of impeaching him.") (citation omitted). Plaintiff further argues that Defendants cannot call Bell to impeach Mr. Brown on collateral matters, and that Bell's recorded jail calls are inadmissible hearsay, irrelevant, and cause for confusion. *See United States v. Rovetuso*, 768 F.2d. 809, 817 (7th Cir. 1986) ("The rule in this circuit is that a witness 'may not be impeached by contradiction as to collateral matters elicited on cross-examination'") (citing *United States v. Taylor*, 728 F.2d 864, 874 (7th Cir. 1984)); *see also* FED. R. EVID. 608(b), 401, 402, 403.

Plaintiff has not demonstrated, however, that Mr. Bell's testimony is inadmissible on *all* potential grounds. Indeed, whether Mr. Bell's testimony is admissible may depend on the content of Mr. Brown's own testimony. For example, should Mr. Brown testify that he did not know Mr. Bell at the time Bell wrote the affidavit that Brown later attached to his petition for a Certificate of Innocence, Bell may be called to testify that the two men interacted when they were housed in the same prison facility.

The court understands that Mr. Bell's testimony is somewhat unpredictable. Considering that he will be subject to penalties of perjury for his testimony in this trial, Mr. Bell may wish to invoke his Fifth Amendment privilege against self-incrimination while on the stand. Defendants argue with some force that Mr. Bell has waived the privilege for purposes of this proceeding. All sides appear to agree, however, that Mr. Bell is not entirely trustworthy, and it seems possible

that he might again attempt to invoke privilege. If that were to happen, Mr. Bell's deposition testimony would be admissible, *Mitchell v. United States*, 526 U.S. 314, 321 (1999), and the jury may make an adverse inference in Defendants' favor. *See LaSalle Bank Lake View v. Seguban*, 54 F.3d 387, 390 (7th Cir. 1995). That Mr. Bell's testimony is not wholly predictable does not render it inadmissible for any purpose; the court therefore reserves ruling on this issue until trial.

### D. Brown's Motion *in Limine* No. 4: Exclude Irrelevant Testimony from Brown's Former Defense Counsel

The motion is granted in part. The Honorable Erica L. Reddick, Mr. Brown's former defense counsel, sits as the presiding judge of the criminal division on the Circuit Court of Cook County. Because Defendants are not calling Judge Reddick to testify about any matter related to her judicial capacity, testimony regarding her profession as a judge is not relevant, and therefore inadmissible. FED. R. EVID. 401. Plaintiff also argues that Judge Reddick may not make any statements regarding her assessment of Mr. Bell's credibility during Mr. Brown's 2008 trial. Judge Reddick may testify that, had she known Mr. Bell was not testifying truthfully, she would not have called him as a witness. Such evidence is more than a mere credibility determination: it is relevant to whether Mr. Brown told his lawyer about the Mr. Bell's untrue testimony. Should Judge Reddick testify to this effect, Defendants are entitled to argue to the jury that Mr. Brown hid, even from his lawyer, the fact that Bell is not credible.

### E. Brown's Motion *in Limine* No. 5: Exclude Discussion of Personal Relationships between Mark Rotert and Arthur Brown's Attorneys

The motion is granted in part and denied in part. Defense counsel may ask Mr. Rotert about his relationship with Mr. Brown's counsel, Mr. Ron Safer—for example, whether Mr. Rotert and Mr. Safer worked together in the past, whether they remain friends, and whether they attend social or sporting events together. Defense counsel may not ask specific questions beyond these general points, for anything more would violate Rule 403's balancing test. *See* FED. R. EVID. 403.

**F.     Brown's Motion *in Limine* No. 6:   Exclude Use of Cook County Public Defender Work Product**

The court reserves ruling on the motion.  Defendants seek to admit into evidence two documents produced under seal as work product by the Cook County Public Defender ("CCPD"), the office that represented Mr. Brown at his 2003 postconviction proceedings and his second criminal trial in 2008.  Defense counsel has stated that they do not plan to offer into evidence all of the documents, which amount to more than 300 pages of material, but may seek to use some of the information contained in those documents.  The court defers ruling on the motion while Defendants narrow down what, specifically, they seek to admit and confer with Plaintiff's counsel concerning potential objections.

**G.     Brown's Motion *in Limine* No. 7:  Exclude Reference to Mr. Brown's Prior Arrests and Other Irrelevant Conduct**

The court reserves ruling on this motion, but notes, first, that there is no evidence that Mr. Brown was ever convicted before this episode, and that evidence of his arrest record is barred under Rule 404(b).  *See Thompson v. City of Chicago*, 722 F.3d 963, 977 (7th Cir. 2013) ("In general, a witness's arrest record will not be admissible, either because it is inadmissible character evidence under Rule 404(b) or because it is substantially more unfairly prejudicial than probative under Rule 403.").  Evidence of Mr. Brown's prior arrests or courtroom experiences will be admissible for impeachment purposes only.  Whether defense counsel may elicit testimony regarding Mr. Brown's prior arrests and courtroom experiences will depend on the scope of Mr. Brown's direct examination and the purpose of Defendants' questions during cross-examination.

**H.     Brown's Motion *in Limine* No. 8:  Exclude Reference to Whitehouse's Career After The CCSAO**

The motion is denied.  Mr. Brown requests punitive damages against Mr. Whitehouse.  As set forth in Plaintiff's proposed jury verdict form, when assessing the appropriateness of such damages, the jury will consider the likelihood that Defendants would repeat the alleged wrongful

conduct if an award of punitive damages is not made. Mr. Whitehouse's career is relevant to that consideration, and Plaintiff has not shown that its probative value is substantially outweighed by the danger of unfair prejudice. *See* FED. R. EVID. 401, 402, 403. He may thus testify that he was a State's Attorney, then as a criminal defense attorney, and now as an investigator for the Civilian Office of Police Accountability.

> **I.** **Brown's Motion *in Limine* No. 9: Exclude References to Trial Judge's Credibility Determination at Suppression Hearing**

The court reserves ruling on the motion. Plaintiff argues that the factual finding Judge Suria made when denying Mr. Brown's 1989 motion to suppress are inadmissible hearsay under Rule 802. Estate Defendants respond that, given the court's ruling that Mr. Brown's COI will be admitted at trial, so too should Judge Suria's findings during Mr. Brown's 1989 suppression hearing.

On its face, the Certificate states that the court "being fully advised finds by a preponderance of evidence" that "[t]he Defendant/Petitioner is innocent of the offenses charged in the indictment . . ." (Ex. A to Pl.'s Consolidated Motions *in Limine* [365-1].) It is impossible to admit the Certificate of Innocence without exposing the jury to the finding Judge Martin made when granting it. During Mr. Brown's 1989 suppression hearing, Judge Suria also made a straightforward finding. On that occasion after hearing evidence and assessing credibility, he stated:

> Considering all of the evidence and the witnesses that reported thereon the Court would find that the defendant did, in fact, knowingly and intelligently give a statement freely and voluntarily after being advised of his Miranda rights; that there was, in fact no request for an attorney.
>
> I would therefore respectfully deny the defendant's motion to suppress statements. I'd enter judgment on that finding.

(Ex. 16 to Pl.'s Consolidated Motions *in Limine* [365-16] at 362:6–14.)

The court will admit evidence that the motion to suppress was denied after an evidentiary hearing and reserves ruling on whether the specific finding set forth above will be admitted at trial.

11

**J.     Brown's Motion *in Limine* No. 10:   Permit Plaintiff to Treat CPD and Defendant Witnesses as Adverse**

The motion is granted with respect to the City and denied with respect to former Chicago Police Department ("CPD") officer Wayne Micek without prejudice. Rule 611(c) permits a party to use leading questions on direct examination of hostile witnesses, adverse parties, or witnesses identified with an adverse party. Mr. Brown seeks to call two witnesses as adverse: Paul Carroll, the City's corporate representative and Rule 30(b)(6) witness for *Monell* issues and Mr. Micek, a retired CPD detective. Estate Defendants object to Plaintiff treating either witness as adverse.

Because Mr. Carroll is currently employed by the City, he qualifies for treatment as an adverse witness. *Ratliff v. City of Chicago*, No. 10 CV 739, 2013 WL 3388745, at *7 (N.D. Ill. July 8, 2013). As to Mr. Micek, it is possible, but not strictly necessary, for a witness to be treated as adverse when he was employed by the City at the time of the incident in question. *Gibbons v. Vill. of Sauk*, No. 15 CV 4950, 2017 WL 4882334, at *4 (N.D. Ill. Oct. 30, 2017) ("In addition to current employment, a witness is most likely to be treated as adverse where he or she was employed at the time of the incident in question and had a hand in the incident that resulted in suit."). Because Mr. Micek did not have a direct hand in the incident that resulted in Mr. Brown's suit—namely, the creation of Mr. Brown's statement—whether he may be treated as adverse is not as clear. Whether Plaintiff may use leading questions on direct examination of Mr. Micek will depend on his testimony at trial.

**K.     Brown's Motion *in Limine* No. 11:   Exclude Arthur Brown's Recorded Jail Calls**

The court reserves ruling on the motion. Defense counsel is ordered to provide Plaintiff with designations for the particular calls or portions of calls Defendants seek to admit into evidence.

  **L.**  **Brown's Motion *in Limine* No. 12:  Prejudgment Interest**

The motion is granted without objection.  The parties will not mention prejudgment interest to the jury, and the parties will take up the issue after trial in the event that the jury returns a verdict for Mr. Brown.

  **M.**  **Brown's Motion *in Limine* No. 13:  Bar Proposed Defense Expert Michael Welner**

The motion is granted in part and denied in part.  The court has ruled on appropriate limitations for Dr. Welner's testimony in a separate order.  *Brown*, 2023 WL 2561728, at *13–18.

**V.**  **Estate Defendants' Motion [369]**

  **A.**  **Estate Defendants' Motion *in Limine* No. 1:  Bar Certificate of Innocence**

The motion is denied for the reasons discussed above in the ruling on Defendant Whitehouse's Motion *in Limine* No. 5.

  **B.**  **Estate Defendants' Motion *in Limine* No. 2:  Bar Brown from Introducing the Hingston Affidavit and Bar Any Witness from Referring to the Hingston Affidavit**

The motion is granted without objection.  Mr. Brown may not, and says he does not intend, to refer in his case in chief to the affidavit of Mr. Cecil Hingston, in which Hingston recanted former testimony implicating Albert Harper and Geronia Ford, or to elicit testimony from witnesses concerning that affidavit.  (Plaintiff's Statement [377] ¶ 6.)  Plaintiff notes that he does not intend to call CCSAO employees Eric Sussman or Mark Rotert as witnesses, though Defendants have identified those individuals as "may call" witnesses.  (*Id.*)  If Defendants call Mr. Sussman and/or Rotert to inquire as two why the CCSAO decided not to file an appeal or pursue a third trial against Mr. Brown, the testimony of those witnesses may open the door to questioning about the affidavit.

  **C.**  **Estate Defendants' Motion *in Limine* No. 3:  Exclude Evidence that Lineups of Brown's Co-Conspirators were Unduly Suggestive or Otherwise Improper**

The motion is denied.  Plaintiff's counsel may introduce evidence concerning the lineups of Albert Harper and Geronia Ford at trial.  Plaintiff argues that the lineups that the Detective Defendants arranged for Harper and Ford are unduly suggestive and thus are relevant to the

13

weight that the jury should afford the testimony of Hingston, who picked Harper and Ford out of a lineup. Hingston testified at Mr. Brown's first two trials and, because he was deceased at the time of Mr. Brown's 2008 trial, his testimony was read in on that occasion. Because the state used Hingston's testimony as evidence in support of its case against Mr. Brown, this evidence is relevant to Mr. Brown's malicious prosecution claim. It is not, as Defendants argue, mere propensity evidence, which is impermissible under Rule 404(b). Assuming that the presentation of this evidence will not take longer than a few minutes of testimony, the court will admit such evidence at trial.

      **D.**    **Estate Defendants' Motion *in Limine* No. 4: Bar Any Testimony or Argument that Michael Harper and/or Geronia Ford Were Illegally Arrested, Coerced, or Innocent**

The court reserves ruling on the motion. Although Mr. Brown has been exonerated of the arson and resulting murders, Michael Harper and Geronia Ford remain convicted. Illinois state courts have denied Harper and Ford's motions to suppress statements and have entered judgments of convictions against each of them. Though Harper and Ford are not plaintiffs in this case, the court will not permit Harper and Ford to testify that they are innocent or that they were physically coerced, as those statements would contradict the state court findings in their own criminal cases. *See Green v. Junious*, 937 F.3d 1009, 1015 (7th Cir. 2019) (affirming exclusion of witness testimony that would contradict a state court finding in plaintiff's underlying criminal case); *Sanchez v. City of Chicago*, 880 F.3d 349, 357 (7th Cir. 2018) (noting that it promotes judicial economy and comity between state and federal courts for federal courts to give preclusive effect to state court decisions).

One potential solution, proposed by Plaintiff, is that Harper and Ford may testify about the alleged abuse that caused them to provide information about Mr. Brown and may testify to whether the information they provided was truthful—even though they may not testify as to their own innocence or whether other aspects of their confessions were coerced. While the court agrees that this solution could work in theory, it shares Defendants' concern that it may be

14

unworkable in practice. Controlling Harper and Ford's testimony may prove difficult, and, if either Harper or Ford testify that their convictions are invalid, the court will be inclined to strike their testimony in its entirety.

In any event, it is not certain that Plaintiff will call Harper and Ford as witnesses. If the men do testify, it is not easy to predict whether they can or will limit testimony regarding the circumstances surrounding their inculpatory statements to Mr. Brown specifically. It is also unclear at this juncture whether limiting the witnesses' testimony to their inculpation of Mr. Brown would hinder the Defendants' effective cross-examination. Due to these uncertainties, the court reserves ruling on Defendants' motion.

### E. Estate Defendants' Motion *in Limine* No. 5: Bar Evidence Regarding Chicago Policy Department Internal Rules and Regulations

The motion is granted, as with all *in limine* rulings, without prejudice and subject to reconsideration at trial. Mr. Brown brings both constitutional and state-law claims. Under *Thompson v. City of Chicago*, 472 F.3d 444, 454 (7th Cir. 2006), department policies are not relevant to whether a constitutional violation occurred. But, as Plaintiff stresses, since *Thompson*, the Seventh Circuit has "clarified that there is no per se rule against the admission of police policies or training." *United States v. Proano*, 912 F.3d 431, 439 (7th Cir. 2019) (citing *United States v. Brown*, 871 F.3d 532, 537–38 (7th Cir. 2017)). *Proano* was a criminal case in which defendant CPD officer was convicted of willful deprivation of constitutional rights under 18 U.S.C. § 242 after he fired sixteen shots at a moving sedan filled with teenagers. On appeal, the officer challenged the trial judge's admission of CPD policies and standards, but the Seventh Circuit affirmed the conviction, reiterating that evidence of departmental policies may be relevant to show intent to prove a defendant willfully deprived a plaintiff of his or her constitutional rights. *See id.* Even assuming, then, that CPD internal rules are relevant in some cases, such evidence is still subject to scrutiny under Rule 403. *See Jones v. Walters*, No. 12-CV-5283, 2016 WL 1756908,

15

*8 (N.D. Ill. Apr. 29, 2016) (noting, with regard to state-law claims, that the proponent of admitting CPD policies for proving state-law claims "carries a heavy burden under Rules 401 and 403").

For now, the court concludes that Plaintiff has not met that burden. Defendants will not argue that they were unaware of or not bound by the principles underlying CPD policy, such as the need to maintain an investigative file, to treat persons in custody humanely, and to pursue all investigative leads. At trial, the parties' police-practices experts will testify regarding national policing standards and what the Detective Defendants knew or should have known about how to properly conduct their investigation of Mr. Brown. Apart from the fact that CPD policies are "in writing," Plaintiff has not explained how those policies differ from national standards. On the other side of the scale, introducing departmental policies could increase the risk of prejudice and confusion, for the jury would be asked to consider the policies for the sake of assessing intent on Mr. Brown's state law claims but not as evidence of a constitutional violation for his evidence-fabrication and coercion claims.

The court notes, further, that Plaintiff has not identified any improper conduct on the part of Defendants that was prohibited by CPD policies, but not by national policing standards. Because the probative value of the CPD policies is already limited by their overlap with nationally recognized standards, the risk of prejudice and confusion outweighs benefits. The CPD policies will not be admitted; if called for, they may be referenced on cross-examination of the parties' police-practices experts.

### F. Estate Defendants' Motion *in Limine* No. 6: Bar Any Evidence Relating to Defendants' Alleged Failure to Investigate or Follow Up on Any Issue or Evidence

The court reserves ruling on this motion. Mr. Brown intends to call Mr. Dennis Waller as an expert on police practices, and Mr. Waller will opine on the extent to which the Detective Defendants in this case deviated from generally accepted norms for investigating crimes. Such evidence may be relevant to Mr. Brown's state law claims for the purposes of showing willfulness and intent, and it may be admissible so long as the comparison is not based on undue speculation.

16

The court discusses appropriate limitations for Mr. Waller's testimony in a separate opinion. *Brown*, 2023 WL 2561728, at *4–6.

### G. Estate Defendants' Motion *in Limine* No. 7: Bar Hearsay Evidence Relating to Joyce "Honey" Owens

This motion is granted. Ms. Joyce "Honey" Owens made a statement to non-party detectives the day after CPD officers arrested Mr. Brown and the Felony Review Unit approved charges against him, claiming she was at the store on the night of the fire, using cocaine, and observed persons other than Mr. Brown running outside the store. She made inconsistent statements when interviewed by the public defender about this episode in 2008 and another set of inconsistent statements during her deposition in this case in 2021—when she denied ever being near the video rental store on the night of the fire. To the extent that this evidence is relevant to showing what information the detectives had in their files—though this interview did not occur until after the Felony Review Unit approved the charges against Mr. Brown—the evidence is inadmissible under Rule 403 because its probative value is substantially outweighed by a danger of unfair prejudice to the now-deceased Detective Defendants. Plaintiff points to indicia of reliability in Ms. Owens's statement: her willingness to take a polygraph test and previous instances when she provided good information to law enforcement—but those facts do not sufficiently defeat the risk of unfair prejudice to the Defendants in this case. *See* FED. R. EVID. 403.

The court notes an additional concern regarding the Owens interview: it is unclear what permissible use it could serve at trial. Plaintiff's position is that the Detective Defendants' failure to follow up on the interview with Ms. Owens is relevant to the intent elements of Mr. Brown's claims. It is not obvious that is so. Take, for example, Mr. Brown's malicious prosecution claim. Two of the elements Plaintiff must prove are (1) absence of probable cause and (2) malice. If the jury credits Mr. Brown's testimony and finds that Defendants fabricated and/or coerced his statement on May 28th, then Defendants lacked probable cause to prosecute Mr. Brown and

certainly acted with malice. If the jury instead finds that Mr. Brown voluntarily confessed, then the Owens interview is irrelevant because her statements would not defeat a finding of probable cause. The Owens interview may thus be little more than propensity evidence—a basis for suggesting that because the Detective Defendants did not follow up on Ms. Owens's May 29th interview (as Plaintiff contends CPD policy required), it is more likely that they also did not follow protocol when interrogating Mr. Brown on May 28th. Rule 404(b)(1) prohibits such a use. Plaintiff's objection is thus overruled.

### H. Estate Defendants' Motion *in Limine* No. 8: Bar Prior Bad Acts, CRs and Lawsuits Against Detectives

The motion is granted. Mr. Brown does not oppose this motion except with regards to complaints against Detective Fine filed by four witnesses identified on Brown's witness list. Plaintiff disclosed these witnesses to Defendants on December 21, 2022. Because the disclosure of these witnesses is untimely under Federal Rule of Civil Procedure 26, the court grants the motion and overrules Plaintiff's objection.

### I. Estate Defendants' Motion *in Limine* No. 9: Bar Any Argument that Brown's Convictions Were Vacated Based on Any Actions or Inactions of the Estate Defendants

The motion is granted without objection.

### J. Estate Defendants' Motion *in Limine* No. 10: Admit Former Testimony of the Detectives

The motion is granted. If Michael Harper and Geronia Ford are permitted to testify that the Detective Defendants physically abused them or otherwise coerced them to confess that they were involved in the Magic Video fire (unlikely, in light of the court's earlier ruling), the Estate Defendants would be permitted to introduce the Detective Defendants' former testimony from the criminal proceedings of Harper and Ford. *See* FED. R. EVID. 804(b)(1).

18

### K. Estate Defendants' Motion *in Limine* No. 11: Bar Untimely Disclosed Witnesses

The motion is granted. Mr. Brown disclosed seven new witnesses on December 21, 2022, 19 months after discovery closed. Estate Defendants object to the testimony of those witnesses—four plaintiffs and three witnesses in a pending consolidated suit in which Detective Fine was improperly named as a deceased party and was dismissed. Because Plaintiff's tardy disclosure does not comply with Federal Rule of Civil Procedure 26, the court grants the motion.

### L. Estate Defendants' Motion *in Limine* No. 12: Bar Brown's Purported Receipts Under the Best Evidence Rule

Plaintiff has proposed to offer photocopies of receipts that Mr. Brown purportedly issued for work he performed in 1988. The court reserves ruling on the admissibility of these documents. In addition to the best-evidence concern, the court notes the potentially odd circumstance that the form on which the 1988 receipts were printed sets forth an address that includes a City zone rather than zip code, despite nationwide adoption of zip codes in 1963. *See* FED. R. EVID. 1002, 1003.

### CONCLUSION

As discussed above, the parties *in limine* motions are granted in part and denied in part. The parties are encouraged to continue to pursue further settlement efforts.

ENTER:

Dated: March 22, 2023

REBECCA R. PALLMEYER
United States District Judge